FILED IN CLERK'S OFFICE
U S D C Atlanta

OCT 1 5 2003

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE:  JDN REALTY CORP. | : | Master File No. |
| SECURITIES LITIGATION | : | 1:00-CV-0396-RWS |
| | : | |

### STIPULATION AND AGREEMENT
### OF SETTLEMENT WITH THE REMAINING DEFENDANTS

This stipulation and agreement of settlement dated as of

October 15ᵀᴴ, 2003 (the "Stipulation for Settlement II") is

submitted pursuant to Rule 23 of the Federal Rules of Civil

Procedure.  Subject to the approval of the Court, the Stipulation

for Settlement II is entered into by and among the Lead Plaintiff

Clarion-CRA Securities, L.P. ("Clarion") and the Class (as

hereinafter defined) and Defendants J. Donald Nichols ("Nichols"),

Jeb L. Hughes ("Hughes"), C. Sheldon Whittelsey, IV ("Whittelsey"),

William D. Brunstad ("Brunstad"), Bradley J. Taylor ("Taylor"), and

the law firm of McCullough Sherrill LLP ("McCullough Sherrill")

(collectively, the "Remaining Defendants"), by and through their

respective counsel.

WHEREAS:

A.    On or after February 15, 2000, the following actions were

filed in or transferred to the Court as proposed class actions on

behalf of certain persons who purchased the common and preferred

stock of JDN Realty Corporation ("JDN"):

-1-

175

Addington, et al. v. JDN Realty, Inc., et al., Civil Action
No. 1:00-CV-0692;

Brazier, et al. v. JDN Realty Corporation, et al., Civil
Action File 1:00-CV-0565;

Dolan v. J.D. Nichols, et al., Civil Action No.
3-00-0443 (transferred to this District from the United States
District Court in Nashville);

Farrell, et al. v. JDN Realty Corporation, et al., Civil
Action No. 1:00-CV-0402;

Harrison, et al. v. J. Donald Nichols, et al., Civil Action
No. 1:00-CV-0508;

Hoffman, et al. v. JDN Realty Corporation, et al., Civil
Action No. 1:00-CV-0518;

Jackson, et al. v. JDN Realty Corporation, et al., Civil
Action No. 1:00-CV-0396;

Kendall, et al. v. JDN Realty Corporation, et al., Civil
Action No. 1:00-CV-0397;

Kwalbrun, et al. v. JDN Realty Corporation, et al., Civil
Action No. 1:00-CV-0437;

Laiks, et al. v. JDN Realty Corporation, et al., Civil Action
No. 1:00-CV-0403;

Laurita, et al. v. J. Donald Nichols, et al., Civil Action No.
1:00-CV-0454;

Lopez, et al. v. JDN Realty Corporation, et al., Civil Action
No. 1:00-CV-0436;

Ludin, et al. v. JDN Realty Corporation, et al., Civil Action
No. 1:00-CV-0417;

Lynch, et al. v. JDN Realty Corporation, et al., Civil Action
No. 1:00-CV-2539;

Mitchell, et al. v. JDN Realty Corporation, et al., Civil
Action No. 3-00-0167 (transferred to this District from the

United States District Court in Nashville);

Morse v. J. Donald Nichols, et al., Civil Action No. 1:00-CV-0401;

Pitts v. JDN Realty Corp., et al., Civil Action No. 1:00-CV-0414;

Rowan v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0449; and

Washington Savings Bank v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0899.

The Parties acknowledge that on April 17, 2000, the Court ordered the above actions consolidated for all purposes under the caption In Re: JDN Realty Corp. Securities Litigation, Master File No. 1:00-CV-0396-RWS, and provided for the filing of a consolidated amended class action complaint. The actions referred to above shall hereinafter be collectively referred to as the "Consolidated Actions."

B.   Lead Plaintiff filed the Consolidated Amended Class Action Complaint (the "Consolidated Complaint") on or about June 14, 2001. The Consolidated Complaint asserted violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"). The Consolidated Complaint named JDN, JDN Development Company, Inc. ("JDN Development"), J. Donald Nichols, Elizabeth L.

-3-

Nichols, Jeb L. Hughes, C. Sheldon Whittelsey, IV, Craig Macnab, William B. Greene, William G. Byrnes, Haywood D. Cochrane, Jr., John D. Harris, William J. Kerley, Robert Corker, McCullough Sherrill, LLP, Bradley J. Taylor, and William D. Brunstad as "Defendants", and alleged that material facts concerning JDN and the condition of its business and financial results were misrepresented in and omitted from various public statements made by Defendants during the Class Period (as defined below).

C.    The Consolidated Complaint further claimed that the alleged misrepresentations and omissions caused the price of JDN's common and preferred stock to be artificially inflated during the Class Period to the alleged injury and damage of Lead Plaintiff and the Class.

D.    The claims asserted by Plaintiffs in the Consolidated Complaint ("Plaintiffs" or the "Class", as is hereafter further defined below) have already been settled by the Class with JDN and JDN Development on behalf of all originally-named Defendants other than the Remaining Defendants.

E.    The Remaining Defendants and the Class now desire to settle all claims remaining between them.

F.    The Remaining Defendants deny any wrongdoing or liability with respect to all claims, events, and transactions complained of in the Consolidated Actions, deny that they committed any violation

-4-

of law, and deny liability of any kind, but consider it desirable
that the Consolidated Actions be settled and dismissed with
prejudice in order to (i) avoid the substantial expense, burden,
and risk of continued litigation; (ii) dispose of potentially
burdensome and protracted litigation; and (iii) finally put to rest
and terminate the claims asserted in the Consolidated Actions.  The
Stipulation for Settlement II shall in no event be construed or
deemed to be evidence of or an admission or concession on the part
of any Defendant with respect to any claim or of any fault or
liability or wrongdoing or damage whatsoever, or any infirmity in
the defenses that the Remaining Defendants have asserted.

    G.    The parties to the Stipulation for Settlement II
recognize that the litigation has been filed by Plaintiffs and
defended by the Remaining Defendants in good faith under Federal
Rule of Civil Procedure 11, that the litigation is being
voluntarily settled after advice of counsel, and that the terms of
the settlement are fair, adequate and reasonable.  The Stipulation
for Settlement II shall not be construed or deemed to be a
concession by any Plaintiff of any infirmity in the claims asserted
in the Action;

    H.    Plaintiffs' Counsel have conducted an investigation
relating to the claims and the underlying events and transactions
alleged in the Consolidated Complaint.  Plaintiffs' Counsel have

analyzed the evidence adduced during pretrial discovery and have researched the applicable law with respect to the claims of Lead Plaintiff and the Class against the Remaining Defendants and the potential defenses thereto;

I.    Lead Plaintiff, by its counsel, Chitwood & Harley, LLP ("Lead Class Counsel"), has conducted discussions and arm's length negotiations with counsel for the Remaining Defendants with respect to a compromise and settlement of the Consolidated Actions with a view to settling the issues in dispute and achieving the best relief possible consistent with the interests of the Class; and

J.    Based upon their investigation and pretrial discovery as set forth above, Plaintiffs' Counsel have concluded that the terms and conditions of the Stipulation for Settlement II are fair, reasonable and adequate to Lead Plaintiff and the Class, and in their best interests, and have agreed to settle the claims raised in the Consolidated Actions pursuant to the terms and provisions of the Stipulation for Settlement II, after considering (a) the substantial benefits that Lead Plaintiff and the members of the Class will receive from settlement of the Consolidated Actions, (b) the attendant risks of litigation, and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of the Stipulation for Settlement II.

-6-

NOW THEREFORE, without any admission or concession on the part of Plaintiffs of any lack of merit of the Consolidated Actions whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in the defenses whatsoever by the Remaining Defendants, it is hereby STIPULATED AND AGREED, by and among the parties to the Stipulation for Settlement II, through their respective attorneys, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the parties hereto from this Settlement II (as defined below), that all Settled Claims (as defined below) as against Released Parties for Settlement II (as defined below) shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

## CERTAIN DEFINITIONS

1.    As used in the Stipulation for Settlement II, the following terms shall have the following meanings:

a.    "Authorized Claimant" means a Class Member who submits a timely and valid Proof of Claim form to the Claims Administrator or who is otherwise eligible to receive a distribution from Settlement II under the Plan of Allocation by order of the Court.

b.    "Claims Administrator" means the firm of The Garden City Group, Inc., which shall administer Settlement II.

c.    "Class" and "Class members" means, for the purposes of this Stipulation only, all persons who purchased JDN securities during the period from February 15, 1997 through April 12, 2000, inclusive.  Excluded from the Class are Defendants, officers and directors of the Company, members of the immediate families of the individual Defendants and each of their heirs, successors and assigns and any entity in which any Defendant has or has had a controlling interest.  Also excluded from the Class are any putative Class members who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

d.    "Class Period" means, for the purposes of this Stipulation only, the period of time from February 15, 1997 through and including April 12, 2000.

e.    "Defendants' Counsel" means the law firm of Rogers & Hardin, LLP, which represents Defendant J. Donald Nichols; the law firm of Leonard & Swenson, LLP, which represents Defendants Jeb L. Hughes and C. Sheldon Whittelsey, IV; the law firm of Hawkins & Parnell, LLP, which represents Bradley J. Taylor; and the law firm of Gorby Reeves & Peters, PC, which represents William D. Brunstad and the law firm of McCullough Sherrill LLP.

-8-

f.    "Effective Date of Settlement" or "Effective Date" means the date upon which Settlement II contemplated by this Stipulation shall become effective, as set forth in ¶ 27 below.

g.    "Hughes and Whittelsey's Release and Settlement Agreement" means the agreement reached between Lead Plaintiff and the Class, Jeb L. Hughes, and C. Sheldon Whittelsey, IV relating to the instant lawsuit and between Jeb L. Hughes and C. Sheldon Whittelsey, IV and the JDN Entities relating to a separate state lawsuit.

h.    "JDN Entities" means JDN Realty Corporation and its subsidiary, JDN Development Company, Inc.

i.    "McCullough Sherrill Defendants" means McCullough Sherrill LLP, William D. Brunstad, and Bradley J. Taylor;

j.    "McCullough Sherrill Defendants' Release and Settlement Agreement" means the agreement reached between Lead Plaintiff and the Class and McCullough Sherrill, Brunstad, and Taylor, relating to the instant lawsuit and between the McCullough Sherrill Defendants, James King, and the JDN Entities, relating to a separate state lawsuit.

k.    "Nichols' Release and Settlement Agreement" means the agreement reached between Lead Plaintiff and the Class and J. Donald Nichols relating to the instant lawsuit and between J.

Donald Nichols and the JDN Entities relating to a separate state lawsuit.

l.    "Notice" means the Notice of Pendency of Class Action, Hearing On Proposed Settlement and Attorneys' Fee Petition and Right to Share in Settlement Fund, which is to be sent to members of the Class substantially in the form attached hereto as Exhibit 1 to Exhibit A.

m.    "Order and Final Judgment" means the proposed order to be entered approving Settlement II substantially in the form attached hereto as Exhibit B.

n.    "Plaintiffs' Counsel" means, in addition to Lead Class Counsel:  Abbey Gardy, 212 East 39th Street, New York, NY 10016; Law Offices of James V. Bashian, 500 5th Avenue, Suite 2700, New York, NY 10110; Berger & Montague, 1622 Locust Street, Philadelphia, PA 19103; Berman, DeValerio & Pease, One Liberty Plaza, Boston, MA 02109; Bernstein, Liebhard & Lifshitz, 10 East 40th Street, New York, NY 10016; Bernstein Litowitz Berger & Grossmann LLP, 1285 Avenue of the Americas, 33rd Floor, New York, NY 10019; Bondurant Mixson & Elmore, 1201 W. Peachtree Street, NW, 3900 One Atlantic Center, Atlanta, Georgia 30309-3417; Carr, Tabb, Pope & Freeman, 4200 Northside Parkway, NW, 10 North Parkway Square, Atlanta, GA 30327; Cauley, Geller, Bowman & Rudman, LLP, P. O. Box 25438, Little Rock, AR 72221; Donovan Miller, 1608 Walnut

Street, Suite 1400, Philadelphia, PA 19103; Office of Robert R.
Elarbee, 565 Franklin Road, Atlanta, GA 30342; Fellows, Johnson &
LaBriola, 225 Peachtree Street, NE, South Tower, Suite 2300,
Atlanta, GA 30303-1731; Finkelstein, Thompson & Loughran, 1055
Thomas Jefferson Street, NW, The Foundry Building, Suite 601,
Washington, D.C. 20007; Gilman & Pastor, One Boston Place, 28th
Floor, Boston, MA 02108; Goodkind Labaton Rudoff & Sucharow, 100
Park Avenue, 12th Floor, New York, NY 10017-5563; The Halberg Law
Firm, 3151 Maple Drive, Atlanta, Georgia 30305; Lowey Dannenberg
Bemporad & Selinger, One North Lexington Avenue, The Gateway, 11th
Floor, White Plains, NY 10601-1714; Malka & Trainor, 41 Marietta
Street, NW, Suite 507, Atlanta, GA 30303; Office of Charles J.
Piven, The World Trade Center, 401 East Pratt Street, Suite 2525,
Baltimore, MD 21202; Pomerantz, Haudek, Block, Grossman & Gross,
LLP, 100 Park Avenue, 26th Floor, New York, NY 10017; Schriffin &
Barroway, 3 Bala Plaza East, Suite 400, Bala Cynwyd, PA 19004;
Spector, Roseman & Kodroff, 1818 Market Street, Suite 2500,
Philadelphia, PA 19103; Toback, Hyman & Bernstein, 500 Fifth
Avenue, Suite 1640, New York, NY 10110; Wechsler, Harwood, Halebian
& Feffer, 488 Madison Avenue, New York, NY 10022; Weinstein,
Kitchenoff, Scarlato & Goldman, Ltd., 1608 Walnut Street, Suite
1400, Philadelphia, PA 19103; Wolf, Haldenstein, Adler, Freeman &

-11-

Herz, 270 Madison Avenue, New York, NY 10016; and any other counsel representing one or more of the Named Plaintiffs.

o.    "Preliminary Approval Order" means the proposed order substantially in the form attached hereto as Exhibit A preliminarily approving Settlement II and directing notice thereof to the Class.

p.    "Publication Notice" means the summary notice of proposed Settlement II and hearing for publication substantially in the form attached as Exhibit 3 to Exhibit A.

q.    "Released Parties for Settlement I" means all of the Settling Defendants from Settlement I (the JDN Entities, William J. Kerley, Elizabeth L. Nichols, Craig Macnab, Haywood D. Cochrane, John D. Harris, Jr., William G. Byrnes and William B. Greene), or any one of them, and each of JDN's respective past or present directors (including but not limited to Robert Corker and Philip Satre); officers; employees; partners; principals; agents; underwriters; issuers; insurers; co-insurers; reinsurers; shareholders; attorneys (including, without limitation, Alston & Bird LLP; Waller Lansden, Dortch & Davis; and any present and former partners or employees of both); accountants; underwriters; investment bankers; advisors; securities analysts; brokerage firms; personal representatives; predecessors; successors; parents; subsidiaries; divisions; assigns; spouses; heirs; associates (as

-12-

defined by SEC Rule 12b-2); affiliates (as defined by SEC Rule 12b-2); any members of their immediate families; any person, firm, trust, corporation, officer, director, or other individual or entity in which any Settling Defendant from Settlement I has a controlling interest or which is related to or affiliated with any Settling Defendant from Settlement I or any trust of which any Settling Defendant from Settlement I is the settlor or which is for the benefit of any Settling Defendant from Settlement I and/or member(s) of his or her family; and shall include any individual, group, or entity who directly or indirectly participated in the dissemination of information about JDN or who directly or indirectly is responsible for any of the damages alleged in the Consolidated Complaint or in any of the complaints filed in the Consolidated Actions, including without limitation, any securities analysts or brokerage firms. Notwithstanding the foregoing, the Released Parties from Settlement I does not include the Released Parties for Settlement II, as defined herein.

r.    "Released Parties for Settlement II" means Defendants J. Donald Nichols, Jeb L. Hughes, C. Sheldon Whittelsey, IV, William D. Brunstad, Bradley J. Taylor, and the law firm of McCullough Sherrill LLP, or any one of them, and any members of their immediate families; any person, firm, trust, corporation, officer, director, or other individual or entity in which any of

the Remaining Defendants from Settlement II has a controlling
interest or which is related to or affiliated with any Remaining
Defendant from Settlement II or any trust of which any Remaining
Defendant from Settlement II is the settlor or which is for the
benefit of any Remaining Defendant from Settlement II and/or
member(s) of his or her family including, but not limited to, ALA
Associates, Inc.  The Released Parties for Settlement II also
specifically includes all Third-Party Intended Beneficiaries (as
defined herein).

   s. "Remaining Defendants' Settled Claims" means any and
all claims, rights or causes of action or liabilities whatsoever,
whether based on federal, state, local, statutory or common law or
any other law, rule or regulation, including both known claims and
unknown claims, that have been or could have been asserted in the
Consolidated Actions or any forum by any of the Remaining
Defendants or the successors and assigns of any of them against any
of the Plaintiffs, Class members or their attorneys, to the extent
that such claims arise out of or relate in any way to the claims,
transactions, disclosures, facts, matters, omissions or occurrences
referred to in, or which are the subject matter of, the
Consolidated Complaint or to the institution or prosecution of the
Consolidated Actions.

   t. "Settlement I Claims" means all claims of every

-14-

nature and description, known or unknown, relating to the purchase
of JDN securities during the Class Period, which have been or could
have been asserted by Plaintiffs or any member of the Settlement
Class against the Released Parties for Settlement I (as defined
above) relating to or arising out of any of the claims,
transactions, disclosures, facts, matters, omissions or occurrences
referred to in, or which are the subject matter of, the
Consolidated Complaint.

u.    "Settlement II Claims" means all claims, demands,
rights, liabilities, and causes of action, known or unknown,
accrued or unaccrued, fixed or contingent, direct or derivative,
individual or representative of every nature and description
whatsoever, that are asserted or that could have been asserted by
any Settlement II Class Member arising out of or relating to any of
the claimed acts, omissions, misrepresentations, facts, events,
matters, transactions, or occurrences referred to in the
Consolidated Complaint, or in any of the complaints filed in any of
the Consolidated Actions, regardless of whether made during or
after the Class Period, or in any of JDN's financial statements or
other publicly filed documents first publicly disclosed before or
during the Class Period.  Notwithstanding anything herein to the
contrary, however, this Order is not intended to and does not

-15-

release any churning or suitability claims against brokers, if any such claim exists.

　　　　v.　"Settlement I" means the settlement by and among Lead Plaintiff on behalf of the Class, the JDN Entities, William J. Kerley, Elizabeth L. Nichols, Craig Macnab, Haywood D. Cochrane, John D. Harris, Jr., William G. Byrnes, and William B. Greene that was approved by the Court on November 15, 2001.

　　　　w.　"Settlement II" means the settlement contemplated by the Stipulation for Settlement II by and among Lead Plaintiff on behalf of the Class and Defendants Nichols, Hughes, Whittelsey, Brunstad, Taylor, and McCullough Sherrill.

　　　　x.　"Settlement II Class" means the Class minus the members of the Class who submit valid and timely requests for exclusions from the Class for purposes of Settlement II.

　　　　y.　"Settlement II Class Member" is a member of the Settlement II Class.

　　　　z.　"Settlement Administration Escrow Agent" means Chitwood & Harley, LLP, which has established a Settlement Administration Account to pay expenses in connection with the administration of Settlement II.

　　　　aa.　"Settlement Administration Account" means the escrow account established and maintained by the Settlement Administration Escrow Agent under the supervision of the Court,

which may only be used to pay expenses in connection with the administration of Settlement II.

bb.  "Settlement Escrow Account" means the escrow account established and maintained by the Settlement Escrow Agent under the supervision of the Court, which may only be used as provided for in the Stipulation for Settlement II and as ordered by the Court.

cc.  "Settlement Escrow Agent" shall mean the law firm of Chitwood & Harley LLP, which served as sole Lead Class Counsel.

dd.  "Settlement Fund" means the sum of (1) the $2,000,000 from Nichols' Cash Settlement Amount (as explained in ¶ 4 below), plus (2) the $340,000 from Hughes and Whittelsey's Cash Settlement Amount (as explained in ¶ 5 below), plus (3) the $5,000,000 from the McCullough Sherrill Defendants' Cash Settlement Amount (as explained in ¶ 6 below).  The "Net Settlement Fund" shall be the Settlement Fund, less all taxes, approved costs, fees, and expenses, including the cost of notice and administration and less the monies the Class is obligated to repay the JDN Entities pursuant to Section 2.20 of the Stipulation and Agreement of Settlement filed with the Court on or around August 14, 2001 in connection with Settlement I.

ee.  "Stipulation for Settlement I" means the Stipulation

and Agreement of Settlement filed with the Court on or around
August 14, 2001 in connection with Settlement I that was
subsequently approved by the Court.

ff.    "Third-Party Intended Beneficiaries" means those
natural persons named as partners of Glass, McCullough Sherrill and
Harrold in the style of the case pending in the Superior Court of
Fulton County bearing Civil Action File No. 2003CV2378 (the "Kerley
Litigation") who are not signatories to the McCullough Sherrill
Defendants' Release and Settlement Agreement.

### SCOPE AND EFFECT OF SETTLEMENT II

2.    The obligations incurred pursuant to the Stipulation for
Settlement II shall be in full and final disposition of the
Consolidated Actions and any and all Settlement II Claims as
against the Released Parties for Settlement II and any and all of
the Remaining Defendants.

3.    a.    Pursuant to the Order and Final Judgment, upon the
Effective Date of Settlement II, Lead Plaintiff and members of the
Class on behalf of themselves, their heirs, executors,
administrators, successors and assigns, and any persons they
represent, shall, with respect to each and every Settlement II
Claim, release and forever discharge, and shall forever be enjoined
from prosecuting, any Settlement II Claims against any of the
parties comprising the Released Parties for Settlement II.

b.    Pursuant to the Order and Final Judgment, upon the Effective Date of Settlement II, each of the Remaining Defendants, on behalf of themselves and the Released Parties for Settlement II, shall release and forever discharge each and every of the Remaining Defendants' Settled Claims, and shall forever be enjoined from prosecuting those Settled Claims.

c.    Notwithstanding the foregoing, the release given by Lead Plaintiff and members of the Class on behalf of themselves, their heirs, executors, administrators, successors and assigns, and any persons they represent, to the Third Party Intended Beneficiaries (as previously defined) is subject to and contingent upon the Third Party Intended Beneficiaries not asserting or filing any claim whatsoever against any of the Plaintiffs, unless and except such claim is brought or asserted in their individual capacities in the form of a claim for indemnity or contribution resulting from the Kerley Litigation (as previously defined), and provided such claim is brought only after there is a judgment in the Kerley Litigation on the merits at trial against the party or parties asserting the claim that exposes such party or parties to personal liability that will not be covered by any applicable insurance policies.  In the event any of the Third Party Intended Beneficiaries asserts or files a claim against any of the Plaintiffs other than as described in the preceding sentence, such

-19-

Plaintiff or Plaintiffs' release(s) of the party or parties asserting such claim or claims shall be null and void in their entirety, and such Plaintiff or Plaintiffs may assert whatever claims they each may have against the Third Party Intended Beneficiary or Beneficiaries asserting or filing the claim or claims as if no release were ever given.

       d.   Notwithstanding the foregoing, the Third-Party Intended Beneficiaries are not signatories to this agreement and are not and shall not be construed as giving releases to anyone as a result of McCullough Sherrill entering into this Stipulation II.

<div align="center">

**THE SETTLEMENT CONSIDERATION**

</div>

    4.   J. Donald Nichols, in settlement of the claims against him, agrees to pay $2,000,000 ("Nichols' Cash Settlement Amount") for the benefit of the Class in the manner set forth below ("Payment Obligation"). All payments shall be made to Chitwood & Harley, LLP on behalf of the JDN Securities Litigation Settlement Fund. As the Settlement Escrow Agent, Chitwood & Harley, LLP will hold all payments in escrow in the Settlement Escrow Account subject to distribution or payment by further order of the Court except as specified herein. Any interest earned on such payments shall belong to the Class. Pursuant to Nichols' Release and Settlement Agreement, Nichols has already paid $60,000 ("First Installment") to the Settlement Escrow Agent. The Settlement

Escrow Agent is holding the First Installment in escrow in the
Settlement Administration Account and may use such funds for the
cost of class notice and administration.  In the event that
Settlement II is not finally approved, any portion of the First
Installment that has not been spent or incurred for class notice
and administration shall be refunded to Nichols.  Nichols agrees to
deliver to his Counsel a certified check in the amount of $440,000
("Second Installment") on the morning of the final approval
hearing, which check shall be delivered to the Settlement Escrow
Agent promptly upon entry of the Order of the Court ("Order and
Final Judgment") granting final approval of Settlement II ("Final
Approval").  Nichols will pay an additional $500,000 by certified
check to the Settlement Escrow Agent on or before 90 days from the
date of Final Approval ("Third Installment").  The $1,000,000
balance of the Payment Obligation shall be paid by certified check
to the Settlement Escrow Agent within 180 days from the date of
Final Approval ("Final Installment").  All other terms of Nichols'
Release and Settlement Agreement, including provisions for the
execution of a promissory note and security for payment,
cooperation with the JDN Entities and the Class, and various
releases and dismissal of claims, are set forth in the Nichols'
Release and Settlement Agreement, attached hereto as Exhibit C, the

-21-

terms of which are incorporated herein, except ¶ 6(b) thereof, which Nichols acknowledges has already been satisfied.

5.    Jeb L. Hughes and C. Sheldon Whittelsey, IV, in settlement of the claims against them, agree to pay $340,000 ("Hughes and Whittelsey's Cash Settlement Amount"), for the benefit of the Class.  Hughes and Whittelsey have made this payment, which is being held in escrow in the Settlement Escrow Account subject to distribution or payment by further order of the Court except as specified herein.  All other terms of Hughes and Whittelsey's Release and Settlement Agreement, including provisions for cooperation with the JDN Entities and the Class, and various releases and dismissal of claims, are set forth in Hughes and Whittelsey's Release and Settlement Agreement, attached hereto as Exhibit D, the terms of which are incorporated herein, except ¶ 17, which Hughes and Whittelsey acknowledge has already been satisfied.

6.    a.    The McCullough Sherrill Defendants represent and warrant that Interstate Insurance Group (the insurer for the McCullough Sherrill Defendants) ("Interstate") has agreed to pay the sum of $5,000,000 (the "McCullough Sherrill Defendants' Cash Settlement Amount") in settlement of all claims against the McCullough Sherrill Defendants in both the instant action and the related state court action.  Interstate has already delivered the McCullough Sherrill Defendants' Cash Settlement Amount to Lead

Class Counsel by wire transfer.  While the money is being held in escrow pursuant to the McCullough Sherrill Defendants' Release and Settlement Agreement, in the event the settlement of the instant action is not finally approved by the Court, the McCullough Sherrill Defendants' Cash Settlement Amount, less any amount spent or incurred on class notice and administration up to $60,000, shall be promptly returned to Interstate.

        b.    The McCullough Sherrill Defendants' Release and Settlement Agreement, attached hereto as Exhibit E, is incorporated herein by reference.

        7.    This Settlement II will therefore create a Settlement Fund of $3,500,000 for the benefit of the Class because a portion of the funds paid or to be paid by the Remaining Defendants is subject to an obligation to repay the JDN Entities monies advanced by JDN.  Pursuant to Paragraph 2.20 of the Stipulation for Settlement I, the JDN Entities agreed to pay (and subsequently did pay) into a settlement fund for the benefit of the Class $4,000,000 as "assurance" to the Class that the Class would receive at least a collective $7,500,000 in settlement from the Remaining Defendants. For every dollar received from the Remaining Defendants in excess of $3,500,000, the JDN Entities are to receive a dollar return of the $4,000,000 "assurance" payment they paid to the Class.  The Class is also obligated to pay the JDN Entities all accrued

interest earned on monies received from the Remaining Defendants
that are required to be returned to the JDN Entities as repayment
of the "assurance" payment, or any portion of it, from the date
such monies are paid into escrow.  As discussed herein, the Class
has secured agreements by Nichols, Hughes, and Whittelsey to pay a
collective $2,340,000, $60,000 of which has already been paid by
Nichols and $340,000 of which has been paid by Hughes and
Whittelsey.  Pursuant to the Nichols' Release and Settlement
Agreement (which settlement is subject to this Court's approval)
(the "Nichols Settlement"), Nichols is scheduled to pay the Class
an additional $440,000 on the morning of this Court's final
approval of the Nichols Settlement ("Nichols' Second Installment"),
$500,000 within 90 days following final approval of the Nichols
Settlement ("Nichols' Third Installment"), and $1,000,000 within
180 days following the final approval of the Nichols Settlement
("Nichols' Final Installment").  Accordingly, the Settlement Escrow
Agent, Chitwood & Harley, LLP, shall repay the assurance payment to
the JDN Entities at such place as directed by the JDN Parties as
follows: $1,900,000 (plus interest accrued on such amounts) 30 days
following this Court's final approval of Settlement II, assuming no
appeal; $440,000 (plus any interest earned on such money from the
date Nichols' Second Installment is paid to the Class) 30 days
following this Court's final approval of Settlement II, assuming no

-24-

appeal, or immediately upon receipt by the Class of Nichols' Second Installment, whichever is later; $500,000 directly upon receipt by the Class of Nichols' Third Installment, which is scheduled to occur within 90 days from this Court's final approval of Settlement II; and $1,000,000 directly upon receipt by the Class of Nichols' Final Installment, which is scheduled to occur within 180 days from this Court's final approval of Settlement II.

    8.    a.    The Settlement Fund, net of any Taxes (as defined below) on the income thereof, shall be used to pay (i) the attorneys' fee and expense award referred to in ¶ 14 hereof; (ii) the notice and administration expenses referred to in ¶¶ 4, 6(a), 15 hereof; and (iii) the repayment of the assurance payment as provided by ¶ 7.  The balance of the Settlement Fund after the above payments shall be the Net Settlement Fund, which after appropriate reserves for professional fees, shall be distributed to the Authorized Claimants as provided in ¶¶ 16-18 hereof.  Other than the $120,000 allocated to the Settlement Administration Account, any sums required to be held in escrow hereunder prior to the entry of the Order and Final Judgment shall be held by the Settlement Escrow Agent.  The Settlement Escrow Agent immediately shall invest the Settlement Escrow Account in instruments backed by the full faith and credit of the United States government at then current market rates and shall reinvest, to the extent reasonably

-25-

practicable, the proceeds of these instruments as they mature in similar instruments at then current market rates.  A balance of $100,000 or less may be held in the Settlement Escrow Account in an interest bearing bank account insured by the Federal Deposit Insurance Corporation ("FDIC").  All interest earned by the Settlement Escrow Account shall become part of the Settlement Fund, except to the extent it is due to the JDN Entities as part of the repayment of the JDN Entities' assurance payment as provided by ¶ 7.  If the Effective Date does not occur, all interest accrued in the Settlement Escrow Account shall inure to the benefit of the payors of the Settlement Cash and shall, along with that portion of Nichols' Cash Settlement Amount, which Nichols has already paid, Hughes and Whittelsey's Cash Settlement Amount, and the McCullough Sherrill Defendants' Cash Settlement Amount be returned to Defendants Nichols, Hughes, and Whittelsey, and to Interstate in accordance with the provisions of ¶ 31 below, except for any amount up to $120,000 already expended or incurred by Lead Class Counsel pursuant to ¶¶ 4 and 15 to pay notice and administration expenses. The Settlement Escrow Agent shall not use or disburse the Settlement Fund except as provided in the Stipulation for Settlement II, or by an order of the Court.  Subject to further order and direction by the Court, the Settlement Escrow Agent is authorized to execute such transactions on behalf of the Class

members as are consistent with the terms of the Stipulation for Settlement II.  The parties hereto agree that the Settlement Fund (which, after the payments contemplated by subsections (a)(i), (a)(ii), and (a)(iii) of this ¶ 8, shall become the Net Settlement Fund) is intended to be a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1 and that the Settlement Escrow Agent, as administrator of the Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be responsible for filing tax returns for the Settlement Fund and paying from the Settlement Fund any Taxes owed with respect to the Settlement Fund.  Counsel for Defendants agree to provide promptly to the Settlement Escrow Agent the statement described in Treasury Regulation § 1.468B-3(e).

        b.    All (i) taxes on the income of the Settlement Fund and (ii) expenses and costs incurred or expected to be incurred in connection with the taxation of the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants) (collectively "Taxes") shall be paid out of the Settlement Fund, shall be considered to be a cost of administration of the settlement and shall be timely paid by the Settlement Escrow Agent without prior Order of the Court.

**ADMINISTRATION**

9.    The Claims Administrator shall administer the Settlement under the supervision of Lead Class Counsel and subject to the jurisdiction of the Court.  Except as stated in ¶ 20 hereof, the Remaining Defendants shall have no responsibility for the administration of Settlement II and shall have no liability to the Class in connection with such administration.  Defendants' Counsel shall cooperate in the administration of Settlement II to the extent reasonably necessary to effectuate its terms.

10.   Prior to the Effective Date, the Settlement Administration Escrow Agent may expend from the Settlement Administration Account, without further approval from the Remaining Defendants or the Court, up to the sum of $120,000 to pay the reasonable costs and expenses associated with the administration of Settlement II, including without limitation, the costs of identifying any new members of the Class and effecting mail notice and Publication Notice.  Such amounts shall include, without limitation, the actual costs of publication, printing and mailing the Notice, reimbursements to nominee owners for forwarding notice to their beneficial owners, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims.  In

addition, the Settlement Administration Account shall be
administered in the following manner:

(i)   The Settlement Administration Escrow Agent shall
immediately invest the funds in the Settlement Administration
Account in an interest bearing bank account insured by the FDIC.

(ii)   All interest or other income earned by the
Settlement Administration Account shall become part of the funds in
the Settlement Administration Account.

(iii)   To the extent that the Settlement Administration
Account is not exhausted by the notice and administration process,
it shall be available for the benefit of the Class.

(iv)   In the event that Settlement II is not consummated,
the Remaining Defendants, or any of them, shall be entitled to
recover only that portion of the Settlement Administration Account
that has not been consumed by the notice and administration process
at that time either by expenses paid or incurred.

11.   All funds held or invested by the Settlement
Administration Escrow Agent shall be deemed in custodia legis of
the Court and shall remain subject to the jurisdiction of the Court
until such time as such funds shall be distributed, or returned to
the Remaining Defendants or to Interstate, as applicable, pursuant
to this Stipulation and/or further order(s) of the Court.

12.   The Parties intend that the funds in the Settlement

-29-

Administration Account be a "qualified settlement fund" for federal income tax purposes pursuant to Treasury Regulation section 1.468B-1, and state income tax purposes, and to that end the Parties shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.

(i)    The Settlement Administration Escrow Agent, and, as reasonably requested and required by the Settlement Administration Escrow Agent, the Remaining Defendants, shall jointly and timely make such elections as are necessary to carry out the provisions of this ¶ 12, including a "relation back election" as described in Treasury Regulation § 1.468B-1(j)(2) to the earliest permitted date so as to enable the Settlement Administration Account to be treated as a qualified settlement fund from the earliest date possible. Such election shall be made in compliance with the procedures and requirements contained in such regulation.  It shall be the responsibility of the Settlement Administration Escrow Agent to timely and properly prepare and deliver the necessary documentation with respect to the Settlement Administration Account for signature by all necessary parties and thereafter take all such actions as may be necessary or appropriate to that end.

(ii)    For the purposes of § 468B of the Internal Revenue Code of 1986, 26 U.S.C. § 468B, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement

Administration Account shall be the Settlement Administration Escrow Agent. The Settlement Administration Escrow Agent, as administrator of the Settlement Administration Account, shall timely and properly file all informational and tax returns necessary or advisable for the Settlement Administration Account prior to and after the Effective Date, and shall pay from the Settlement Administration Account any Taxes owed with respect to the Settlement Administration Account.

(iii) The Remaining Defendants shall have no liability or responsibility for the payment of any Administration Account Taxes (as defined in ¶ 13 below). The Settlement Administration Escrow Agent shall indemnify and hold these Defendants harmless for any Administration Account Taxes (including, without limitation, Administration Account Taxes payable by reason of any such indemnification).

(iv) The Parties agree to cooperate with the Settlement Administration Escrow Agent, one another, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 12.

(v) For the purpose of this ¶ 12, references to the Settlement Administration Account shall include all funds in the Settlement Administration Account and any interest and earnings thereon.

13.  All (i) taxes or estimated taxes on the income of the
Settlement Administration Account, including, without limitation,
any interest and penalties determined to be due thereon, or any
taxes or tax detriments that may be imposed upon the Remaining
Defendants with respect to any income earned by the Settlement
Administration Account, for any period during which the Settlement
Administration Account does not qualify as a "qualified settlement
fund" for federal or state income tax purposes, and (ii) reasonable
expenses and costs incurred in connection with the taxation of the
Settlement Administration Account (including, without limitation,
expenses of tax attorneys and accountants, and mailing and
distribution costs and expenses relating to filing the returns
described in ¶ 15)(collectively, "Administration Account Taxes")
shall be paid out of the Settlement Administration Account, shall
be considered to be a cost of administration of Settlement II and
shall be timely paid by the Settlement Administration Escrow Agent
without further order of the Court, and the Settlement
Administration Escrow Agent shall be obligated (notwithstanding
anything herein to the contrary) to withhold from distribution to
the Class any funds necessary to pay such amounts, including the
establishment of adequate reserves for any Administration Account
Taxes (as well as any amounts that may be required to be withheld
under Treasury Regulation § 1.468B-2).

## ATTORNEYS' FEES AND EXPENSES

14.  Lead Class Counsel intend to apply to the Court for an award from the Settlement Fund of attorneys' fees not to exceed 25% of the Settlement Fund, plus interest, and reimbursement of expenses up to a maximum amount of $45,000, plus interest.  Such attorneys' fees, expenses, and interest as are awarded by the Court shall be payable from the Settlement Fund to Lead Class Counsel immediately upon the Effective Date, as defined in ¶ 29 below.

The attorneys' fees, expenses and costs, as awarded by the Court (the "Fee and Expense Award"), may be transferred to Lead Class Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses notwithstanding the existence of any timely objections thereto, or potential appeal therefrom, or collateral attack on the Settlement or any part thereof.  Lead Class Counsel shall thereafter allocate the Fee and Expense Award amongst Plaintiffs' Counsel or any of them in a manner in which Lead Class Counsel, in good faith believes reflects the contributions of each firm to the prosecution and settlement of the Consolidated Actions; provided, however, that in the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or the Stipulation for Settlement II is canceled or terminated for any other reason, and in the event that the Fee and

-33-

Expense Award has been paid to any extent, then Lead Class Counsel shall within ten (10) days from receiving written notice from Defendants' Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund, all amounts theretofore removed from the Settlement Fund pursuant to this paragraph, including such amounts, if any, as have been paid over by Lead Class Counsel to other counsel, plus interest thereon from the time of withdrawal to the date of refund at the same rate as earned on the Settlement Fund.

## ADMINISTRATION EXPENSES

15.    Lead Class Counsel will apply to the Court, on notice to Defendants' Counsel, for an order (the "Class Distribution Order") approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the claims submitted herein and approving any fees and expenses not previously applied for, including the fees and expenses of the Claims Administrator, and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

## DISTRIBUTION TO AUTHORIZED CLAIMANTS

16.    The Claims Administrator shall determine each Authorized Claimant's pro rata share of the "Net Settlement Fund" based upon each Authorized Claimant's Recognized Claim (as defined in the Plan of Allocation described in the Notice annexed hereto as Exhibit 1

-34-

to Exhibit A, or in such other Plan of Allocation as the Court approves).

17.  The Plan of Allocation proposed in the Notice is not a necessary term of the Stipulation for Settlement II, and it is not a condition of the Stipulation for Settlement II that that Plan of Allocation be approved.

18.  Each Authorized Claimant shall be allocated a <u>pro</u> <u>rata</u> share of the Net Settlement Fund based on his or her Recognized Claim compared to the total Recognized Claims of all accepted claimants.  This is not a claims-made settlement.  The Remaining Defendants shall not be entitled to get back any of the settlement monies once Settlement II becomes final.  These Defendants shall have no involvement in reviewing or challenging claims.

<u>**ADMINISTRATION OF SETTLEMENT II**</u>

19.  Any member of the Class who does not submit a valid Proof of Claim will not be entitled to receive any of the proceeds from the Net Settlement Fund but will otherwise be bound by all of the terms of the Stipulation for Settlement II and Settlement II, including the terms of the Judgment to be entered in the Consolidated Actions and the releases provided for herein, and will be barred from bringing any action against any of the Released Parties for Settlement II concerning Settlement II Claims, to the extent provided herein.

-35-

20.  Lead Class Counsel shall be responsible for supervising the administration of Settlement II and disbursement of the Net Settlement Fund by the Claims Administrator.  Except for Nichols' obligation to pay Nichols' Cash Settlement Amount, Hughes and Whittelsey's obligations to pay Hughes and Whittelsey's Cash Settlement Amount, and Interstate's obligation to pay the McCullough Sherrill Defendants' Cash Settlement Amount, in accordance with the terms hereof, the Remaining Defendants shall have no liability, obligation or responsibility for the administration of Settlement II or disbursement of the Net Settlement Fund.  Plaintiffs' Lead Class Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Proofs of Claim submitted in the interests of achieving substantial justice.

21.  For purposes of determining the extent, if any, to which a Class member shall be entitled to be treated as an "Authorized Claimant", the following conditions shall apply:

(a)  Each Class member shall be required to submit a "Proof of Claim" (see attached Exhibit 2 to Exhibit A), supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as Lead Class Counsel, in their discretion, may deem acceptable.  However, if the Settlement II Class Member submitted a proof of claim form in

connection with Settlement I, the Claims Administrator has a record

of that information, and does not need to resubmit the transaction

information required by the Proof of Claim;

(b)   All Proofs of Claim must be submitted by the date

specified in the Notice unless such period is extended by order of

the Court.  Any Class member who fails to submit a Proof of Claim

by such date shall be forever barred from receiving any payment

pursuant to the Stipulation for Settlement II (unless, by order of

the Court, a later submitted Proof of Claim by such Class member is

approved), but shall in all other respects be bound by all of the

terms of the Stipulation for Settlement II, including the terms of

the Judgment to be entered in the Consolidated Actions and the

releases provided for herein, and will be barred from bringing any

action against any of the Released Parties for Settlement II

concerning the Settlement II Claims, to the extent provided herein.

Provided that it is received before the motion for the Class

Distribution Order is filed, a Proof of Claim shall be deemed to

have been submitted when posted, if received with a postmark

indicated on the envelope and if mailed by first-class mail and

addressed in accordance with the instructions thereon.  In all

other cases, the Proof of Claim shall be deemed to have been

submitted when actually received by the Claims Administrator;

(c)   Each Proof of Claim shall be submitted to and

-37-

reviewed by the Claims Administrator, under the supervision of Lead Class Counsel, who shall determine in accordance with this Stipulation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(d)    Proofs of Claim that do not meet the submission requirements may be rejected.  Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the Claimant in order to remedy the curable deficiencies in the Proof of Claims submitted.  The Claims Administrator, under supervision of Lead Class Counsel, shall notify, in a timely fashion and in writing, all Claimants whose Proofs of Claim they propose to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below;

(e)    If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the

-38-

Court.  If a dispute concerning a claim cannot be otherwise
resolved, Lead Class Counsel shall thereafter present the request
for review to the Court; and

      (f)  The administrative determinations of the Claims
Administrator accepting and rejecting claims shall be presented to
the Court, on notice to Defendants' Counsel, for approval by the
Court in the "Class Distribution Order".

    22.  Each Claimant shall be deemed to have submitted to the
jurisdiction of the Court with respect to the Claimant's claim, and
the claim will be subject to investigation and discovery under the
Federal Rules of Civil Procedure, provided that such investigation
and discovery shall be limited to that Claimant's status as a Class
member and the validity and amount of the Claimant's claim.  No
discovery shall be allowed on the merits of the Consolidated
Actions or Settlement II in connection with processing of the
Proofs of Claim.

    23.  Payment pursuant to the Stipulation for Settlement II
shall be deemed final and conclusive against all Class members.
All Class members whose claims are not approved by the Court shall
be barred from participating in distributions from the Net
Settlement Fund, but otherwise shall be bound by all of the terms
of the Stipulation for Settlement II and Settlement II, including
the terms of the Judgment to be entered in the Consolidated Actions

and the releases provided for herein, and will be barred from
bringing any action against the Released Parties for Settlement II
concerning the Settlement II Claims.

24.  All proceedings with respect to the administration,
processing and determination of claims described by ¶ 21 of the
Stipulation for Settlement II and the determination of all
controversies relating thereto, including disputed questions of law
and fact with respect to the validity of claims, shall be subject
to the jurisdiction of the Court.

25.  The Net Settlement Fund shall be distributed to
Authorized Claimants by the Claims Administrator only after the
Effective Date and after:  (i) all Claims have been processed, and
all Claimants whose Claims have been rejected or disallowed, in
whole or in part, have been notified and provided the opportunity
to be heard concerning such rejection or disallowance; (ii) all
objections with respect to all rejected or disallowed claims have
been resolved by the Court, and all appeals therefrom have been
resolved or the time therefor has expired; (iii) all matters with
respect to attorneys' fees, costs, and disbursements have been
resolved by the Court, all appeals therefrom have been resolved or
the time therefor has expired; and (iv) all costs of administration
have been paid.

## TERMS OF PRELIMINARY APPROVAL ORDER

26.    Concurrently with their application for preliminary Court approval of Settlement II contemplated by the Stipulation for Settlement II, Lead Class Counsel and Defendants' Counsel jointly shall apply to the Court for entry of a Preliminary Approval Order, substantially in the form annexed hereto as Exhibit A.

## TERMS OF ORDER AND FINAL JUDGMENT

27.    If Settlement II as contemplated by the Stipulation for Settlement II is approved by the Court, counsel for the Parties shall request that the Court enter an Order and Final Judgment substantially in the form annexed hereto as Exhibit B.

## SUPPLEMENTAL AGREEMENT

28.    Simultaneously herewith, Lead Class Counsel and Defendants' Counsel are executing a "Supplemental Agreement" setting forth certain conditions under which the Stipulation for Settlement II may be withdrawn or terminated by Defendants Nichols, Hughes, Whittelsey, and/or the McCullough Sherrill Defendants (or any of them) if potential Class members who purchased in excess of a certain number of shares of JDN securities traded during the Class Period exclude themselves from the Class.  The Supplemental Agreement shall be presented to the Court at the time of preliminary approval and shall not take effect prior to the Settlement Fairness Hearing unless a dispute arises as to its

-41-

terms.  In the event of a withdrawal from the Stipulation for
Settlement II pursuant to the Supplemental Agreement, the
Stipulation for Settlement II  shall become null and void and of no
further force and effect and the provisions of ¶ 31 shall apply.
Notwithstanding the foregoing, the Stipulation for Settlement II
shall not become null and void as a result of the election by
Defendants Nichols, Hughes, Whittelsey, and/or the McCullough
Sherrill Defendants (or any of them) to exercise their option to
withdraw from the Stipulation for Settlement II pursuant to the
Supplemental Agreement until the conditions set forth in the
Supplemental Agreement have been satisfied.

<u>**EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION**</u>

29.  The Effective Date of Settlement II shall be the date
when all the following shall have occurred:

(a)  entry of the Preliminary Approval Order in all
material respects in the form annexed hereto as Exhibit A;

(b)  approval by the Court of Settlement II, following
notice to the Class and a hearing, as prescribed by Rule 23 of the
Federal Rules of Civil Procedure; and

(c)  entry by the Court of an Order and Final Judgment,
in all material respects in the form set forth in Exhibit B annexed
hereto, and the expiration of any time for appeal or review of such
Order and Final Judgment, or, if any appeal is filed and not

-42-

dismissed, after such Order and Final Judgment is upheld on appeal
in all material respects and is no longer subject to review upon
appeal or review by writ of certiorari, or, in the event that the
Court enters an order and final judgment in form other than that
provided above ("Alternative Judgment") and none of the parties
hereto elect to terminate Settlement II, the date that such
Alternative Judgment becomes final and no longer subject to appeal
or review.

30.  Defendants' Counsel or Lead Class Counsel shall have the
right to terminate Settlement II and the Stipulation for Settlement
II by providing written notice of their election to do so
("Termination Notice") to all other parties hereto within thirty
(30) days of:  (a) the Court's declining to enter the Preliminary
Approval Order in any material respect; (b) the Court's refusal to
approve the Stipulation for Settlement II or any material part of
it; (c) the Court's declining to enter the Order and Final Judgment
in any material respect, other than with respect to the Plan of
Allocation or the award of attorneys' fees and expenses to Lead
Class Counsel; (d) the date upon which the Order and Final Judgment
is modified or reversed in any material respect – other than with
respect to the Plan of Allocation or the award of attorneys' fees
and expenses to Lead Class Counsel - by the Court of Appeals or the
Supreme Court; or (e) the date upon which an Alternative Judgment

-43-

is modified or reversed in any material respect - other than with respect to the Plan of Allocation or the award of attorneys' fees and expenses Lead Class Counsel - by the Court of Appeals or the Supreme Court.

31.  Except as otherwise provided herein, in the event Settlement II is terminated or fails to become effective for any reason, then the parties to the Stipulation for Settlement II shall be deemed to have reverted to their respective status in the Action as of July 31, 2002 and, except as otherwise expressly provided, the parties shall proceed in all respects as if the Stipulation for Settlement II and any related orders had not been entered, and any portion of Nichols' Cash Settlement Amount, Hughes and Whittelsey's Cash Settlement Amount, or the McCullough Sherrill Defendants' Cash Settlement Amount, which were previously paid by Defendants Nichols, Hughes, and Whittelsey, and by Interstate (on behalf of the McCullough Sherrill Defendants), respectively, together with any interest earned thereon, less any Taxes and professional fees due with respect to such income, and less costs of administration and notice actually incurred and paid or payable from the Cash Settlement Amount (not to exceed $120,000 without the prior approval of the Remaining Defendants or the Court), shall be returned to the person(s) or entity making the deposits.

-44-

## NO ADMISSION OF WRONGDOING

32.   The Stipulation for Settlement II, whether or not consummated, and any proceedings taken pursuant to it:

(a)   shall not be offered or received against any of the Remaining Defendants or against Lead Plaintiff or the Class as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of these Defendants or by Lead Plaintiff or any of the Class members with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that had been or could have been asserted in the Consolidated Actions or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Consolidated Actions or in any litigation, or of any liability, negligence, fault, or wrongdoing of any of the Remaining Defendants;

(b)   shall not be offered or received against any of the Remaining Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of these Defendants, or against Lead Plaintiff and the Class as evidence of any infirmity in the claims of Lead Plaintiff and the Class;

(c)   shall not be offered or received against any of the Remaining Defendants or against Lead Plaintiff or the Class as

-45-

evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Parties to the Stipulation for Settlement II, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation for Settlement II; provided, however, that if the Stipulation for Settlement II is approved by the Court, any of the Remaining Defendants may refer to it to effectuate the liability protection granted them hereunder;

(d)    shall not be construed against any of the Remaining Defendants or Lead Plaintiff and the Class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

(e)    shall not be construed as or received in evidence as an admission, concession or presumption against Lead Plaintiff or the Class or any of them that any of their claims are without merit or that damages recoverable under the Consolidated Complaint would not have exceeded the sum of Nichols' Cash Settlement Amount, Hughes and Whittelsey's Cash Settlement Amount, and the McCullough Sherrill Defendants' Cash Settlement Amount.

## MISCELLANEOUS PROVISIONS

33.  All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

34.  Defendants Nichols, Hughes, and Whittelsey, and the McCullough Sherrill Defendants each warrant as to himself or itself that, as to the payments made by or on behalf of him or the McCullough Sherrill Defendants, at the time of such payment that the Defendant or Interstate made or caused to be made pursuant to ¶¶ 4-6 above, he or it, and for purposes only of the McCullough Sherrill Defendants, Interstate, was not insolvent nor did nor will the payment required to be made by or on behalf of him or the McCullough Sherrill Defendants render such Defendant or Interstate insolvent within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof. This warranty is made by each such Defendant and not by such Defendant's Counsel.

35.  If a case is commenced in respect of any of Defendants Nichols, Hughes, and Whittelsey, and/or Interstate under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of such Defendant to be a

preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Settlement Fund by Defendants Nichols, Hughes, and/or Whittelsey, and/or any of the McCullough Sherrill Defendants and/or Interstate acting on behalf of the McCullough Sherrill Defendants then, at the election of Lead Class Counsel, the parties shall jointly move the Court to vacate and set aside the releases given and Judgment entered in favor of Defendants Nichols, Hughes, and/or Whittelsey, and/or any of the McCullough Sherrill Defendants pursuant to the Stipulation for Settlement II, which releases and Judgment shall be null and void, and the then non-settling parties shall be restored to their respective positions in the litigation as of July 31, 2002 and any cash amounts in the Settlement Fund shall be returned as provided in ¶ 10 above.

36.    The Parties to the Stipulation for Settlement II intend Settlement II to be a final and complete resolution of all disputes asserted or that could be asserted by the Class members against the Released Parties for Settlement II with respect to the Settlement II Claims, except as provided herein.  Accordingly, Plaintiffs and Defendants Nichols, Hughes, Whittelsey, and the McCullough Sherrill Defendants agree not to assert in any forum that the litigation was brought by Plaintiffs or defended by these Defendants in bad faith

or without a reasonable basis.  The Parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Consolidated Actions.  The Parties agree that the amount paid and the other terms of Settlement II were negotiated at arm's length in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

37.  The Stipulation for Settlement II may not be modified or amended, nor may any of its provisions be waived except by a writing signed by all Parties hereto or their successors-in-interest.

38.  The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

39.  The administration and consummation of Settlement II as embodied in the Stipulation for Settlement II shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and expenses to Lead Class Counsel and enforcing the terms of the Stipulation for Settlement II.

40.  The waiver by one Party of any breach of the Stipulation

for Settlement II by any other Party shall not be deemed a waiver of any other prior or subsequent breach of the Stipulation for Settlement II.

41. The Stipulation for Settlement II and its exhibits and the Supplemental Agreement constitute the entire agreement among the parties hereto concerning the second and final settlement of the Consolidated Actions, and no representations, warranties, or inducements have been made by any party hereto concerning the Stipulation for Settlement II and its exhibits and the Supplemental Agreement other than those contained and memorialized in such documents.

42. The Stipulation for Settlement II may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to the Stipulation for Settlement II shall exchange among themselves original signed counterparts.

43. The Stipulation for Settlement II shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

44. The construction, interpretation, operation, effect and validity of the Stipulation for Settlement II, and all documents necessary to effectuate it, shall be governed by the internal laws

of the State of Georgia without regard to conflicts of laws, except
to the extent that federal law requires that federal law govern.

45.   The Stipulation for Settlement II shall not be construed
more strictly against one Party than another merely by virtue of
the fact that it, or any part of it, may have been prepared by
counsel for one of the Parties, it being recognized that it is the
result of arm's-length negotiations between the Parties and all
Parties have contributed substantially and materially to the
preparation of the Stipulation for Settlement II.

46.   All counsel and any other person executing the
Stipulation for Settlement II and any of the exhibits hereto, or
any related settlement documents, warrant and represent that they
have the full authority to do so and that they have the authority
to take appropriate action required or permitted to be taken
pursuant to the Stipulation for Settlement II to effectuate its
terms.

47.   Lead Class Counsel and Defendants' Counsel agree to
cooperate fully with one another in seeking Court approval of the
Preliminary Approval Order, the Stipulation for Settlement II, and
promptly to agree upon and execute all such other documentation as
may be reasonably required to obtain final approval by the Court of
Settlement II.

-51-

DATED: _____ , 2003

CHITWOOD & HARLEY, LLP

By: _____

Martin D. Chitwood
Georgia Bar No. 124950
Lauren S. Antonino
Georgia Bar No. 652408
Krissi T. Gore
Georgia Bar No. 687020
Meryl W. Edelstein
Georgia Bar. No. 238919
CHITWOOD & HARLEY
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, Georgia 30309
Tel: (404) 873-3900
Fax: (404) 876-4476

**Lead Class Counsel for Plaintiffs
and the Class**

ROGERS AND HARDIN

By: _____

Tony G. Powers
Georgia Bar No. 586586
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303-1601
Tel: (404) 522-4700
Fax: (404) 525-2224

**Counsel for Defendant J. Donald Nichols**

**LEONARD & SWENSON, LLP**

By: _____
    William G. Leonard
    Georgia Bar No. 446912
    2115 East Lake Road
    Atlanta, GA  30307
    Tel:  (404) 371-0630
    Fax:  (404) 371-0612

    **Counsel for Defendants Jeb L. Hughes
    and C. Sheldon Whittelsey, IV**

**GORBY, REEVES & PETERS, PC**

By: _____
    Michael S. Reeves
    Georgia Bar No. 598375
    Resurgens Plaza, 21st Floor
    945 East Paces Ferry Road
    Atlanta, GA 30326
    Tel: (404) 239-1150
    Fax: (404) 239-1179

    **Counsel for Defendants William D. Brunstad
    and McCullough Sherrill LLP**

**HAWKINS & PARNELL**

By: _____
H. Lane Young
Georgia Bar No. 781950
Kim M. Jackson
Georgia Bar No. 387420
Christine L. Mast
Georgia Bar No. 461349
4000 Suntrust Plaza
303 Peachtree Street, NE
Atlanta, GA 30308-3243
Tel: (404) 614-7400
Fax: (404) 614-7500

**Counsel for Defendant Bradley J. Taylor**



# EXHIBIT / ATTACHMENT

A

**(To be scanned in place of tab)**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | : | |
|---|---|---|
| IN RE:  JDN REALTY CORP. | : | Master File No. |
| SECURITIES LITIGATION | : | 1:00-CV-0396-RWS |
| | : | |

## PRELIMINARY ORDER IN CONNECTION
## WITH SECOND AND FINAL CLASS ACTION SETTLEMENT PROCEEDINGS

This matter is before the Court on the Parties' joint motion
for approval of a proposed class action settlement against
Defendants J. Donald Nichols ("Nichols"), Jeb L. Hughes
("Hughes"), C. Sheldon Whittelsey, IV ("Whittelsey"), William D.
Brunstad ("Brunstad"), Bradley J. Taylor ("Taylor"), and the law
firm of McCullough Sherrill LLP ("McCullough Sherrill") (Brunstad,
Taylor, and McCullough Sherrill being the "McCullough Sherrill
Defendants") (collectively, Nichols, Hughes, Whittelsey, and the
McCullough Sherrill Defendants are the "Remaining Defendants").
If approved, this settlement would be the second and final
settlement in this class action against all the Remaining
Defendants.  This Court previously entered an Order on November
15, 2001, which approved a class action settlement against some
but less than all of the original Defendants, including JDN Realty
Corporation ("JDN") and JDN Development Company.

The proposed settlement encompasses the following cases

pending before this Court (collectively, the "Consolidated Actions"):

Addington, et al. v. JDN Realty, Inc., et al., Civil Action No. 1:00-CV-0692;

Brazier, et al. v. JDN Realty Corporation, et al., Civil Action File 1:00-CV-0565;

Dolan v. J.D. Nichols, et al., Civil Action No. 3-00-0443 (transferred to this District from the United States District Court in Nashville);

Farrell, et al. v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0402;

Harrison, et al. v. J. Donald Nichols, et al., Civil Action No. 1:00-CV-0508;

Hoffman, et al. v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0518;

Jackson, et al. v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0396;

Kendall, et al. v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0397;

Kwalbrun, et al. v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0437;

Laiks, et al. v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0403;

Laurita, et al. v. J. Donald Nichols, et al., Civil Action No. 1:00-CV-0454;

Lopez, et al. v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0436;

Ludin, et al. v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0417;

Lynch, et al. v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-2539;

Mitchell, et al. v. JDN Realty Corporation, et al., Civil Action No. 3-00-0167 (transferred to this District from the United States District Court in Nashville);

Morse v. J. Donald Nichols, et al., Civil Action No. 1:00-CV-0401;

Pitts v. JDN Realty Corp., et al., Civil Action No. 1:00-CV-0414;

Rowan v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0449; and

Washington Savings Bank v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0899.

The Parties have submitted a Stipulation and Agreement of Settlement dated October 15, 2003 (the "Stipulation for Settlement II") that, together with the exhibits accompanying the Stipulation for Settlement II, sets forth the terms and conditions for a settlement and dismissal of the Consolidated Actions with prejudice as to the Remaining Defendants. Once this settlement is approved, the claims against the Remaining Defendants will be released.

Having read and considered the Stipulation for Settlement II (the defined terms of which are incorporated herein) and the exhibits annexed thereto, and having heard the Parties and given due consideration, the Court ORDERS as follows:

-3-

1.    Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), the Court conditionally certifies the following Class for settlement purposes only:

> All persons who purchased JDN securities
> during the period from February 15, 1997
> through April 12, 2000 inclusive (the "Class
> Period"). Excluded from the Class are
> Defendants, officers and directors of the
> Company, members of the immediate families of
> the individual Defendants and each of their
> heirs, successors and assigns and any entity
> in which any Defendant has or has had a
> controlling interest.

The Class, minus members of the Class who submit valid and timely requests for exclusion from the Class pursuant to this Order and the Notice sent to all members of the Class, shall be referred to as the "Settlement II Class."

2.    With respect to the Class, and upon the Stipulation of the Parties for the sole purpose of Settlement II, this Court finds that:

> (a)   The members of the Class are so numerous that
> joinder of all Class members is impracticable.
> During the Class Period, there were more than
> thirty-three million (33,000,000) shares of JDN
> common stock outstanding and approximately two
> million (2,000,000) shares of JDN Preferred Stock

-4-

outstanding.

(b)    There are questions of law and fact common to the
Class that predominate over any individual
questions including, but not limited to:    (i)
whether JDN's financial statements and results of
operation were materially false and misleading in
that they, among other things, failed to disclose
and properly account for millions of dollars of
compensation to two of JDN's executive officers and
by failing to report material related party
transactions; (ii) whether Defendants violated
Sections 11, 12(a)(2), and 15 of the Securities Act
of 1933 (the "Securities Act"), Sections 10(b) and
20(a) of the Securities Exchange Act of 1934 (the
"Exchange Act") and Rule 10b-5 promulgated
thereunder; (iii) whether the Registration
Statements issued in connection with the March 1997
and Preferred Offerings were materially misleading;
(iv) whether, for purposes of the Exchange Act
claims only, the Section 10(b) Defendants (as
defined in the Consolidated Amended Class Action
Complaint) acted with scienter in misrepresenting

and/or omitting material facts; (v) whether, for
purposes of the Exchange Act claims only, the
Section 10(b) Defendants participated in and
pursued the common course of conduct complained of
herein; (vi) whether, for purposes of the
Securities Act claims only, certain Defendants had
exercised the requisite due diligence to avoid
liability; (vii) whether the market price of JDN
securities was inflated artificially as a result of
Defendants' alleged material misrepresentations
and/or omissions during the Class Period; and
(viii) whether and to what extent the Class members
have sustained damages, and the proper measure of
damages.

(c)    The claims of the Lead Plaintiff are typical of the
claims of the other Class members in that they all
arise from the same allegedly unlawful course of
conduct and are based on the same legal theories.
The Lead Plaintiff, like all other members of the
Class, claims that it was damaged by the same
misrepresentations and omissions that affected the
other Class members and by the same course of

-6-

conduct. Thus, the Lead Plaintiff would invoke the same legal theories to establish liability and damages under the federal securities laws that all other Class members would if they sued separately.

(d) The Lead Plaintiff and its counsel are fair and adequate representatives of the Class members. The Lead Plaintiff shares the interests of the other members of the Class in recovering the damages allegedly suffered as a result of Defendants' alleged violation of the securities laws identified above. The Lead Plaintiff has also retained experienced and well-qualified counsel to conduct the Consolidated Actions. Because the Lead Plaintiff does not have interests that are antagonistic to the other members of the Class and has retained qualified experienced counsel, the Lead Plaintiff and its counsel are fair and adequate representatives of the Class.

(e) A class action is superior to other available methods for the fair and efficient adjudication of the controversy as separate actions by each of the Class members would be repetitive, wasteful, and an

extraordinary burden on the court.

For these reasons, the Class satisfies the requisites of Fed. R. Civ. P. Rule 23 (a) and (b)(3).

For these reasons and subject to final determination following a hearing after notice to the Class, the Court preliminarily approves Settlement II as fair, reasonable, and adequate.

3.    A settlement hearing (the "Final Approval Hearing") shall be held before this Court on _____ ___, 2004, at _____ __.m. Courtroom _____, of the United States District Courthouse, 75 Spring Street, SW, Atlanta, Georgia, 30303 to determine: (a) whether proposed Settlement II of the Consolidated Actions on the terms and conditions provided for in the Stipulation for Settlement II is fair, reasonable, and adequate and should be approved by the Court, and whether a Judgment substantially in the form of Exhibit B to the Stipulation for Settlement II should be entered in the Consolidated Actions; (b) whether and in what amounts fees and reimbursement of expenses should be awarded to Lead Class Counsel; and (c) whether the Plan of Allocation should be approved by the Court.  The Court may adjourn the Final Approval Hearing or any adjournment thereof without further notice to Settlement Class members other than

-8-

notice at the courthouse on the date previously specified.
Pursuant to the Stipulation for Settlement II, Nichols is directed
to deliver to his counsel a certified check in the amount of
$440,000 on the morning of the Final Approval Hearing, prior to
commencement of the hearing.  Said check shall be delivered to
Lead Class Counsel promptly upon entry of the order of the Court
granting Final Approval.  Said check shall represent the Second
Installment on Nichols's Payment Obligation, as set forth in the
Stipulation for Settlement II.  The check shall be made payable to
Martin D. Chitwood, Escrow Agent for the JDN Securities Litigation
Settlement Fund.

    4.   The Court approves the issuance and dissemination of the
Notice of Pendency of Class Action, of Proposed Settlement of
Class Action as to all Remaining Defendants, of Final Approval
Hearing, and of Right to Appear (the "Notice"), the Proof of Claim
and Release ("Proof of Claim"), and the Summary Notice of Pendency
and Proposed Settlement of Class Action as to all Remaining
Defendants (the "Summary Notice"), substantially in the forms
attached to the Stipulation for Settlement II as Exhibits A-1, A-2
and A-3, respectively, and finds that the mailing, distribution,
and publication of the Notice and the Summary Notice in the manner
and form set forth in Paragraph 5 of this Order constitutes the

-9-

best notice practicable under the circumstances as well as valid,

due, and sufficient notice to all persons entitled thereto and

complies fully with the requirements of Fed. R. Civ. P. 23, the

Constitution of the United States, and any other applicable law.

5.    Lead Class Counsel were authorized to and did retain The

Garden City Group Inc. to act as the Claims Administrator to

supervise and administer the notice procedures as well as the

processing of claims in connection with Settlement I.  Lead Class

Counsel is authorized to continue to retain The Garden City Group

Inc. to act as the Claims Administrator to supervise and

administer the notice procedures as well as the processing of

claims in Settlement II as more fully set forth below:

(a)  Not later than twenty-five (25) days after this

Hearing Order is signed (the "Notice Date"), Lead Class Counsel

shall cause a copy of the Notice and the Proof of Claim to be

mailed by United States first class mail to all members of the

Class who can be identified through the stock transfer records

provided by JDN in connection with Settlement I and to all persons

who filed a proof of claim in connection with Settlement I.  The

Notice shall be provided to the persons or entities identified on

the transfer records at the addresses listed on the transfer

records.  Notice shall also be mailed to any updated addresses

that the Claims Administrator's records provide for any Class member who filed a proof of claim in connection with Settlement I.

(b)  Not later than ten (10) days after receipt of the Notice, nominees who purchased JDN common or preferred stock during the Class Period on behalf of beneficial owners shall send to such beneficial owners the Notice and Proof of Claim or shall send a list of such beneficial owners to the Claims Administrator who shall then promptly send the Notice and Proof of Claim to such persons.

(c)  Not later than ten (10) days after the Notice Date, Lead Class Counsel shall cause the Summary Notice to be published once in the national edition of The Wall Street Journal.

(d)  At or prior to the Final Approval Hearing, Lead Class Counsel shall serve upon Defendants' Counsel and file with the Court proof by affidavit of such publication and mailing.

6.    Class members who wish to exclude themselves from the Class must submit a written request to be excluded not later than _____, 2003.  The request must include: (a) the name of the case (In Re: JDN Realty Corporation Securities Litigation, Master File No. 1:00-CV-0396-RWS); (b) the Class member's name, address, and telephone number; (c) the Class member's social security or taxpayer identification number; (d) the number of

-11-

shares of JDN Realty common and/or preferred stock purchased by

the Class member during the Class Period, the number of shares of

JDN common and/or preferred stock sold during the Class Period,

the amount received therefor, and the number of shares still owned

as of the close of trading on April 12, 2000; (e) a statement that

the Class member requests to be excluded from the Settlement II

Class; and (f) the signature of the Class member.  The request for

exclusion should be addressed to:

> CHITWOOD & HARLEY, LLP
> Martin D. Chitwood
> 2300 Promenade II
> 1230 Peachtree Street, NE
> Atlanta, Georgia 30309

    7.   Settlement II Class members who have not requested

exclusion in the time and manner set forth in the Notice shall be

bound by all orders and judgments entered in the Consolidated

Actions, whether favorable or unfavorable to the Settlement II

Class.

    8.   Settlement II Class members who wish to participate in

Settlement II or in any other recovery in the Consolidated Actions

who completed and submitted a proof of claim in connection with

Settlement I and who received a distribution do not need to

resubmit their transaction information, although they must fill

out and return the other portions of the Proof of Claim form to be

eligible for a distribution from Settlement II.  The Settlement II
Class member's claim will automatically be deemed to be valid to
the extent that it was accepted in Settlement I.  If a Settlement
II Class member received a distribution in connection with
Settlement I but failed to correct a deficiency as to part of his
or her claim, such Settlement II Class member need not submit a
Proof of Claim for Settlement II in its entirety, unless the
Settlement II Class member wishes to have another opportunity to
correct the still unresolved deficiency.  The proof of claim
previously submitted will be deemed valid to the extent it was
accepted in connection with Settlement I.  Class members who wish
to participate in Settlement II who did not complete and submit a
proof of claim in connection with Settlement I must complete and
submit a Proof of Claim in accordance with the instructions
contained therein.  Every Proof of Claim must be filed no later
than _____, 2003, unless the deadline is extended by the
Court.

     9.  Pending final determination of whether Settlement II as
set forth in the Stipulation for Settlement II should be approved,
neither the Lead Plaintiff nor any of Plaintiffs' counsel, either
directly or in a representative capacity, or in any other
capacity, shall commence or prosecute any action or proceeding in

any court or tribunal, except for an action or proceeding that is pending as of the date of this Order, asserting any of the Settlement II Claims against any of the Released Parties for Settlement II (as defined in the Stipulation for Settlement II).

10.  Settlement II Class members may enter an appearance in the Consolidated Actions through counsel of their own choice, at their own expense.  Otherwise, they will be bound by the decisions of Lead Class Counsel.

11.  Any Settlement II Class member may appear at the Final Approval Hearing and show cause why proposed Settlement II as set forth in the Stipulation for Settlement II should not be approved as fair, reasonable, and adequate and why a judgment should not be entered dismissing the Consolidated Actions with prejudice against the Remaining Defendants in accordance with the terms of the Stipulation for Settlement II; why attorneys' fees and expense reimbursement should not be awarded to Lead Class Counsel in the amounts requested; and/or why the Plan of Allocation should not be approved.  No Settlement II Class member, or any other person, may contest the approval of the terms and conditions of proposed Settlement II, or the attorneys' fees and expense reimbursement to be awarded to Lead Class Counsel for distribution in accordance with Orders of this Court, or the Plan of Allocation, unless that

-14-

person has filed with the Court on or before _____, 2003 a

"Notice of Intention to Appear and Object" stating in detail the

reasons for their objections, and copies of any papers in support

of that person's position, and proof that such person is a

Settlement II Class member and, contemporaneous with filing such

documents relating to the Notice of Intention to Appear and

Object, serve such documents by hand or overnight delivery or by

facsimile with a contemporaneous copy by first class mail to:

> Martin D. Chitwood
> CHITWOOD & HARLEY, LLP
> 2300 Promenade II
> 1230 Peachtree Street, NE
> Atlanta, Georgia 30309
> Telephone (404) 873-3900
>
> Lead Class Counsel;
>
> Tony G. Powers
> ROGERS AND HARDIN, LLP
> 2700 International Tower
> Peachtree Center
> 229 Peachtree Street, NE
> Atlanta, GA 30303-1601
> (404) 522-4700
>
> Counsel for Defendant J. Donald Nichols;
>
> William G. Leonard
> LEONARD & SWENSON, LLP
> 2115 East Lake Road
> Atlanta, GA  30307
> (404) 371-0630
>
> Counsel for Defendants Jeb L. Hughes and C.
> Sheldon Whittelsey, IV;

-15-

Michael S. Reeves
GORBY, REEVES & PETERS, PC
Resurgens Plaza, 21st Floor
945 East Paces Ferry Road
Atlanta, GA 30326
Tel: 404-239-1150

Counsel for Defendants William D. Brunstad
and McCullough Sherrill LLP; and

H. Lane Young
HAWKINS & PARNELL
4000 Suntrust Plaza
303 Peachtree Street, NE
Atlanta, GA 30308-3243
Tel: 404-614-7400

Counsel for Defendant Bradley J. Taylor.

Any Settlement II Class member who does not make an objection in the time and manner provided shall be deemed to have waived such objection, shall be bound by the terms of the Stipulation for Settlement II and the Judgment approving the Stipulation for Settlement II, and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of proposed Settlement II as incorporated in the Stipulation for Settlement II, the Plan of Allocation, and the award of attorneys' fees and expense reimbursement to Lead Class Counsel, unless otherwise ordered by the Court.

12. Upon the Effective Date of Settlement II, all Settlement II Class members, whether or not they file a Proof of Claim, and

-16-

whether or not they participate in the Settlement Fund, shall be barred from asserting any Settlement II Claims against the Released Parties for Settlement II and shall be conclusively deemed to have released and be enjoined from asserting any and all such Settlement II Claims as against any and all of the Released Parties for Settlement II.  Notwithstanding anything herein to the contrary, however, the released Settlement II Claims do not include claims against any broker relating to churning or suitability, if any such claims exist.

13.  Upon the Effective Date, each of the Released Parties for Settlement II shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged the Lead Plaintiff and each of the other Settlement II Class members from all claims, demands, rights, liabilities and causes of action whatsoever, known or unknown, whether or not conceded or hidden, asserted or that might have been asserted arising out of, relating to or in connection with the institution, prosecution, settlement or resolution of the Consolidated Actions or Settlement II Claims.  Notwithstanding anything herein to the contrary, however, the Third-Party Intended Beneficiaries (as defined in the Stipulation for Settlement II) are not signatories to the Stipulation for Settlement II and thus

-17-

cannot be deemed to have given any releases in connection with this matter.

14. All papers in support of Settlement II, the Plan of Allocation, and any applications for attorneys' fees and reimbursement of expenses shall be filed at least five (5) days prior to the Final Approval Hearing.

SO ORDERED THIS _____ DAY OF_____, 2003.


_____
The Honorable Richard W. Story
Judge, United States District Court



# EXHIBIT / ATTACHMENT

(To be scanned in place of tab)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |  |
|---|---|---|
|  | : |  |
| IN RE: JDN REALTY CORP. | : | Master File No. |
| SECURITIES LITIGATION | : | 1:00-CV-0396-RWS |
|  | : |  |

**NOTICE OF PENDENCY OF CLASS ACTION, OF PROPOSED SECOND AND**
**FINAL SETTLEMENT OF CLASS ACTION AS TO ALL REMAINING DEFENDANTS,**
**OF FINAL APPROVAL HEARING, AND OF RIGHT TO APPEAR**

TO:  ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED JDN REALTY
CORPORATION SECURITIES BETWEEN FEBRUARY 15, 1997 AND APRIL 12,
2000, INCLUSIVE (the "CLASS PERIOD").

PLEASE READ THIS NOTICE CAREFULLY.  IF YOU ARE A MEMBER OF
THE CLASS DESCRIBED ABOVE ("CLASS MEMBER"), YOUR RIGHTS MAY
BE AFFECTED BY LEGAL PROCEEDINGS IN THIS LITIGATION AND YOU
MAY BE ENTITLED TO SHARE IN THE PROCEEDS PURSUANT TO THE
PROPOSED SETTLEMENT DESCRIBED BELOW.

The purpose of this Notice is to inform you of: (1) a

proposed settlement of this Class Action with Defendants J. Donald

Nichols ("Nichols"), Jeb L. Hughes ("Hughes"), C. Sheldon

Whittelsey, IV ("Whittelsey"), William D. Brunstad ("Brunstad"),

Bradley J. Taylor ("Taylor"), and the law firm of McCullough

Sherrill LLP ("McCullough Sherrill") (Brunstad, Taylor, and

McCullough Sherrill being the "McCullough Sherrill Defendants")

(Nichols, Hughes, Whittelsey, and the McCullough Sherrill

Defendants are collectively the "Remaining Defendants") and; (2)

the hearing to be held by the United States District Court for the

Northern District of Georgia, Atlanta Division (the "Court") on

_____, 2003 at 10:00 a.m. in Courtroom 2105 of the

United States Courthouse, 75 Spring Street, SW, Atlanta, Georgia

30303 to consider the fairness, reasonableness, and adequacy of

this proposed settlement (the "Final Approval Hearing").  If

approved, the settlement with the Remaining Defendants would be

the second and final settlement in this class action ("Settlement

II").  This Court previously entered an Order on November 15,

2001, which approved a class action settlement valued at

approximately $39,500,000 between the Class and JDN Realty Company

("JDN"), JDN Development Corporation ("JDN Development")

(collectively the "JDN Entities") and certain officers and

directors of JDN Realty ("Settlement I").

The terms of proposed Settlement II are summarized below and

are more fully set forth in the Stipulation and Agreement of

Settlement, which was filed with the Court on October 15, 2003 and

which is incorporated herein by reference (the "Stipulation for

Settlement II").

<div align="center">

**SUMMARY OF THE SETTLEMENT**

</div>

**A.    Statement of Plaintiffs' Pecuniary Recovery:**

Settlement II will result in the creation of a Settlement

Fund in the amount of Seven Million, Three Hundred Forty Thousand

<div align="center">-2-</div>

Dollars ($7,340,000) in cash, plus accrued interest as provided

herein.  Of that amount, however, $3,840,000 is subject to a

repayment obligation to JDN as provided for in Section 2.20 of the

Stipulation for Settlement I (the "Assurance Repayment

Obligation"), which was finally approved by the Court on November

15, 2001.  Thus, after repaying JDN any amounts due under the

Assurance Repayment Obligation, Settlement II will create a

$3,500,000 Settlement Fund for the Class, plus interest.

Settlement I, which was paid in both cash and stock, was valued at

approximately $39,500,000.  As a result, the aggregate recovery to

the Class, if Settlement II is approved, is valued at

approximately $43,000,000, plus interest.  From the aggregate

recovery, Lead Plaintiff Clarion-CRA Securities, L.P. ("Lead

Plaintiff" or "Clarion") estimates  that the average, per-share

recovery is: (1) $1.31 for every share of common stock that was

both purchased and not subsequently sold before JDN made its

disclosure on February 14, 2000 of the existence of compensation

and related party transactions (the "First Disclosure"); and (2)

$1.87 for every share of preferred stock that was both purchased

and not subsequently sold prior to JDN's First Disclosure.[1]

---

[1] A share of JDN common or preferred stock would fall into
this category so long as it was purchased on or after February

Approximately 94 percent and 97 percent of the damages suffered by common and preferred Class Members, respectively, were suffered by these groups of Class Members.

The recovery for shares acquired in the Class Period that were sold before the First Disclosure is lower because those shares have little to no legally cognizable damages since they were sold at the same rate of alleged artificial inflation at which they were purchased. The same is true for those shares acquired after the First Disclosure that were sold before the April 12, 2000 announcement of additional related party transactions and of cost discrepancies involving two of JDN's major anchor tenants (the "Second Disclosure"). Thus, when the entire Class is considered, the average aggregate recovery is $0.53 per share of common stock and $1.59 per share of preferred stock. Settlement II with the Remaining Defendants contributed to the aggregate recovery in the amount of $.04 per share of common stock and $.13 per share of preferred stock.

It is anticipated, based on Lead Class Counsel's experience,

---

15, 1997, when the Class Period began, and was held at least until after the First Disclosure was made. For purposes of this average per-share recovery, it does not matter if that share was subsequently sold after the First Disclosure or if it was never sold.

that significantly fewer than all Settlement II Class Members[2]
will file claims, in which case the average amount of recovery
will be higher.  In addition, depending on the timing of the
Settlement II Class Member's purchase(s), acquisition(s), and
sale(s), an individual Settlement II Class Member may receive more
or less than these estimated amounts.  (Please see the Plan of
Allocation, set forth in Section V below).

A detailed description of the terms of the Settlement II
Class's pecuniary recovery and the other terms of Settlement II is
contained in Section IV below.

**B.     Statement of Potential Outcome of Case:**

Lead Plaintiff and the Remaining Defendants disagree on
liability and damages and on the average amount of damages per
share that would be recoverable if Lead Plaintiff were to have
prevailed on each claim alleged.  The issues on which Lead
Plaintiff and the Remaining Defendants disagree include, but are
not limited to: (a) whether JDN or any of the Remaining Defendants
acted improperly or violated any provision of the federal
securities laws; (b) the appropriate economic model for

---

[2]  Settlement II Class Members are all those members of
the Class who do not validly exclude themselves from Settlement
II pursuant to Section VII of this Notice.

determining the amount by which JDN's common and/or preferred
stock was allegedly artificially inflated (if at all) during the
Class Period; (c) the effect of various market forces influencing
the trading price of JDN's common and/or preferred stock at
various times during the Class Period; (d) the extent to which the
various matters that Lead Plaintiff alleged were materially false
or misleading or that Lead Plaintiff alleged were omitted
influenced (if at all) the trading price of JDN's common and/or
preferred stock at various times during the Class Period; (e)
whether the statements made or facts allegedly omitted were
material or otherwise actionable under the federal securities
laws; and (f) whether Defendants Nichols', Hughes', and
Whittelsey's advice of counsel, or other defenses, as applicable,
shielded the Remaining Defendants from liability.

    C.   **Attorneys' Fees and Costs Sought**:

Lead Class Counsel, in compensation for their and other
Plaintiffs' Counsel's time and risk in prosecuting the
Consolidated Actions (as defined below) on a contingent fee basis,
intend to apply to the Court for an award of attorneys' fees in an
amount not to exceed twenty five percent (25%) of the new
Settlement Fund, or approximately $.01 of the common Class
Members' estimated per share additional recovery resulting from

-6-

the new Settlement Fund and $.03 of the preferred Class Members'
estimated per share additional recovery resulting from the new
Settlement Fund, as well as reimbursement for Plaintiffs'
Counsel's expenses incurred in the prosecution of this litigation
during the time since they last submitted a claim for
reimbursement, in an amount not to exceed $60,000, or less than
$0.01 of the common Class Members' estimated per share recovery
and less than $0.01 of the preferred Class Members' estimated per
share recovery.

**D.    Reasons For The Settlement:**

Lead Class Counsel are proposing Settlement II because they
believe that it is fair, reasonable, and adequate to the
Settlement II Class Members.  Lead Class Counsel have reached this
conclusion after investigating and considering, among other
things, the strengths and weaknesses of the Class's claims against
the Remaining Defendants, the uncertainties inherent in this
complex litigation, the financial wherewithal of Nichols, Hughes
and Whittelsey , and the substantial benefits of Settlement II to
Class Members.  For additional discussion regarding the merits of
Settlement II, see Section II, below.

**For further information regarding proposed Settlement II, you
may also contact Lauren S. Antonino, Chitwood & Harley, LLP, 1230**

-7-

Peachtree Street, NE, Suite 2300, Atlanta, Georgia, 30309,

Telephone: (404) 873-3900.

I.   **THE LITIGATION**

On or after February 15, 2000, at least nineteen cases were

filed as proposed class actions on behalf of certain persons who

purchased the common or preferred stock of JDN.  On April 17,

2000, the Court ordered the actions (collectively, the

"Consolidated Actions") consolidated for all purposes under the

caption In re: JDN Realty Corporation Securities Litigation, Civil

Action No. 1:00-CV-0396-RWS, and provided for the filing of a

consolidated amended class action complaint.

On April 17, 2000, Clarion moved for appointment as lead

plaintiff.  On June 9, 2000, the Court entered an Order appointing

Clarion as Lead Plaintiff and the law firm of Chitwood & Harley,

LLP as Lead Class Counsel.

The Consolidated Amended Class Action Complaint (the

"Consolidated Complaint") was filed on or about June 14, 2001.

The Consolidated Complaint asserts violations of Sections 11,

12(a)(2), and 15 of the Securities Act of 1933 (the "Securities

Act"), Sections 10(b) and 20(a) of the Securities Exchange Act of

1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

The Consolidated Complaint names the JDN Entities and J. Donald

-8-

Nichols, Elizabeth Nichols, Jeb L. Hughes, C. Sheldon Whittelsey, IV, Craig Macnab, William B. Green, William G. Byrnes, Haywood D. Cochrane, Jr., John D. Harris, Jr., William J. Kerley, Robert Corker, McCullough Sherrill, LLP, Bradley J. Taylor and William D. Brunstad as "Defendants" and alleges that material facts concerning the JDN Entities and the condition of its business and financial results were misrepresented in and omitted from various public statements made by Defendants during the Class Period. The Consolidated Complaint further alleges that material misrepresentations and omissions caused the price of JDN stock to be artificially inflated during the Class Period to the injury and damage of the Class Members.

On July 6, 2001, Clarion, on behalf of the Class, reached Settlement I in principle with all Defendants except the Remaining Defendants. Settlement I was preliminarily approved by the Court on August 15, 2001 and was finally approved on November 15, 2001.

During the late fall of 2001, the Remaining Defendants moved to dismiss the Consolidated Complaint. By Order dated January 25, 2002, the Court denied all the motions to dismiss, except the motions filed by McCullough Sherrill LLP and Bradley J. Taylor. The Court determined that McCullough Sherrill and Taylor were secondary actors who could not be held liable under an Eleventh

-9-

Circuit case entitled Ziemba v. Cascade International, Inc., 256
F.3d 1194 (11th Cir. 2001), which became binding precedent after
this case was filed but before the motions to dismiss were ruled
upon.  Defendant Brunstad moved to reconsider the Court's Order
denying his motion to dismiss, and his motion for reconsideration
was denied on November 5, 2002.

## II.  REASONS FOR THE SETTLEMENT

### A.  Plaintiffs' Statement

Lead Plaintiff and Defendants Hughes and Whittelsey engaged
in extensive mediation and related settlement talks from
approximately July 2000 through August 2002.  Lead Plaintiff and
Defendant Nichols engaged in extensive mediation and related
settlement talks from approximately July 2000 through October
2002.  Before entering into the settlements proposed in this case,
Lead Class Counsel conducted an extensive investigation of the
facts alleged in the Consolidated Complaint.

Before Lead Plaintiff agreed to participate in the mediation
of Settlement I, Lead Plaintiff and JDN entered into a detailed
confidentiality order pursuant to which Lead Plaintiff, through
Lead Class Counsel, requested and received tens of thousands of
pages of documents related to the issues in the case.

In addition to reviewing those documents, Lead Plaintiff and

-10-

Lead Class Counsel conducted their own independent investigation and research, which included: (i) interviews of key individuals; (ii) consultation with Plaintiffs' REIT, damages and accounting experts; (iii) review of JDN's United States Securities and Exchange Commission ("SEC") filings, annual reports, and other public documents and statements dated during, prior to and after the Class Period; (iv) review of publicly available reports of compensation of similarly situated executives in other public REITs; (v) analysis of the effect of JDN's June 15, 2000 restatement of certain of its prior financial statements; (vi) analysis of the effect of JDN's alleged overcharging of its two major anchor tenants as a result of certain cost discrepancies as disclosed by JDN on April 12, 2000; (vii) analysis of real estate and other publicly available records pertaining to Defendants' abilities to pay; (viii) review of judicial and administrative records relating to the backgrounds of certain former JDN employees and officers; and (ix) research of the applicable law with respect to the claims asserted by Plaintiffs and the defenses potentially available to Defendants.

During the mediation sessions, there were extensive discussions concerning the merits of the claims and the defenses thereto. Confidential information was also provided regarding

Nichols, Hughes, and Whittelsey's financial wherewithal and the
insurance policies covering the McCullough Sherrill Defendants,
which Lead Class Counsel took into consideration.  Lead Plaintiff
was actively involved with Lead Class Counsel in the litigation
and the settlement negotiations.

The information learned from this investigation and research
was beneficial in reaching proposed Settlement II.  After
participating in extensive document review and deposition
discovery in this case, Lead Class Counsel believes that
Settlement II is fair, reasonable and adequate and in the best
interests of the Class.

As a result of their investigation and research, Lead
Plaintiff and Lead Class Counsel believe that the claims asserted
in the Consolidated Complaint have merit.  Lead Plaintiff and Lead
Counsel, however, have taken into account the uncertain outcome
and risk of litigation, especially in a complex action such as
this, as well as the difficulties and delays inherent in such
litigation.  Lead Plaintiff and Lead Class Counsel are mindful,
for example, of the inherent problems of proof under and possible
defenses to the federal securities law violations asserted in the
Consolidated Complaint.  One of the principal defenses, for
example, involved whether Defendants Nichols, Hughes, and

-12-

Whittelsey relied in good faith on the advice of their counsel.
Defendants Nichols, Hughes, and Whittelsey claim that they had
allegedly been told by certain of JDN Realty Corp.'s former
attorneys that the compensation arrangements and related-party
transactions did not have to be disclosed.  Defendants Nichols,
Hughes, and Whittelsey also argued, among other things, that they
lacked the scienter necessary to find them liable under the
Settlement II Class's Exchange Act claims.

    In addition, McCullough Sherrill Brunstad and Taylor
contended that the Court's Order of January 25, 2002 correctly
relied upon Ziemba v. Cascade International, Inc., 256 F.3d 1194
(11th Cir. 2001), and correctly dismissed the claims against the
Firm and Taylor. Brunstad further asserted that the Court's
analysis of his Motion to Dismiss under a separate standard
because he was one of JDN's assistant secretaries was an error.
Brunstad argued that he was not an "executive officer" of JDN and
that he did not draft or review the Offering Materials, could not
control the general affairs of JDN, and could not control the
specific corporate policy which resulted in the primary liability.
As a result, Brunstad maintained that he would be dismissed at the
summary judgment stage because, under Ziemba, Brunstad could not

be held primarily liable for the wrongs alleged by the Class.

Lead Plaintiff and Lead Class Counsel also recognize and acknowledge the expense and likely lengthy duration of the continued proceedings necessary to prosecute their claims against the Remaining Defendants through trial and appeals, and the potential dwindling of these Defendants' assets that would be available from which to collect a judgment, even if the litigation were successfully resolved through trial. In the course of settlement negotiations, Lead Plaintiff and Lead Class Counsel thus compared the value of Settlement II to the present value of what might be recovered from the Remaining Defendants if this litigation continued for years.

Lead Plaintiff and Lead Class Counsel, therefore, have concluded that the settlement set forth in the Stipulation for Settlement II is fair, reasonable, and adequate, that it confers substantial benefits upon the Settlement II Class Members, and that it is in the best interests of the Settlement II Class Members. As further discussed below, the Remaining Defendants will or have paid, in the aggregate, $7,340,000 that will be deposited in escrow accounts belonging to the JDN Securities Litigation Settlement Fund. After repaying the Assurance

-14-

Repayment Obligation to JDN, the new Settlement Fund available to the Class from Settlement II shall be $3,500,000.  The Settlement Fund and all monies left over from Settlement I that were not claimed will be distributed first to those people who did not receive a distribution from Settlement I but whose claims, but for timeliness, have otherwise been deemed valid in part or in full as of the date of Stipulation for Settlement II ("Subsequent Claimants").  The Settlement Fund will thereafter be distributed to Settlement II Class Members after the deduction of expenses incurred in the issuance of notice to the Class and the administration of the Settlement Fund including, but not limited to, taxes legally due and payable on any interest, dividends received, and investment income ("Notice and Administration Expenses"), and after attorneys' fees and costs awarded to Plaintiffs' Counsel by the Court.  Distribution of the Settlement Fund, including the priority allocation to Subsequent Claimants, is discussed in detail in the Plan of Allocation discussed in Section V below. The average recovery per share is listed in the summary of this Notice.  If you wish to receive a copy of the previously-issued notice of Settlement I, please contact the Claims Administrator at 1-888-641-4430.

The Stipulation for Settlement II shall not be construed or

deemed to be a concession by any members of the Class of any infirmity in the claims asserted in the Consolidated Actions.

**B.    The Remaining Defendants' Statement and Denial of Wrongdoing**

The Remaining Defendants deny any and all allegations of wrongdoing or liability pleaded against them in the Consolidated Complaint.  These Defendants believe that they have meritorious defenses to the claims asserted against them in the Consolidated Complaint, as well as substantial defenses to the alleged damages relating to such claims.  Nonetheless, the Remaining Defendants have concluded that continuing to litigate the Consolidated Actions could be protracted and expensive and have decided to fully and finally settle the Consolidated Actions in the manner and upon the terms and conditions set forth in the Stipulation for Settlement II in order to limit further expense, inconvenience, and distraction.  The Remaining Defendants have taken into account the uncertainty and risks of litigation, especially in a complex action such as this, as well as the difficulties and delays inherent in such litigation.  The Stipulation for Settlement II shall not be construed or deemed to be evidence of an admission or concession by the Remaining Defendants with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, or

-16-

of any infirmity in the defenses the Remaining Defendants have or

may have asserted.  Nor shall the Stipulation for Settlement II be

admissible as evidence in any action other than to enforce the

terms of Settlement II.

## III. <u>CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES ONLY</u>

Lead Plaintiff, on behalf of the Settlement II Class, and the

Remaining Defendants (the "Parties") have agreed and stipulated,

subject to approval of the Court pursuant to Rule 23(e) of the

Federal Rules of Civil Procedure, that Lead Plaintiff

conditionally shall be appointed Class Representative for purposes

of settlement only and that the following class (the "Class")

shall be certified conditionally for purposes of settlement only

under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil

Procedure:

> All persons who purchased JDN securities
> during the period from February 15, 1997
> through April 12, 2000 inclusive.  Excluded
> from the Class are Defendants, officers and
> directors of the Company, members of the
> immediate families of the individual
> Defendants and each of their heirs, successors
> and assigns and any entity in which any
> Defendant has or has had a controlling
> interest.

The Class, minus the members of the Class who submit valid

and timely requests for exclusion from Settlement II pursuant to

-17-

the Preliminary Approval Order and this Notice, shall be referred
to as the "Settlement II Class."  In the event Settlement II is
not approved by the Court or Settlement II is terminated or fails
to become effective in accordance with the Stipulation for
Settlement II, the certification of the Settlement II Class
automatically shall be revoked without requiring any additional
action of the Parties or the Court, the Court's Preliminary
Approval Order (and Judgment[3] if one has been entered) shall be
vacated, and the Parties shall be restored to their respective
positions in the Consolidated Actions as of August 1, 2002.  In
such event, the Remaining Defendants reserve their right to object
to the certification of any class and neither the Plaintiffs nor
any other purported member of the Class alleged in the
Consolidated Complaint or any of the complaints in any of the
Consolidated Actions shall use the Stipulation for Settlement II,
the Preliminary Approval Order, any Final Judgment, or this Notice
in support of any argument in favor of class certification or

---

[3]  The Judgment is the order entered by the Court if it
approves the Settlement after the Final Approval Hearing.  The
Judgment becomes Final and is a Final Judgment when the Effective
Date of Settlement II has occurred, i.e., after the opportunity
for appeal has expired or, if an appeal is filed, after all
appeals have been successfully resolved, as is more fully defined
in the Stipulation for Settlement II.

-18-

class representation.

## IV.   SETTLEMENT TERMS

### A.   Payments To Be Made

Nichols, Hughes and Whittelsey have agreed to pay in the aggregate $2,340,000.  $1,500,000 of that amount will be paid by Nichols following final approval.  Ninety days after the Court finally approves Settlement II, $500,000 of the remaining $1,500,000 shall be due.  The final balance of $1,000,000 shall be due 180 days after the Court finally approves Settlement II. Nichols has a thirty day opportunity to cure any default under the Note.

Nichols also has provided extensive collateral to secure the payment obligation under the Promissory Note.  In addition, because the settlement with Nichols also resolved state court litigation that the JDN Entities and Nichols had with each other, the JDN Entities have guaranteed Nichols' Payment Obligation to the Settlement II Class.

Interstate Insurance Group (the insurer for the McCullough Sherrill Defendants) ("Interstate") has agreed to pay the sum of $5,000,000 (the "McCullough Sherrill Defendants' Cash Settlement Amount") in settlement of all claims against the McCullough Sherrill Defendants in both the instant action and the related

-19-

state court action.  Interstate has already delivered the

McCullough Sherrill Defendants' Cash Settlement Amount to Lead

Class Counsel.

All payments shall be made to Lead Class Counsel who will

hold all payments in escrow subject to distribution or payment by

further order of the Court except as specified herein.

**B.    Distribution of Settlement Fund**

All interest earned by the Settlement Fund shall become part

of the Settlement Fund.  The Settlement Escrow Agent shall not

distribute the Net Settlement Fund (the Settlement Fund net of

court-awarded attorneys' fees and expenses and net of Notice and

Administration Expenses and the monies the Class is obligated to

repay to the JDN Entities pursuant to the Assurance Repayment

Obligation provided for in Section 2.20 of the Stipulation for

Settlement I filed with the Court on or around August 14, 2001),

until ten (10) business days following the Effective Date.

**V.    PLAN OF ALLOCATION FOR SETTLEMENT II**

At or after the Final Approval Hearing, Lead Plaintiff will

seek Court approval of the plan of allocation ("Plan of Allocation

for Settlement II") to govern the distribution of the Net

Settlement Fund to each Settlement II Class Member who files a

timely and valid Proof of Claim ("Authorized Claimant").  ***The Plan***

-20-

of Allocation for Settlement II is similar to the Plan of

Allocation for Settlement I that was already approved, with one

material exception.

   After the Net Settlement Fund from Settlement I was

distributed pursuant to the Court's Distribution Order dated July

___, 2002 and prior to the date of the Stipulation for Settlement

II, the Claims Administrator was contacted by a number of

claimants who had not received a distribution from Settlement I

either because they had not previously filed a Proof of Claim or,

in at least one instance, who had disputed whether they had

properly and timely submitted a Proof of Claim in connection with

Settlement I (collectively, the "Subsequent Claimants"). Because

the Court allowed members of the Class who had submitted Proofs of

Claim past the original deadline but before the distribution of

Settlement I to participate in the distribution from Settlement I,

Lead Plaintiff and Lead Class Counsel propose to pay from

Settlement II the distribution that these Subsequent Claimants

would have received had their claims been included in the original

distribution of Settlement I. Based on the recognized losses of

the Subsequent Claimants identified as of the date of this Notice,

Lead Class Counsel expect that approximately $1,000,000 of the

Settlement II proceeds will be used to make this distribution to

*the Subsequent Claimants. Lead Plaintiff and Lead Class Counsel*
*believe this approach is fair and just because the amount that*
*Settlement II Class Members will not receive as a result of the*
*distribution to the Subsequent Claimants is believed to be less*
*than the extra amount Settlement II Class Members received in*
*their original distribution from Settlement I because the*
*Subsequent Claimants' claims had not been factored in before the*
*distribution was made. In other words, Settlement II Class*
*Members who received distributions from Settlement I were, in*
*fact, overpaid in the initial distribution in this case because*
*the Subsequent Claimants were not included.*

Thus, for purposes of the Stipulation for Settlement II, the
Net Settlement Fund, less the Subsequent Claimants' distribution,
will be distributed by the Plan for Allocation set forth below.
This Plan of Allocation is identical to the Plan of Allocation
that was approved by the Court as being reasonable and fair in
connection with Settlement I.

As under the original Plan of Allocation, the amount
allocated to each Authorized Claimant constitutes and is referred
to herein as the Authorized Claimant's "Payable Claim". The Plan
of Allocation is based upon the assessment by Lead Plaintiff and
Lead Class Counsel of the merits of the claims and the recoverable

damages.  Subject to the approval of the Court, the Payable Claim
of each Authorized Claimant will be calculated in the following
manner:

A.     Each Authorized Claimant shall receive that share of
the Net Settlement Fund that the Authorized Claimant's Recognized
Loss (as defined below) bears to the total Recognized Losses of
all Authorized Claimants in accordance with the formulas and
instructions set forth below.

B.     The Claims Administrator will perform the calculations
for each Authorized Claimant, based on the purchase and sales data
submitted in each Authorized Claimant's Proof of Claim form to
determine each Authorized Claimant's Recognized Loss according to
the formulas set forth below.

C.     Purchases and sales of JDN common or preferred shares
shall be matched based on the assumption that the first share
purchased was the first share sold, provided common stock sales
will be matched only with common stock purchases and preferred
stock sales will be matched only with preferred stock purchases.
The date of purchase or sale is the "contract" or "trade" date as
distinguished from the "settlement" date.  Any losses incurred in
connection with covering a "short" sale shall not be recognized.
In the interest of economy, no payment shall be made to any

-23-

Authorized Claimant the cash portion of whose Payable Claim would be less than $10 based on the pro-ration of the Net Settlement Fund to Authorized Claimants.

D.    Effective July 1, 1998, JDN's common stock split 3 for 2.  At that time, for each share of JDN common stock held by a shareholder, the shareholder became the owner of one and a half shares of JDN common stock.  Therefore, for purposes of calculating Recognized Losses of common stock purchasers, the Claims Administrator will use the split-adjusted purchase price in the formulas set forth below for all common shares purchased prior to July 1, 1998.  For the same reason, the Claims Administrator will use the split-adjusted sale price for all sales of common stock that occurred prior to July 1, 1998.  For all common shares purchased prior to July 1, 1998, the term "purchase price" refers to the split-adjusted purchase price, which is two-thirds of the actual purchase price.  For all common shares sold prior to July 1, 1998, the term "sale price" refers to the split-adjusted sale price, which is two-thirds of the actual sale price.

E.    Each Authorized Claimant's Recognized Loss may be determined in accordance with the damages recoverable under the anti-fraud provisions of the federal securities laws (the Securities Exchange Act of 1934 or the "Exchange Act") because all

-24-

Settlement II Class Members have Exchange Act claims.  Under the
Exchange Act, the starting point for determining the recoverable
damages for each share is the amount of alleged artificial
inflation in the share price at the time of purchase (i.e., the
portion of the price of the stock that the purchaser would not
have paid had the alleged misrepresentations or omissions never
been made) *less* the amount of artificial inflation, if any, in the
share price at the time of sale (i.e., the portion of the price of
the share that the seller would not have received had the alleged
misrepresentation or omission never been made).  The Claims
Administrator will make this determination using Schedules 1 and 2
from the Notice for Settlement I[4] and the information presented by
each Authorized Claimant on the accompanying Proof of Claim.
Schedules 1 and 2 represent the Lead Plaintiff's damages expert's
calculations of the amount of alleged inflation in the prices of
JDN common and preferred stock, respectively, each day during the
Class Period.  Next, this amount must be compared with the damages
calculated under the statutory cap for Exchange Act losses
established by Congress in 1995 when it enacted the Private

---

[4] If you wish to receive a copy of Schedules 1 and 2, which
were attached to the notice issued in connection with Settlement
I, please contact the Claims Administrator at 1-888-641-4430.

Securities Litigation Reform Act ("PSLRA"). For this settlement, the statutory cap under the Exchange Act formula is determined by deducting from the purchase price $10.172 per common share or $17.729 per preferred share, which is the average trading price of JDN common and preferred stock, respectively, during the ninety (90) day period after JDN's Second Disclosure. If, however, JDN common or preferred stock purchased during the Class Period was sold during the ninety (90) day period April 12, 2000 through July 11, 2000, the statutory cap is determined instead by deducting from the purchase price the average trading price in the security during the period beginning on April 12, 2000 and ending on the date of sale. The applicable average is referred to herein as the "Statutory Floor." The Claims Administrator will calculate the applicable Statutory Floor based on the data submitted by each Class Member on the accompanying Proof of Claim.

    F.    Authorized Claimants who purchased common stock pursuant or traceable to the Registration Statement and Prospectus for the March 6, 1997 offering of common stock (the "March 1997 Offering") and Authorized Claimants who purchased preferred stock pursuant to or traceable to the Registration Statement and Prospectus for the September 17, 1998 Offering of preferred stock (the "Preferred Offering") may also have their *Recognized Loss* determined in

accordance with the damages recoverable under the provisions of

the Securities Act of 1933 ("Securities Act") because these Class

Members also have Securities Act claims.[5]  The Claims

Administrator will calculate the Recognized Loss of Authorized

Claimants who have Securities Act claims to be the greater of

their Recognized Loss under the Exchange Act formula and that

under the Securities Act formula.  The Securities Act formula

provides that the statutory measure of damages is the difference

between the amount paid for the security (not exceeding the price

at which the security was offered to the public) and (i) the price

at which the security was sold if it was sold prior to the date

suit was filed (which in this case would be prior to February 15,

2000); (ii) if not sold prior to the filing of the suit on

February 15, 2000, the value of the security as of the time the

Consolidated Actions were commenced which in this case would be

$11.313 per share of common stock and $16.00 per share of

preferred stock; or (iii) the price at which the security was sold

if it was sold after suit was filed for a price greater than that

---

[5] Because there was only one offering of preferred stock by
JDN, all persons who acquired preferred stock during the Class
Period have Securities Act claims.  By definition, those
preferred shares were acquired pursuant to or traceable to the
preferred offering dated September 17, 1998.

-27-

provided in (ii).  The statute further provides, that, if any

portion of such loss was due to factors other than the alleged

misrepresentations or omissions, such damages are not recoverable.

As a result, any loss due to the decline in the price of JDN

common or preferred stock prior to the First Disclosure on

February 14, 2000 is not recoverable under the Securities Act

formula.  Because this Litigation was initially filed the day

after the First Disclosure was made, subsection (i) of the

Securities Act formula comes into play in this case only for

shares that were acquired before the First Disclosure and sold on

February 14, 2000 after the First Disclosure was announced but

before suit was filed on February 15, 2000.

   G.  For purposes of calculating the Recognized Loss under

the Securities Act theory of recovery, Lead Plaintiff and Lead

Class Counsel have agreed to increase the loss by a multiplier of

1.76 to reflect that the burden of proof for purchasers who have

Securities Act claims is easier to meet than the burden of proof

for purchasers who only have claims under the Exchange Act, since

Exchange Act claimants must establish an intent to defraud in

order to prevail on their claims.  This does not mean that the

Authorized Claimants who have Securities Act claims will receive

more than their actual losses in this recovery.  It does mean,

however, that they will receive a higher percentage of their losses because they were more likely to prevail on their claims. The Securities Act formulas set forth below thus reflect the pre-adjusted recognized loss to which the 1.76 multiplier is then applied.

H.    If application of the formulas set forth below results in a negative number, there is no Recognized Loss for the applicable purchase because no legally cognizable damages were suffered.

I.    The Recognized Loss under the Exchange Act formulas for shares that were both purchased and sold prior to JDN's First Disclosure will be relatively small or zero.  This reflects the difficulty in demonstrating that any decline in the price of JDN securities prior to that time was caused by the revelation of any of JDN's alleged fraudulent disclosures.  In fact, under the Settling Defendants' theory of damages, a share that is bought and sold prior to the initial February 14, 2000 disclosure could not as a matter of law be damaged, no matter what the purchase or sale price, because the Settling Defendants claim that the inflation in the share price attributable to the alleged fraud, if any, would have been the same during that entire period. Under the Lead Plaintiff's expert's damages model, it is possible to have some

-29-

damage if a share were bought and sold during the Class Period before the First Disclosure, but such amount, if any, is likely to be minimal. For the same reason, the Recognized Loss under the Exchange Act formulas for shares that were both purchased and sold after the First Disclosure but before the Second Disclosure will also be relatively small or zero, since the purchase and sale prices during this period were allegedly inflated by the same amount or same percentage (depending on the expert's theory of damages).

J.    An Authorized Claimant's Recognized Loss shall be calculated as follows:

1.    **For All Common Stock Purchasers – Exchange Act Theory of Recovery.**

(a)  For shares acquired during the Class Period but  retained until after the close of trading on April 12, 2000, the Recognized Loss is equal to *the lesser of*:  (1) the alleged inflation on the day of purchase[6]; and (2) the purchase price less the applicable Statutory Floor.

---

[6] There was no artificial inflation in the sale price of any share sold after the Second Disclosure on April 12, 2000 under the Lead Plaintiff's theory of the case.

(b)  For shares acquired during the Class Period but sold before the close of trading on April 12, 2000, the Recognized Loss is *the lesser of*:  (1) the alleged inflation on the day of purchase less the alleged inflation on the day of sale; and (2) the purchase price less the *greater* of the Statutory Floor and the sale price.

2.  **For March 1997 Offering Common Stock Purchasers Only  - Securities Act Alternative Theory of Recovery**

(a)  For shares of JDN common stock that were acquired  pursuant to the March 1997 Offering, the pre-adjusted Recognized Loss for shares that have not been sold, or that were sold on or after February 15, 2000 for $11.313 per share (the closing price on the day suit was first brought) or less is $5.247.  This figure equals the split-adjusted offering price of $19.33 *less* $11.313, which is the value of the common stock on the date suit was filed, *less* $2.77 which is the amount of the decline in the value of the common shares between the date of the March 1997 Offering and February 11, 2000, the last trading day prior to

-31-

the initial disclosure of the alleged fraud. This pre-adjusted Recognized Loss is multiplied by 1.76 to arrive at a Recognized Loss of $9.23.

(b)  For common stock shares acquired pursuant to the March 1997 Offering that were sold on or after February 15, 2000 for more than $11.313 per share, the pre-adjusted Recognized Loss equals $19.333 less the price at which the share was sold less $ 2.77.  This pre-adjusted Recognized Loss is then multiplied by 1.76 to arrive at the Recognized Loss.

(c)  For common stock shares acquired pursuant to the March 1997 Offering that were sold on February 14, 2000, the pre-adjusted Recognized Loss equals $19.33 less the price at which the share was sold less $2.77.  This pre-adjusted Recognized Loss is then multiplied by 1.76 to arrive at the Recognized Loss.

(d)  For common stock shares acquired pursuant to the March 1997 Offering that were sold prior to February 14, 2000, the Recognized Loss under the statutory formula is zero.

3.   **Preferred Stock Share Purchasers - Exchange Act Theory of Recovery**

(a)   For preferred shares retained until after the close of trading on April 12, 2000, the Recognized Loss, if any, is equal to *the lesser of*: (1) the alleged inflation on the day of purchase, and (2) the purchase price less the applicable Statutory Floor.

(b)   For preferred shares sold before the close of trading on April 12, 2000, the Recognized Loss is equal to *the lesser of*: (1) the alleged inflation on the day of purchase, less the alleged inflation on the day of sale; and (2) the purchase price less *the greater of* the Statutory Floor and the sale price.

4.   **Preferred Stock Purchasers[7] – Securities Act Theory of Recovery**

(a)   For preferred shares that were acquired prior to the First Disclosure that have not been sold or that were sold on or after February 15, 2000 for

---

[7] Because the Preferred Offering was on September 17, 1998, all shares of preferred stock acquired on or before April 12, 2000 when the Second Disclosure was announced were, by definition, acquired during the Class Period.

-33-

$16.00 per preferred share or less, the pre-adjusted Recognized Loss is equal to the purchase price or the original offering price of $25, whichever is lower, *less* $16.00, which was the value of a share of preferred stock on the date of filing, *less* the decline in value of the preferred shares between the date of purchase and February 11, 2000, which was the last trading day before the First Disclosure. The decline in value referenced above equals the purchase price or the offering price of $25, whichever is lower, less $19.625, which was the closing price of preferred stock on the last trading day before the First Disclosure. This decline for purposes of this formula shall be referred to as the "Preferred Decline." The pre-adjusted Recognized Loss is then multiplied by 1.76 to arrive at the Recognized Loss.

(b) For preferred shares that were acquired prior to the First Disclosure (on February 14, 2000) and sold on or after the date suit was filed (February 15, 2000) for more than $16.00 per preferred share, the pre-adjusted Recognized Loss is equal to the

-34-

purchase price or the offering price of $25, whichever is lower, *less* the price at which the share was sold, *less* the Preferred Decline. The pre-adjusted Recognized Loss is then multiplied by 1.76 to arrive at the Recognized Loss.

(c)    For preferred shares that were acquired prior to the First Disclosure but that were sold on February 14, 2000, before the Litigation was filed, the pre-adjusted Recognized Loss is equal to the purchase price and the offering price of $25, whichever is lower, less the sale price. The pre-adjusted Recognized Loss is then multiplied by 1.76 to arrive at the Recognized Loss.

(d)    For preferred shares that were acquired after the First Disclosure (i.e. between February 14, 2000 through April 12, 2000) and that were also sold during or after that same period for more than $16.00 per preferred share, the pre-adjusted Recognized Loss is the purchase price or the offering price of $25, whichever is lower, *less* the sale price. The pre-adjusted Recognized Loss is

-35-

then multiplied by 1.76 to arrive at the Recognized Loss.

(e)  For preferred shares that were acquired after the First Disclosure (i.e. between February 14, 2000 and April 12, 2000, inclusive), that have not been sold or that were sold for less than $16.00 per share, the pre-adjusted Recognized Loss is equal to the purchase price and the offering price of $25, whichever is lower, *less* $16.00.  The pre-adjusted Recognized Loss is then multiplied by 1.76 to arrive at the Recognized Loss.

(f)  For preferred shares that were acquired prior to February 14, 2000 and sold prior to February 14, 2000, the Recognized Loss under the statutory formula is zero.

K.    The proceedings for the approval or disapproval by the Court of the proposed Plan of Allocation are not part of Settlement II set forth in the Stipulation for Settlement II and will be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of Settlement II set forth in the Stipulation for Settlement II.  Any order or proceedings related to the approval of the proposed Plan

-36-

of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not modify, terminate, or cancel Settlement II, including the amount of the Settlement Fund, or affect or delay the finality of the Judgment approving the Stipulation for Settlement II and the Settlement of the Consolidated Actions as to the Remaining Defendants.

## VI. **MAKING A CLAIM**

**IF YOU SUBMITTED A PROOF OF CLAIM FORM IN CONNECTION WITH SETTLEMENT I, THE CLAIMS ADMINISTRATOR HAS A RECORD OF THAT INFORMATION, AND YOU DO NOT NEED TO RESUBMIT YOUR TRANSACTION INFORMATION. YOU DO, HOWEVER, NEED TO SUBMIT A SIGNED PROOF OF CLAIM ACKNOWLEDGING THAT YOU HAVE READ THE RELEASE AND THE NOTICE TO BE ELIGIBLE FOR A DISTRIBUTION FROM SETTLEMENT II. YOUR SIGNED PROOF OF CLAIM FORM MUST BE SENT BY FIRST CLASS MAIL TO THE CLAIMS ADMINISTRATOR AT THE ADDRESS PROVIDED IN THE PARAGRAPH BELOW AND POSTMARKED ON OR BEFORE _____, 200_.**

IF YOU DID NOT SUBMIT A PROOF OF CLAIM FORM RELATING TO SETTLEMENT I OR YOUR PROOF OF CLAIM FORM RELATING TO SETTLEMENT I WAS REJECTED AND IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE AND YOU WISH TO RECEIVE ANY PAYMENTS FROM THE AMOUNTS DESCRIBED ABOVE OR ANY OTHER RECOVERY IN THE LITIGATION, YOU MUST COMPLETE AND SIGN THE ENCLOSED PROOF OF CLAIM AND RELEASE FORM AND SEND IT

-37-

BY FIRST CLASS MAIL POSTMARKED ON OR BEFORE _____,

2003 TO THE CLAIMS ADMINISTRATOR ADDRESSED AS FOLLOWS:

> In re: JDN Realty Corporation Securities Litigation
> The Garden City Group, Inc.
> Claims Administrator
> PO Box 8811
> Melville, NY  11747-8811
> Telephone 1-888-641-4430

## VII. REQUESTING EXCLUSION FROM THE SETTLEMENT II CLASS

Only Members of the Settlement II Class are entitled to

participate in proposed Settlement II in the event it is approved

by the Court, or in any other recovery that may be obtained on

behalf of the Settlement II Class.  Members of the Settlement II

Class will not be individually responsible for Lead Class

Counsel's or any of the Plaintiffs' Counsel's fees or expenses.

Lead Class Counsel's and Plaintiffs' Counsel's fees and expenses

will be paid out of the recovery achieved on behalf of the

Settlement II Class to the extent allowed by and pursuant to order

of the Court.  If you do not wish to be a member of the Settlement

II Class, you must submit a written request to be excluded,

postmarked no later than _____, 200_, including: (a) the

name of the case (In re: JDN Realty Corporation Securities

Litigation, Master File No. 1:00 CV-0396-RWS); (b) your name,

-38-

address, and telephone number; (c) a listing of the number of JDN

shares of common or preferred stock purchased, acquired, and/or

sold by the Settlement II Class Member from February 15, 1997

through April 12, 2000, inclusive, including the dates of all

purchases, acquisitions, and any sales of JDN common or preferred

stock during that period, and the number of shares bought,

acquired or sold on each such occasion; (d) a statement that the

Class Member requests to be excluded from the Settlement II Class;

and (e) a signature of the Class Member.

The request for exclusion should be addressed and mailed to:

              Martin D. Chitwood
              CHITWOOD & HARLEY, LLP
              2300 Promenade II
              1230 Peachtree Street, NE
              Atlanta, Georgia 30309
              (404) 873-3900

Regardless of whether proposed Settlement II is approved, or

whether you execute and file the Proof of Claim and Release

included with this Notice, you will be bound by all orders and

judgments of the Court entered in the Consolidated Action, whether

favorable or unfavorable to the Settlement II Class, unless you

appropriately seek exclusion from the Settlement II Class.

VIII.    **THE FINAL APPROVAL HEARING**

A hearing (the "Final Approval Hearing") shall be held before the Court on _____, 2004, at 10:00 a.m. in Courtroom 2105, of the United States District Courthouse, 75 Spring Street, SW, Atlanta, Georgia, 30303, to determine (a) whether proposed Settlement II of the Consolidated Actions on the terms and conditions provided for in the Stipulation for Settlement II is fair, reasonable, and adequate and should be approved by the Court and whether a judgment should be entered dismissing the claims in the Consolidated Actions against The Remaining Defendants with prejudice on the terms and conditions set forth in the Stipulation for Settlement II; (b) whether and in what amounts fees and reimbursement of expenses should be awarded to Lead Class Counsel; and (c) whether the proposed Plan of Allocation should be approved.  If Settlement II is approved, the Final Judgment will provide that the Settlement II Class Members will be deemed to have released the Settlement II Claims against the Released Parties for Settlement II, as those terms are defined in the accompanying Proof of Claim.

The Final Approval Hearing may be continued or adjourned from time to time by the Court without further notice to the Settlement

II Class, except notice posted at the time and place of the Final

Approval Hearing (noted above).

At the Final Approval Hearing, Lead Class Counsel will apply

to the Court for distributions to them from the Settlement Fund

for: (i) an award of attorneys' fees in an amount not to exceed

twenty five percent (25%) of the Settlement Fund; and (ii)

reimbursement of actual expenses and costs incurred in an amount

not to exceed _____($_____), including the fees of any experts or

consultants incurred in connection with prosecuting the

Consolidated Actions, plus interest on such attorneys' fees,

costs, and expenses at the same rate and for the same periods as

earned by the Settlement Fund.

Any member of the Settlement II Class may appear at the Final

Approval Hearing, with or without counsel, and show cause as to

any reason why proposed Settlement II contained in the Stipulation

for Settlement II should not be approved as fair, reasonable, and

adequate; why attorneys' fees and expense reimbursement should not

be awarded to Lead Class Counsel in the amounts requested; and/or

why the proposed Plan of Allocation should not be approved.

However, no member of the Settlement II Class, or any other

person, shall be entitled to appear and show such cause or contest

the approval of the terms and conditions of proposed Settlement

-41-

II, the Judgment approving proposed Settlement II, if approved, the attorneys' fees and expense reimbursement to be awarded Lead Class Counsel, or the proposed Plan of Allocation, unless on or before _____, 2003 that person has notified each of the following persons of his or her intention to appear in the manner and form provided below:

> Martin D. Chitwood
> CHITWOOD & HARLEY, LLP
> 2300 Promenade II
> 1230 Peachtree Street, NE
> Atlanta, Georgia 30309
> (404) 873-3900

as Lead Class Counsel;

> Tony G. Powers
> ROGERS AND HARDIN LLP
> 2700 International Tower
> 229 Peachtree Street, NE
> Atlanta, Georgia 30303-1601
> (404) 522-4700

as counsel for Defendant J. Donald Nichols;

> William G. Leonard
> LEONARD & SWENSON, LLP
> 2115 East Lake Road
> Atlanta, Georgia 30307
> (404) 371-0630

as counsel for Defendants Jeb L. Hughes and C. Sheldon Whittelsey, IV;

                         Michael S. Reeves
                         GORBY, REEVES & PETERS, PC
                         Resurgens Plaza, 21st Floor
                         945 East Paces Ferry Road
                         Atlanta, GA 30326
                         Tel: 404-239-1150

          as counsel for Defendants William D. Brunstad and
          McCullough Sherrill LLP; and

                         H. Lane Young
                         HAWKINS & PARNELL
                         4000 Suntrust Plaza
                         303 Peachtree Street, NE
                         Atlanta, GA 30308-3243
                         Tel: 404-614-7400

          as counsel for Defendant Bradley J. Taylor.

and has further filed such notice with the Clerk of the United

States District Court for the Northern District of Georgia, with

proof of service on the above attorneys.  Such notice shall set

forth each objection and the detailed basis therefor, shall

include copies of any papers in support of the objections raised

therein, and proof that such person is a member of the Settlement

II Class.  Any member of the Settlement II Class who does not make

an objection in the time and manner provided shall be deemed to

have waived such objection, shall be bound by the terms of the

Stipulation for Settlement II, and shall forever be foreclosed

from making any objection to the fairness or adequacy of proposed

Settlement II as incorporated in the Stipulation for Settlement

                               -43-

II, the Plan of Allocation, or the award of attorneys' fees and expense reimbursement to Lead Class Counsel, unless otherwise ordered by the Court.

## IX.    SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

If you purchased JDN common or preferred stock during the period from February 15, 1997 to April 12, 2000, for the beneficial interest of a person or organization other than yourself, you are directed by the Court (if you have not already done so) to provide the Claims Administrator with the name and last known address of each such beneficial owner. If you have already provided the claims administrator with the names of potential Class members in connection with Settlement I, you need not supply that information again. However, if you have additional names of people whom you did not previously identify to the claims administrator and whom you believe may be potential Class members, please forward those names and addresses to the Claims Administrator at the address below. If you previously requested copies ofthe Settlement I notice in bulk, the claims administrator will provide you with the same number of copies of this Notice for your distribution to your clients. If you need additional copies, please contact theClaims Administrator listed below.

-44-

The information required must be mailed on or before ten (10) days after receipt of this notice to:

> In re: JDN Realty Corporation Securities Litigation
> c/o The Garden City Group, Inc.
> Claims Administrator
> PO Box 8811
> Melville, NY 11747-8811
> Telephone:  1-888-641-4430

Alternatively, within ten (10) days of receipt of this Notice, you may mail the Notice and the Proof of Claim and Release forms enclosed herewith directly to such beneficial owners. Additional copies will be provided to you upon request without charge.

## IX.  **FURTHER INFORMATION**

This notice provides a brief summary of the Consolidated Action and proposed Settlement II.  As noted, this is a final settlement of all claims and potential claims against the Remaining Defendants.  For a more detailed statement of the matters involved in the Consolidated Action, you may refer to the pleadings, the original Stipulation and the Stipulation for Settlement II, the orders entered by the Court, and to the other papers filed in the Consolidated Actions.  These papers may be inspected at the Office of the Clerk of the United States District Court for the Northern District of Georgia.

-45-

Any inquiries concerning this Notice or the Proof of Claim form should be made to Lead Class Counsel identified above.

INQUIRIES SHOULD NOT BE DIRECTED TO THE COURT

DATED: _____, 2003.

Clerk, United States District Court, Northern District of Georgia





EXHIBIT / ATTACHMENT

(To be scanned in place of tab)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| IN RE: JDN REALTY CORP. | : | Master File No. |
| SECURITIES LITIGATION | : | 1:00-CV-0396-RWS |

## PROOF OF CLAIM AND RELEASE

THIS PROOF OF CLAIM AND RELEASE ("PROOF OF CLAIM") IS BEING SENT IN CONNECTION WITH THE PROPOSED SECOND AND FINAL SETTLEMENT IN THIS CASE. THE FIRST PARTIAL SETTLEMENT WAS APPROVED IN NOVEMBER 2001 AND WAS BETWEEN THE CLASS OF JDN SHAREHOLDERS DESCRIBED BELOW AND CERTAIN DEFENDANTS, INCLUDING JDN REALTY CORPORATION. THIS SECOND PROPOSED SETTLEMENT IS BETWEEN THE CLASS OF JDN SHAREHOLDERS DESCRIBED BELOW AND DEFENDANTS J. DONALD NICHOLS, JEB L. HUGHES, C. SHELDON WHITTELSEY IV, WILLIAM D. BRUNSTAD, BRADLEY J. TAYLOR, AND THE LAW FIRM OF McCULLOUGH SHERRILL LLP ("SETTLEMENT II"). ALL CLAIMANTS ARE URGED TO READ THE ACCOMPANYING NOTICE OF PENDENCY OF CLASS ACTION, OF PROPOSED SETTLEMENT OF CLASS ACTION AS TO ALL REMAINING DEFENDANTS, OF FINAL APPROVAL HEARING, AND OF RIGHT TO APPEAR ("NOTICE"), WHICH, AMONG OTHER THINGS, DESCRIBES THE PROPOSED SECOND AND FINAL SETTLEMENT AND HOW MEMBERS OF THE SETTLEMENT CLASS ARE AFFECTED.

IN ORDER TO RECEIVE ANY PAYMENT TO WHICH YOU MAY BE ENTITLED AS A MEMBER OF THE SETTLEMENT CLASS, YOU MUST COMPLETE AND SIGN THIS PROOF OF CLAIM AND MAIL IT BY FIRST CLASS MAIL, POSTAGE PREPAID, POSTMARKED NO LATER THAN_____, TO THE FOLLOWING ADDRESS:

> In re: JDN Realty Corp. Securities Litigation
> The Garden City Group, Inc.
> PO Box 8811
> Melville, NY 11747-8811
> 1-888-641-4430

HOWEVER, IF YOU RECEIVED A DISTRIBUTION IN CONNECTION WITH THE FIRST PARTIAL SETTLEMENT, YOU CAN SKIP SECTIONS II, III, AND IV BUT MUST OTHERWISE FILL OUT THE IDENTIFICATION INFORMATION REQUESTED, SIGN THE VERIFICATION, AND RETURN THE SIGNED PROOF OF CLAIM TO THE CLAIMS ADMINISTRATOR AT THE

-1-

ABOVE ADDRESS.   IN THIS CASE, THE PROOF OF CLAIM YOU
SUBMITTED IN CONNECTION WITH THE FIRST PARTIAL SETTLEMENT
WILL BE USED TO DETERMINE YOUR RECOGNIZED LOSS AND YOUR
ENTITLEMENT, IF ANY, TO PROCEEDS FROM THIS SECOND AND FINAL
SETTLEMENT.   IF YOU DID NOT RECEIVE A DISTRIBUTION FROM THE
FIRST PARTIAL SETTLEMENT AND YOU WISH TO BE ELIGIBLE FOR A
DISTRIBUTION FROM THE SECOND AND FINAL SETTLEMENT, YOU MUST
FILL OUT ALL PORTIONS OF THE PROOF OF CLAIM THAT APPLY TO
YOUR CLASS PERIOD TRANSACTIONS AND SUBMIT ALL REQUESTED
DOCUMENTATION.   YOUR FAILURE TO SUBMIT THIS PROOF OF CLAIM
AND, IF REQUIRED, YOUR SUPPORTING DOCUMENTATION BY
_____WILL SUBJECT YOUR CLAIM TO REJECTION AND PRECLUDE
YOU FROM PARTICIPATING IN ANY RECOVERY FROM THE SECOND AND
FINAL SETTLEMENT IN THIS ACTION, BUT YOU WILL NONETHELESS BE
BOUND BY ANY ORDERS AND JUDGMENTS ENTERED IN THIS CASE.

In order to participate in this second and final
Settlement of this Action, you must be a member of the
following Class:

> All persons who purchased JDN securities
> during the period from February 15, 1997
> through April 12, 2000 inclusive ("Class
> Period"). Excluded from the Class are
> Defendants, officers and directors of
> the Company, members of the immediate
> families of the individual Defendants
> and each of their heirs, successors and
> assigns and any entity in which any
> Defendant has or has had a controlling
> interest.

Persons who are the record owners but not the
beneficial owners of shares of JDN common or preferred stock
that were purchased or otherwise acquired within the Class
Period are not eligible to file claims.   Only beneficial
owners are entitled to participate in any recovery in this
action.

No claim shall be recognized that is based upon a share
purchased by a broker on behalf of, or for sale to, a
customer of the broker which shares are temporarily held in
the proprietary accounts of the brokerage.

All dates referred to herein are trade dates, not
settlement dates.

All claims based solely on short-sale transactions will be rejected.

If you have any questions regarding this Proof of Claim, you may contact the Claims Administrator at the address and telephone number shown above.

**PLEASE TYPE OR PRINT THE INFORMATION REQUESTED HEREIN**

**CHECK APPROPRIATE CATEGORY**

_____    Individual Claimant: I am acting in my own interest.

_____    Joint Claimant: We are claimants jointly. (All joint owners must complete and sign this form if the stock was jointly owned.)

_____    Partnership Claimant: I am authorized to make this claim on behalf of the Partnership.

_____    Corporate Claimant: I am authorized to make this claim on behalf of the Corporation.

_____    Decedent's Estate Claimant: I am the executor or administrator of the estate of _____ (deceased) whose last address was _____. (Attach copy of proof of current authority to act.)

_____    Custodial or Guardian Claimant: I am the custodian or guardian for _____ whose address is _____. (Attach copy of proof of current authority to act.)

_____    Broker, Agent, Fiduciary or Attorney: I am a nominee, agent, fiduciary or attorney for claimant. (Attach power of authority or copy of other proof of current authority to act.)

## I.   IDENTITY OF CLAIMANT AND SUBSTITUTE FORM W-9

Claimant's Name:_____

Joint Claimant's Name:_____

Address:_____

City:_____        State:_____

Zip Code:_____

Country:_____

Daytime Telephone Number: (___)  _____

### Taxpayer Identification Number

Enter Claimant's taxpayer identification number below. (For most individuals, this is their Social Security number.) If the correct taxpayer identification number is not furnished the Claim may be delayed or rejected.

Social Security Number:  _____
Or

Employer Identification Number:  _____
(for estates, trusts, partnerships, corporations, etc.)

## II.  SCHEDULE OF TRANSACTIONS IN JDN COMMON STOCK PURCHASED DURING THE CLASS PERIOD

(List each transaction separately: If necessary, attach separate sheets providing all the required information in substantially the same form and print or type Claimant's name on, and sign, each additional sheet.)

A.    Number of shares of JDN common stock owned as of the close of trading on February 14, 1997.

_____
(insert    number    of shares    of    common stock or "zero")

B.    JDN common stock PURCHASED or otherwise ACQUIRED during the period from February 15, 1997 through and including April 12, 2000, inclusive.    CHECK THE APPROPRIATE BOX FOR EACH PURCHASE PURSUANT TO THE MARCH 1997 OFFERING

| Date of Purchase or Acquisition (Trade Date) | No. of Shares Purchased or Acquired | No. of Shares Purchased or Acquired Pursuant to the March 1997 Prospectus | Price Per Share Purchased or Acquired | Total Purchase or Acquisition Price (Net of Brokerage Fees & Commissions) |
|---|---|---|---|---|
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |

C.   All SALES of JDN common stock during the period from February 15, 1997 through the date you submit this Proof of Claim, inclusive (regardless of when purchased).

| Date of Sale (Trade Date) | No. of Shares Sold | Price Per Share Sold | Total Sale Price (Net of Brokerage Fees & Commissions) |
|---|---|---|---|
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |

D.   Number of shares of JDN common stock owned as of the close of trading on April 12, 2000.  (MUST BE DOCUMENTED.)

_____
(insert number of shares of common stock or "zero")

## III.  SCHEDULE OF TRANSACTIONS IN JDN PREFERRED STOCK DURING THE CLASS PERIOD

(List each transaction separately: If necessary, attach separate sheets providing all the required information in substantially the same form and print or type Claimant's name on, and sign, each additional sheet.)

A.   JDN preferred stock PURCHASED or otherwise ACQUIRED during the period from September 17, 1998 through and including April 12, 2000, inclusive.

| Date of Purchase or Acquisition (Trade Date) | No. of Shares Purchased or Acquired | Price Per Share Purchased or Acquired | Total Purchase or Acquisition Price (Net of Brokerage Fees & Commissions) |
|---|---|---|---|
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |

```
_____   _____   $_____   $_____
_____   _____   $_____   $_____
```

B.    All SALES of JDN preferred stock during the period
      from September 17 1998 through the date you submit
      this Proof of Claim, inclusive (regardless of when
      purchased).

| Date of Sale (Trade Date) | No. of Shares Sold | Price Per Share Sold | Total Sale Price (Net of Brokerage Fees & Commissions) |
|---|---|---|---|
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |

C.    Number of shares of JDN preferred stock owned as
      of the close of trading on April 12, 2000.  (MUST
      BE DOCUMENTED.)

                                    _____
                                    (insert number of
                                    shares of preferred
                                    stock or "zero")

## IV.  DOCUMENTATION REQUIRED

A.   This Proof of Claim must be accompanied by copies of broker's confirmation slips or account statements, a copy of the applicable portion of the Claimant's income tax return, or copies of other written evidence verifying the information requested above.  **YOU MUST DOCUMENT ALL TRANSACTIONS IN JDN COMMON OR PREFERRED STOCK IDENTIFIED ABOVE.**  IF YOU INDICATED ABOVE THAT YOU PURCHASED SHARES PURSUANT TO THE MARCH 1997 PROSPECTUS, YOU MUST PROVIDE SPECIFIC DOCUMENTATION SHOWING THAT YOU PURCHASED THE SHARES AFTER RECEIVING A COPY OF SUCH PROSPECTUS, SUCH AS YOUR CONFIRMATION SLIP.  Letters from brokers will not be accepted as adequate documentation.  A complete brokerage statement for the last month during which you held any JDN common or preferred stock must be provided.  Failure to submit adequate documentation will result in the partial or entire rejection of your Claim.

B.   The information contained in this Proof of Claim is subject to such verification as the Court may direct or the Claims Administrator may require.  By signing this Proof of Claim you agree to cooperate in any such verification process.  Failure to provide any information that may be requested may result in the disallowance of the Claim.

C.   If you are signing this Proof of Claim in a representative capacity, you must submit proof of your current authority to act for the member of the Settlement Class in such capacity.

## V.  SUBMISSION TO JURISDICTION

I submit this Proof of Claim and Release under the terms of the Stipulation and Agreement of Settlement described in the Notice.  I submit to the jurisdiction of the United States District Court for the Northern District of Georgia and state that I am  a member of the Settlement Class, as defined above, or am acting for a member of the Settlement Class.  I further acknowledge that I am bound by, and subject to, the terms of any order or judgment that may be entered in the Consolidated Actions (as defined in the Notice).

## VI.  W-9 CERTIFICATION

The undersigned states under penalty of perjury that:

1.  The   Social   Security   or   Employer Identification Number inserted above is Claimant's correct taxpayer identification number (or Claimant is waiting for a number to be issued); and

2.  Check  appropriate  box,  pursuant  to  the instructions below:

☐  (a)  Claimant is  not  subject to   backup   withholding under the provisions of Section 3406(a)(1)(C) of the   Internal   Revenue Code.

☐  (b)  Claimant is  subject  to backup withholding under the provisions of Section 3406(a)(1)(C)   of   the Internal Revenue Code.

Instructions: If Claimant has never been notified by the IRS that Claimant is subject to backup withholding, check (a).  If Claimant has been notified by the Internal Revenue Service ("IRS") that Claimant is subject to backup withholding, check (b) above.  If Claimant was notified by the IRS that Claimant was subject to backup withholding but was subsequently notified by the IRS that Claimant is no longer subject to backup withholding, check (a).  Any change in Claimant's status with respect to backup withholding should be promptly reported to the Claims Administrator.

## VII. RELEASE

1.(a)    Upon the Effective Date (as defined in the Notice), I (we) understand that I (we) shall be deemed to have, and by operation of the Judgment (as defined in the Notice) shall have, fully, finally, and forever released, relinquished,  and  discharged  all  Settlement  II  Claims against the Released Parties for Settlement II and shall forever  be  enjoined  from  prosecuting  the  Settlement  II Claims except as expressly set forth below in Section VII, Paragraph 1.(b).

-9-

For purposes of this Release, "Settlement II Claims" collectively means all claims, demands, rights, liabilities, and causes of action, known or unknown, accrued or unaccrued, fixed or contingent, direct or derivative, individual or representative, of every nature and description whatsoever, that are asserted or that could have been asserted by any Settlement II Class Member arising out of or relating to any of the claimed acts, omissions, misrepresentations, facts, events, matters, transactions, or occurrences referred to in the Amended Complaint, or in any of the complaints filed in any of the Consolidated Actions, regardless of whether made during or after the Class Period, or in any of its financial statements or other publicly filed documents first publicly disclosed before or during the Class Period. "Released Parties for Settlement II" means J. Donald Nichols, Jeb L. Hughes, C. Sheldon Whittelsey, IV, William D. Brunstad, Bradley J. Taylor, and any members of their immediate families, and McCullough Sherrill LLP; any person, firm, trust, corporation, officer, director, or other individual or entity in which Nichols, Hughes, Whittelsey, Brunstad, or Taylor has a controlling interest or which is related to or affiliated with Nichols, Hughes, Whittelsey, Brunstad, or Taylor or any trust of which any Nichols, Hughes, Whittesley, Brunstad, or Taylor is the settlor or which is for the benefit of Nichols, Hughes, Whittelsey, Brunstad, or Taylor and/or member(s) of his or her families. The Released Parties for Settlement II also specifically includes the following persons who are deemed the "Third-Party Intended Beneficiaries": those natural persons named as partners of Glass, McCullough Sherrill and Harrold in the style of the case pending in the Superior Court of Fulton County bearing Civil Action File No. 2003CV2378 (the "Kerley Litigation") who are not signatories to the McCullough Sherrill Defendants' Release and Settlement Agreement, as that term is defined in Stipulation II that was filed with the court on or around October 15, 2003.

Notwithstanding anything herein to the contrary, however, this Release is not intended to and does not release claims against any broker relating to suitability or churning, if any such claim exists.

1.(b)    The release of the Third-Party Intended Beneficiaries and thus the prohibition against bringing suit against them, however, is subject to and contingent upon the Third-Party Intended Beneficiaries not asserting or filing

any claim whatsoever against any of the Plaintiffs, unless
and except such claim is brought or asserted in the form of
a claim for contribution or indemnity resulting from the
case pending in the Kerley Litigation, and provided such
claim is brought only after a judgment on the merits at
trial is obtained in the Kerley Litigation against the party
or parties asserting the claim that exposes such party or
parties to personal liability that will not be covered by
any applicable insurance policies.

## VIII.    **VERIFICATION**

The undersigned has read the foregoing Proof of Claim
and knows the contents thereof, and states under penalty of
perjury, that the information inserted above and set forth
in the documents submitted with this form are true and
correct to the best of the knowledge or information and
belief of the undersigned and that the transactions itemized
above constitute all of the transactions of claimant in the
common and preferred stock of JDN during the indicated time
periods.

(IF THIS CLAIM IS BEING MADE ON BEHALF OF JOINT CLAIMANTS, EACH CLAIMANT OR LEGAL REPRESENTATIVE, IF ANY, MUST SIGN):

Signature:_____        Date signed:_____

Print Name:_____

Signature:_____        Date Signed:_____

Print Name:_____

    If the Claimant is other than an individual, or if the Claimant is not the person completing and signing this form, the following must also be provided:


_____        _____
Name of Person Signing              Capacity of Person Signing
                                    (Executor, President, etc.)


_____
Address of Person Signing

(____) _____-_____
Day Time Telephone Number of Person Signing

                YOU MUST MAIL THIS FORM AND YOUR
              SUPPORTING DOCUMENTATION BY _____

    **Please notify the Claims Administrator promptly if your address changes** after you submit this Proof of Claim because the settlement administration process takes several months.



# EXHIBIT / ATTACHMENT

## 3

(To be scanned in place of tab)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

```
————————————————————x
                       :
IN RE JDN REALTY CORP. :        Master File No.
SECURITIES LITIGATION  :        1:00-CV-0396-RWS
————————————————————x
```

SUMMARY NOTICE OF PENDENCY OF CLASS ACTION,
PROPOSED SECOND AND FINAL SETTLEMENT AND SETTLEMENT HEARING

TO:  ALL PERSONS WHO PURCHASED JDN SECURITIES DURING THE PERIOD
     FROM FEBRUARY 15, 1997 THROUGH APRIL 12, 2000, INCLUSIVE
     (THE "CLASS").

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal
Rules of Civil Procedure and an Order of the Court, that the
above-captioned action has been conditionally certified as a
class action and that a second and final settlement for $7.34
million ("Settlement II") has been proposed.˙ A hearing will be
held before the Honorable Richard W. Story in the United States
Courthouse, Room _____, 75 Spring Street, S.W., Atlanta, Georgia
30303, at ___:_____ __.m., on _____, 2003 to determine
whether proposed Settlement II should be approved by the Court as
fair, reasonable, and adequate, and to consider the application
of Plaintiffs' Counsel for attorneys' fees and reimbursement of
expenses.

_____

     ˙ The first partial settlement of this litigation
("Settlement I") was finally approved by the Court on November
15, 2001.  The first partial settlement was with JDN Realty
Corporation, JDN Development Company, and certain of their
officers and/or directors.

IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT FUND FOR SETTLEMENT II.  If you have not yet received the full printed Notice of Pendency of Class Action, of Second Proposed Settlement As To All the Remaining Defendants, of Final Approval Hearing, and of Right to Appear as well as a Proof of Claim form, you may obtain copies of these documents by identifying yourself as a member of the Class and by calling or writing to:

> In re: JDN Realty Corporation Securities Litigation
> c/o The Garden City Group, Inc.
> Claims Administrator
> PO Box 8811
> Melville, NY 11747-8811
> Telephone:  1-888-641-4430

Inquiries, other than requests for the forms of Notice and Proof of Claim, may be made to Plaintiffs' Lead Counsel:

> Martin D. Chitwood
> Lauren S. Antonino
> CHITWOOD & HARLEY, LLP
> 2300 Promenade II
> 1230 Peachtree Street, NE
> Atlanta, Georgia 30309
> (404) 873-3900

To participate in Settlement II, you must submit a Proof of Claim no later than _____, 2003.  However, if you received a distribution in Settlement I, you do not need to resubmit your transaction data when you return the Proof of Claim

-2-

for Settlement II.  If you are a Class Member and do not submit a proper Proof of Claim, you will not be eligible to share in Settlement II but you will nevertheless be bound by the Order and Final Judgment of the Court with respect to Settlement II.

In addition, if you are a Class Member and do not exclude yourself from the Class, you will be bound by the Order and Final Judgment of the Court.  To exclude yourself from the Class, you must submit a request for exclusion postmarked no later than _____, 2003.

Further information may be obtained by directing your inquiry in writing to the Claims Administrator.

By Order of the Court
LUTHER D. THOMAS
CLERK OF THE COURT

-3-





# EXHIBIT / ATTACHMENT

_B_

(To be scanned in place of tab)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| IN RE:  JDN REALTY CORP. | : | Master File No. |
| SECURITIES LITIGATION | : | 1:00-CV-0396-RWS |
|  | : |  |

## JUDGMENT IN SETTLEMENT II AND ORDER OF DISMISSAL

This matter is before the Court on the Parties' motion to
approve the proposed class action settlement with Defendants J.
Donald Nichols ("Nichols"), Jeb L. Hughes ("Hughes"), C. Sheldon
Whittelsey, IV ("Whittelsey"), William D. Brunstad ("Brunstad"),
Bradley J. Taylor ("Taylor"), and the law firm of McCullough
Sherrill LLP ("McCullough Sherrill") (Brunstad, Taylor, and
McCullough Sherrill being the "McCullough Sherrill Defendants")
who collectively represent all of the remaining Defendants to this
case (the "Remaining Defendants").  This Court previously entered
an Order on November 15, 2001, which approved a class action
settlement against some but less than all of the original
Defendants, including JDN Realty Corporation ("JDN") and JDN
Development Company ("JDN Development") (together, the "JDN
Entities").  The terms used in this Judgment, which are defined in
the Stipulation and Agreement of Settlement filed on October/5,
2003 in connection with the proposed second and final settlement

(the "Stipulation for Settlement II"), are incorporated herein.

The Court hereby expressly determines pursuant to Fed. R. Civ. P. 54(b) that this Judgment and Order of Dismissal is final as to Settlement II Claims as they pertain to the Released Parties for Settlement II, that there is no just reason for delay, and expressly directs the entry of this Judgment.  Settlement II encompasses the following cases pending before this Court (these are the same actions listed in the Judgment in connection with Settlement I and are referred to as the "Consolidated Actions"):

> Addington, et al. v. JDN Realty, Inc., et al., Civil Action No. 1:00-CV-0692;
>
> Brazier, et al. v. JDN Realty Corporation, et al., Civil Action File 1:00-CV-0565;
>
> Dolan v. J.D. Nichols, et al., Civil Action No. 3-00-0443 (transferred to this District from the United States District Court in Nashville);
>
> Farrell, et al. v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0402;
>
> Harrison, et al. v. J. Donald Nichols, et al., Civil Action No. 1:00-CV-0508;
>
> Hoffman, et al. v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0518;
>
> Jackson, et al. v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0396;
>
> Kendall, et al. v. JDN Realty Corporation, et al., Civil Action No. 1:00-CV-0397;

<u>Kwalbrun, et al. v. JDN Realty Corporation, et al.</u>, Civil Action No. 1:00-CV-0437;

<u>Laiks, et al. v. JDN Realty Corporation, et al.</u>, Civil Action No. 1:00-CV-0403;

<u>Laurita, et al. v. J. Donald Nichols, et al.</u>, Civil Action No. 1:00-CV-0454;

<u>Lopez, et al. v. JDN Realty Corporation, et al.</u>, Civil Action No. 1:00-CV-0436;

<u>Ludin, et al. v. JDN Realty Corporation, et al.</u>, Civil Action No. 1:00-CV-0417;

<u>Lynch, et al. v. JDN Realty Corporation, et al.</u>, Civil Action No. 1:00-CV-2539;

<u>Mitchell, et al. v. JDN Realty Corporation, et al.</u>, Civil Action No. 3-00-0167 (transferred to this District from the United States District Court in Nashville);

<u>Morse v. J. Donald Nichols, et al.</u>, Civil Action No. 1:00-CV-0401;

<u>Pitts v. JDN Realty Corp., et al.</u>, Civil Action No. 1:00-CV-0414;

<u>Rowan v. JDN Realty Corporation, et al.</u>, Civil Action No. 1:00-CV-0449; and

<u>Washington Savings Bank v. JDN Realty Corporation, et al.</u>, Civil Action No. 1:00-CV-0899.

The Consolidated Actions have been consolidated before this Court in <u>In re: JDN Realty Corporation Securities Litigation</u>, Master File No. 1:00-CV-0396-RWS.

The Parties have submitted the Stipulation for Settlement II that sets forth the terms and conditions for a settlement and

-3-

dismissal of the Consolidated Actions with prejudice as to all the Remaining Defendants. Settlement II is between Lead Plaintiff, Clarion-CRA Securities, L.P., all of the Named Plaintiffs to the Consolidated Actions, and all members of the Settlement II Class, on the one hand, and the Remaining Defendants, on the other. Having read and considered the Stipulation for Settlement II, including the exhibits annexed thereto, and having conducted a Final Approval Hearing pursuant to the Order dated _____, 2003 (the "Preliminary Approval Order"), and the Parties having applied for approval of Settlement II as set forth in the Stipulation for Settlement II, and due and adequate notice having been given to the Settlement II Class, it is hereby ORDERED and ADJUDGED as follows:

1.     This Court has jurisdiction over the subject matter of the Consolidated Actions and over all parties to the Consolidated Actions, including all Settlement II Class Members.

2.     This Court approves Settlement II of the Consolidated Actions on the terms and conditions provided for in the Stipulation for Settlement II, finds that Settlement II is, in all respects, fair, reasonable, and adequate, and that it confers substantial benefits upon the Settlement II Class, and that it is in the best interests of the Settlement II Class, and, therefore,

-4-

directs that it be effectuated in accordance with its terms.

3.    The proposed Class is finally certified pursuant to the Stipulation for Settlement II and under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure for settlement purposes only as follows:

> All persons who purchased JDN securities during the period from February 15, 1997 through April 12, 2000 inclusive ("Class Period"). Excluded from the Class are Defendants, officers and directors of the Company, members of the immediate families of the individual Defendants and each of their heirs, successors and assigns and any entity in which any Defendant has or has had a controlling interest.

Excluded from the Settlement II Class are those persons who have submitted valid and timely requests for exclusion pursuant to the Hearing Order and the Notice, as referred to in the Stipulation for Settlement II and as sent to the members of the Class.

Lead Plaintiff is appointed as Class Representative for Settlement II. For settlement purposes, the requirements of Federal Rule of Civil Procedure 23(a) have been met and Lead Class Counsel have fairly and adequately represented and protected the interests of the Settlement II Class.

4.    As of the Effective Date of Settlement II and subject to

the terms and conditions of the Stipulation for Settlement II,

this Court dismisses on the merits and with prejudice the

Consolidated Amended Class Action Complaint ("Consolidated

Complaint") as it pertains to the Released Parties for Settlement

II and all of the complaints filed in the Consolidated Actions as

they pertain to the Released Parties for Settlement II, and each

and every Settlement II Claim of each and every Plaintiff and

Settlement II Class Member against each and all of the Released

Parties for Settlement II.  "Settlement II Claims" collectively

means all claims, demands, rights, liabilities, and causes of

action, known or unknown, accrued or unaccrued, fixed or

contingent, direct or derivative, individual or representative, of

every nature and description whatsoever, that are asserted or that

could have been asserted by any Settlement II Class Member arising

out of or relating to any of the claimed acts, omissions,

misrepresentations, facts, events, matters, transactions, or

occurrences referred to in the Consolidated Complaint, or in any

of the complaints filed in any of the Consolidated Actions,

regardless whether made during or after the Class Period, or in

any of JDN's financial statements or other publicly filed

documents first publicly disclosed before or during the Class

Period.  "Released Parties for Settlement II" means Nichols,

-6-

Hughes, Whittelsey, Brunstad, and Taylor, or any one of them, and

any members of their immediate families, and McCullough Sherrill;

any person, firm, trust, corporation, officer, director, or other

individual or entity in which any Remaining Defendant has a

controlling interest or that is related to or affiliated with any

Remaining Defendant or any trust of which any Remaining Defendant

is the settlor or that is for the benefit of any Remaining

Defendant and/or member(s) of his or her family.  In addition, the

Released Parties for Settlement II expressly includes the

following persons who are collectively referred to as the "Third-

Party Intended Beneficiaries", which term means those natural

persons named as partners of Glass, McCullough Sherrill and

Harrold in the style of the case pending in the Superior Court of

Fulton County bearing Civil Action File No. 2003CV2378 (the

"Kerley Litigation") who are not signatories to the McCullough

Sherrill Defendants' Release and Settlement Agreement.

Notwithstanding anything herein to the contrary, however,

this Order is not intended to and does not release any churning or

suitability claims against any brokers, if any such claims exist.

5.    As of the Effective Date of Settlement II, all

Settlement II Class Members and the Plaintiffs in the Consolidated

Actions are forever barred and enjoined from asserting or
prosecuting Settlement II Claims against any of the Released
Parties for Settlement II.  The release of the Third-Party
Intended Beneficiaries and thus the prohibition against bringing
suit against them, however, is subject to and contingent upon the
Third-Party Intended Beneficiaries not asserting or filing any
claim whatsoever against any of the Plaintiffs, unless and except
such claim is brought or asserted in the form of a claim for
contribution or indemnity resulting from the Kerley Litigation,
and provided such claim is brought only after a judgment on the
merits at trial is obtained in the Kerley Litigation against the
party or parties asserting the claim that exposes such party or
parties to personal liability that will not be covered by any
applicable insurance policies.

    6.   As of the Effective Date of Settlement II, the Released
Parties for Settlement II are forever released and discharged with
respect to any and all Settlement II Claims as set forth above,
except if the releases as to the Third-Party Intended
Beneficiaries are voided hereafter.

    7.   The Remaining Defendants and the successors and assigns
of any of them are hereby permanently barred and enjoined from
instituting, commencing or prosecuting, either directly or in any

-8-

other capacity, any and all claims relating to the institution or prosecution of the Consolidated Actions against Lead Plaintiff, any of the Plaintiffs, the Settlement II Class Members, or their attorneys, including Lead Class Counsel. All such claims are hereby compromised, settled, released, and discharged by virtue of the proceedings herein and by virtue of this Judgment in Settlement II and Order of Dismissal with prejudice.

8.    In accordance with Section 21D(f)(7) of the Exchange Act, each of the Remaining Defendants is by virtue of Settlement II discharged from all claims for contribution that have been or may hereafter be brought by or on behalf of any person, based upon, relating to, or arising out of the Settlement II Claims. Accordingly, (a) all persons are hereby permanently barred, enjoined and restrained from commencing, prosecuting, or asserting any such claim for contribution against any of the Remaining Defendants based upon, relating to, or arising out of Settlement II Claims, and (b) the Remaining Defendants are hereby permanently barred, enjoined and restrained from commencing, prosecuting, or asserting any claim for contribution against all persons (other than a person whose liability has been extinguished by the settlement outlined in the Stipulation for Settlement II) based upon, relating to, or arising out of Settlement II Claims.

-9-

9. In accordance with Section 21D(f)(7)(B) of the Exchange Act, and otherwise applicable federal and state law, the total amount of damages awarded in any final verdict or judgment that may be obtained by or on behalf of the Plaintiffs or the Settlement II Class against any of the Remaining Defendants as to whom this Judgment does not, for any reason, become final shall be reduced by the greater of (a) an amount that corresponds to the percentage of responsibility of Released Parties for Settlement II for the claims asserted by or on behalf of Plaintiffs and the Class, or (b) the value of the consideration paid by or on behalf of the Released Parties for Settlement II to Plaintiffs and the Class in connection with Settlement II.

10. The Notice of Settlement II and of other matters set forth therein given to the Settlement II Class pursuant to the Hearing Order was the best notice practicable under the circumstances, including individual notice to all Settlement II Class Members who could be identified through a reasonable effort, as well as valid, due, and sufficient notice to all persons entitled thereto, and complies fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, the Private Securities Litigation Reform Act of 1995, and any other applicable law.

-10-

11.  The terms of the Stipulation for Settlement II are incorporated herein by reference and all obligations of the Released Parties for Settlement II and the Class as set forth therein are so ordered.  To the extent that the Class is requested to execute documents terminating their security interests in various collateral called for by the Stipulation for Settlement II, Defendant Nichols' counsel shall have responsibility for preparing such documentation in a form reasonably satisfactory to Lead Class Counsel.  Upon entry of this Judgment and Order, Nichols' counsel shall deliver to Lead Class Counsel the certified check that represents Defendant Nichols' Second Installment of his Payment Obligation and the Promissory Note referred to in paragraph 2 of the Nichols' Release and Settlement Agreement, a copy of which is attached as Exhibit C to the Stipulation for Settlement II.  In addition, Defendant Nichols shall deliver the Third Installment, or $500,000 by way of certified check made payable to Martin D. Chitwood, Escrow Agent for the JDN Securities Litigation Settlement Fund, on or before 90 days from the date of this Judgment and Order.  The $1,000,000 balance due on Nichols' Payment Obligation, or the Final Installment, shall be made by delivering a certified check in the amount of $1,000,000 and made payable to Martin D. Chitwood, Escrow Agent for the JDN Securities

-11-

Litigation Settlement Fund, on or before 180 days from the date of this Judgment and Order.

12.   Pursuant to Section 2.20 of the Stipulation for Settlement I, the Settlement Escrow Agent, Martin D. Chitwood, shall repay the assurance payment to the JDN Entities at such place as directed by the JDN Parties as follows: $1,900,000 (plus interest accrued on such amounts) 30 days following this Court's final approval of Settlement II, assuming no appeal; $440,000 (plus any interest earned on such money from the date Nichols' Second Installment is paid to the Class) 30 days following this Court's final approval of Settlement II, assuming no appeal, or immediately upon receipt by the Class of Nichols' Second Installment, whichever is later; $500,000 directly upon receipt by the Class of Nichols' Third Installment, which is scheduled to occur within 90 days from this Court's final approval of Settlement II; and $1,000,000 directly upon receipt by the Class of Nichols' Final Installment, which is scheduled to occur within 180 days from this Court's final approval of Settlement II.

13.   This Court awards fees constituting _____% of the Settlement Fund, including interest earned thereon, to Lead Class Counsel (as defined in the Stipulation for Settlement II) for services performed in the Consolidated Actions.   The Court further

-12-

authorizes the reimbursement of expenses incurred, including

expert fees, in the aggregate amount of _____ from the

Settlement Fund plus interest on such expenses at the same rate

and for the same period as earned on the Settlement Fund.  The

Court finds such award to be fair and reasonable.

14.   The attorneys' fees, expenses, and costs awarded by the

Court as specified above may be transferred to Lead Class Counsel

from the Settlement Fund upon the entry of this Judgment.  Lead

Class Counsel shall thereafter allocate the fees and expenses

amongst Plaintiffs' Counsel or any of them in a manner in which

Lead Counsel, in good faith, believes reflects the contributions

of each firm to the prosecution and settlement of the Consolidated

Actions; provided, however, that in the event that the Effective

Date does not occur, or this Judgment is reversed or modified, or

the Stipulation for Settlement II is canceled or terminated for

any other reason, and in the event that the fees and expenses have

been paid to any extent, then Lead Class Counsel shall within ten

(10) days from receiving written notice from Defendants' Counsel

or from a court of appropriate jurisdiction, refund to the

Settlement Fund, all amounts theretofore removed from the

Settlement Fund pursuant to this paragraph, including such

amounts, if any, as have been paid over by Lead Class Counsel to

-13-

other counsel, plus interest thereon from the time of withdrawal
to the date of refund at the same rate as earned on the Settlement
Fund.

15.   This Court hereby approves Plaintiffs' proposed Plan of
Allocation, as set forth in the Notice sent to the Class.

16.   Without affecting the finality of this judgment in any
way, this Court hereby retains continuing jurisdiction over: (a)
implementation and administration of Settlement II; (b)
distribution of the Settlement Fund, including interest earned
thereon; (c) determination of any questions or applications for
attorneys' fees, costs, interest, and expenses; (d) determination
of any other applications for payments out of the Settlement Fund;
and (e) all Parties hereto for the purpose of enforcing and
administering the Stipulation for Settlement II and accompanying
exhibits in the Consolidated Actions until the Effective Date has
occurred and each and every act agreed to be performed by the
Parties has been performed.  The Court shall maintain continuing
jurisdiction over the Lead and Named Plaintiffs and all Settlement
II Class Members for purposes of enforcing the terms of this
Order.

17.   No Authorized Claimant shall have any claim against Lead
Plaintiff, Lead Class Counsel, the Claims Administrator, any of

the Remaining Defendants, or other agent designated by Lead Class
Counsel based on the distributions made substantially in
accordance with any obligations those persons or entities have
under the Stipulation for Settlement II and Plan of Allocation as
approved by the Court and further orders of this Court.  The
Remaining Defendants and Defendants' Counsel shall not have any
responsibility for or liability whatsoever with respect to the
investment or distribution of the Net Settlement Fund, the
determination, administration, calculation, or payment of claims,
the review of Proofs of Claim, the Plan of Allocation, or the
giving of notice to Settlement II Class Members.

    18.   This Order is binding on all Settlement II Class
Members, which excludes those persons listed on Exhibit 1 to this
Order who opted out of Settlement II.

    19.   Neither this Final Judgment and Order of Dismissal, the
Stipulation for Settlement II or any Exhibits thereto, Settlement
II, nor any acts performed and documents executed pursuant to or
in furtherance of the Stipulation for Settlement II or Settlement
II: (a) is or may be deemed to be, or may be used as an admission
of, or evidence of, the validity or invalidity of any Settlement
II Claim, or of any alleged wrongdoing or liability of the
Remaining Defendants, or any of them, or lack thereof; or (b) is

-15-

or may be deemed to be or may be used as an admission of, or
evidence of, any alleged fault, or lack thereof, of the Remaining
Defendants, or any of them, in any civil, criminal, or
administrative proceeding in any court, administrative agency, or
other tribunal, other than in such proceedings as may be necessary
to consummate or enforce the Stipulation for Settlement II,
Settlement II, or the Judgment, except that if the Stipulation for
Settlement II becomes effective, any of the Remaining Defendants
may file the Stipulation for Settlement II or the Judgment in any
action that may be brought against them in order to support a
claim, defense, or counterclaim based on the principles of res
judicata, collateral estoppel, release, judgment bar or reduction,
or any other theory of claim or issue preclusion or similar claim,
defense, or counterclaim.

20.  The Court finds that the Parties, Plaintiffs' Counsel,
and Defendants' Counsel have complied in all respects with Federal
Rule of Civil Procedure 11(b) in connection with the filing of all
complaints, responsive pleadings, and dispositive motions in the
Consolidated Actions.

21.  The Parties shall bear their own costs and expenses,
except as otherwise provided in the Stipulation for Settlement II
or in this Order.

-16-

22.  In the event that Nichols defaults on his Payment Obligation or Promissory Note or otherwise breaches the Nichols' Release and Settlement Agreement, the Class shall have all rights and remedies available to it under law or equity, including those rights specifically called for in Section 3 of the Nichols' Release and Settlement Agreement.  Moreover, as stated in the Nichols' Release and Settlement Agreement, the Class on the one hand and the JDN Entities on the other hand have certain obligations to each other as a result of the settlement with Defendant Nichols, and the terms of such agreement are also incorporated herein by reference.  In the event that Nichols defaults on his Payment Obligation or the Promissory Note, the Class and the JDN Entities may pursue different remedies as provided in Section 3(b)(iii) of the Nichols' Release and Settlement Agreement, should they so elect.  However, neither the Class nor the JDN Entities may pursue both enforcement of this Judgment and the remedy set forth in Paragraph 3(b)(iii).

SO ORDERED THIS _____ DAY OF _____, 2003.

_____
The Honorable Richard W. Story
Judge, United States District Court

-17-



# EXHIBIT / ATTACHMENT

## C

(To be scanned in place of tab)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE JDN REALTY CORP.                   )    MASTER FILE NO.
SECURITIES LITIGATION                    )    1:00-CV-0396-RWS

---

SUPERIOR COURT OF THE STATE OF GEORGIA
COUNTY OF FULTON

JDN REALTY CORPORATION and         )
JDN DEVELOPMENT COMPANY,           )
INC.                               )
                                   )
            Plaintiffs             )
                                   )    CIVIL ACTION NO.
vs.                                )    2001CV39193
                                   )
J. DONALD NICHOLS, et al.,         )
                                   )
            Defendants.            )

## RELEASE AND SETTLEMENT AGREEMENT

WHEREAS J. Donald Nichols ("Nichols") was Chief Executive Officer and

Chairman of the Board of JDN Realty Corporation ("JDN Realty") and President of JDN

Development Company, Inc. ("JDN Development") (collectively "JDN") until he

resigned from JDN in February 2000;

WHEREAS Nichols was named as a defendant in various federal actions that

have been consolidated into the case styled *In re JDN Realty Corp. Securities Litigation*,

Master File No. 1:00-CV-0396-RWS, which is pending in the Northern District of

Georgia ("the Federal Class Action"), and in the case styled *JDN Realty Corp. et. al. v.*

*J. Donald Nichols, et. al.*, Civil Action No 2001CV39139, which is pending in Fulton

County Superior Court ("the Superior Court Action"). (The Federal Class Action and Superior Court Action are collectively referred to as "the Remaining Litigation").

WHEREAS Nichols has filed a lawsuit against JDN Realty Corporation in Fulton County Superior Court styled, *J. Donald Nichols v. JDN Realty Corp.*, Case No. 2002CV54600 ("the Nichols Action"), and he sought to intervene as a party plaintiff in the case styled, *Jeb L. Hughes et. al. v. Reliance Insurance Company et. al.*, Civil Action No. 2001CV38108 ("the Hughes Action"), which was pending in Fulton County Superior Court and was dismissed by the Plaintiff in that case.; and

WHEREAS the parties to this agreement wish to settle and resolve the claims and/or counterclaims that they have asserted against each other;

NOW THEREFORE, in consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, JDN for themselves and on behalf of all of their subsidiaries, predecessors, and affiliates (collectively the "JDN Entities"), and Clarion-CRA Securities, L.P. ("Clarion"), as Lead Plaintiff, on behalf of the class bringing claims in the action styled *In re JDN Realty Corp. Securities Litigation*, Master File No. 1:00-CV-0396-RWS (the "Class" or "Class Action Plaintiffs") (herein, together with the JDN Entities, the "Plaintiffs") as parties of the first part; and NICHOLS, as party of the second part, enter into this Release and Settlement Agreement (this "Agreement") and agree as follows:

## 1.

## **Payment of Proceeds**

(a)     Nichols agrees to pay the sum of two million dollars ($2,000,000) for the benefit of the Class in the manner set forth below ("Payment Obligation"). All payments

2

shall be made to the Lead Counsel for the Class who will hold all payments in escrow subject to distribution or payment by further order of the Court except as specified herein. Any interest earned on such payments shall belong to the Class.

(b)     Nichols agrees to pay $60,000 upon execution of this settlement agreement ("First Installment") to Lead Counsel for the Class ("Lead Counsel"). Lead Counsel shall hold the First Installment in escrow, but may use such funds for the cost of class notices and administration. In the event that this settlement is not finally approved, any portion of the First Installment that has not been spent or incurred for class notice and administration shall be refunded to Nichols.

(c)     Nichols agrees to deliver to his Counsel a certified check in the amount of four-hundred-forty-thousand dollars ($440,000) on the morning of the hearing and before presentation for final approval of this Settlement by the United States District Judge presiding over the Federal Class Action ("Final Approval") ("Second Installment"), which check shall be delivered to Lead Counsel promptly upon entry of the order of the Court granting Final Approval and directing Nichols to immediately deliver the certified check for the Second Installment. Nichols will pay an additional five-hundred-thousand dollars ($500,000) on or before 90 days from the date of Final Approval ("Third Installment"). The one-million dollar ($1,000,000) balance of the Payment Obligation shall be paid within 180 days from the date of Final Approval ("Final Installment").

## 2.

## Promissory Note & Security for Payment

(a)     Nichols shall execute a negotiable Promissory Note (the "Note") in the amount of $1.5 million payable to the order of JDN Securities Litigation Settlement Fund

on behalf of the Class, which shall be delivered to Lead Counsel or its assignee upon Final Approval. The Note will evidence Nichols' Third and Final Installment payment obligations, as set forth in paragraph 1(c) above. The Note shall bear interest at the rate of 5½ percent per annum commencing on the date of Final Approval. Accrued interest shall be payable on the dates for the Third and Final Installment payments under the Note, and on any other date on which the principal balance of the Note may be due and payable. The Note will provide for acceleration of the Payment Obligation and interest under the Note in the event of a default as defined in Paragraph 3 below.

(b)    At or before the time the United States District Judge presiding over the Federal Class Action enters an order granting Preliminary Approval of the Settlement, Nichols' Payment Obligation shall be secured by a first priority lien and security interest in 75,000 shares of Nichols' unrestricted and freely transferable shares of JDN common stock ("JDN Shares") and, within the time frame stated below, also by the Real Estate and the Limited Partnership Interest set forth in Appendix "A" (separately, the "Real Estate" and "Limited Partnership Interest," and collectively the "Property") (the JDN Shares and Property are collectively referred to herein as the "Collateral") (The "Limited Partnership" shall mean the partnership in which Nichols holds the "Limited Partnership Interest"). Nichols shall transfer the JDN Shares to the Broker (as defined below) to be held on behalf of the Class and JDN as security as set forth in subpart (d) below, and he shall execute a pledge agreement, a control agreement and such other documentation as Lead Counsel and/or JDN reasonably deems necessary to create and perfect their security interest in the JDN Shares. Upon Nichols' timely payments in full of the First and Second Installments the Class shall release and terminate their lien on 25,000 of the JDN

4

Shares, and upon payment in full of the Third Installment, the holder of the Note shall release and terminate their lien on 40,000 (of the remaining 50,000) JDN Shares to Nichols; the balance of 10,000 JDN Shares shall continue to be held to secure Nichols' obligation to pay in full the Final Installment.

(c)    All collateral provided by Nichols as security for the Third and Final Installments of the Payment Obligation set forth above may be exchanged (at Nichols' cost) for other collateral of equal or greater value and marketability if acceptable to holder of the Note in its sole and absolute discretion.

(d)    Nichols shall transfer the JDN Shares to Salomon Smith Barney or such other broker (the "Broker") as selected by Lead Counsel at its sole discretion to hold the JDN Shares as collateral for all or any portion of the Payment Obligation. Nichols shall execute all documents Lead Counsel and/or JDN reasonably deem necessary to perfect their first priority interest in the JDN Shares including, but not limited to, a stock pledge agreement and control agreement to be entered into with the Broker, which shall provide terms consistent with this paragraph 2(d), by or before the time the United States District Judge presiding over the Federal Class Action enters an order granting Preliminary Approval of the Settlement. Nichols shall be entitled at any time to instruct the Broker to sell the JDN Shares which are held as collateral for his Payment Obligation at no less than the "market price," provided the gross proceeds (except customary brokerage commissions) are applied to the reduction of the Payment Obligation. The Broker shall control the transfer of any or all of the JDN Shares and the disposition of proceeds from such sales. Counsel for the Class and JDN must approve any disbursements of cash to Nichols from the sale of the JDN Shares. The term "JDN Shares" as used in this

Agreement shall include any shares that are substituted for or replace the JDN Shares (either in connection with the proposed merger with DDR or otherwise).

      (e)      With regard to the Property Mr. Nichols agrees to do as follows within 60 days from execution of this Agreement:

      (i)      Mr. Nichols shall provide to the Class and JDN good and accurate (and legible) legal descriptions of all of the Real Estate (the parties hereby acknowledging that Mr. Nichols has previously provided such legal descriptions). Nichols agrees to cooperate in the event JDN chooses to obtain a survey of the Real Estate or the real property owned by the Limited Partnership at JDN's expense;

      (ii)      Mr. Nichols shall provide evidence reasonably satisfactory to the Class and JDN showing that he has "good and marketable title" to the Real Estate and the Limited Partnership Interest and that his ownership of such interests is free of liens and encumbrances that might unreasonably interfere with the rights of the holder of the Note;

      (iii)      Mr. Nichols shall execute and deliver, or cause to be executed and delivered, mortgages, deeds of trust, security deeds or similar instruments granting to the Class and JDN valid first priority liens on or security titles to all of the Real Estate, and JDN shall pay all taxes and recording fees payable in connection therewith;

      (iv)      Mr. Nichols shall also assign the Limited Partnership Interest as security for the Payment Obligations to the holder of the Note in accordance with the agreement governing the Limited Partnership, and he

6

shall obtain the consent and acknowledgement in writing of that

assignment from his partner as provided for in such agreement.

Mr. Nichols also agrees to execute any other documents reasonably determined by JDN,

the Class, or the holder of the Note to be necessary to protect their interest in the Property

that serves as collateral for the Note.

(f)      As promptly as possible, Nichols shall attest in writing, and under oath,

to the accuracy of and completeness of the Financial Disclosure Statement he submitted

in the course of the mediation of the Remaining Litigation as of the date thereof.

### 3.

### Default

(a)      If Nichols fails to make the First or Second Installment in a timely

manner, the Class or holder of the Note may sell any or all of the JDN Shares to the

extent necessary to net a cash amount equal to the amounts owing by Nichols under the

First or Second Installments.  Nothing in this paragraph 3(a) shall alter or relieve Nichols

of his obligation to deliver the certified check for the Second Installment as set forth in

paragraph 1(c) above.

(b)      If Nichols defaults on his Payment Obligations or the Note or otherwise

breaches the terms of this Agreement (and, as to the Third and Final Installments only

fails to cure such default or breach within 30 days of the date of such breach, without the

necessity of the holder of the Note giving notice of such breach), and the holder of the

Note elects to accelerate the Note, and the accelerated Note is not paid, the Class and/or

JDN shall have the following options at their discretion:

(i)    the Class and/or JDN may enforce the terms of the Class Judgment

against Nichols;

(ii)    the holder may enforce the Note, including but not limited to,

foreclosing on the Collateral; or

(iii)    the Class and/or JDN may declare their release of Nichols void, in

which event JDN and/or the Class shall retain and may foreclose

on the Collateral and may retain the payments made by Nichols to

that date, and shall be entitled to reinstate any and all claims which

they had or believed they had against Nichols prior to the

settlement. All amounts paid by Nichols pursuant to his Payment

Obligation and any amounts received by JDN or the holder of the

Note upon foreclosing against Collateral, shall be applied against

any subsequent judgment against Nichols by JDN and/or the Class.

If the Class and/or JDN exercise their rights under this paragraph 3

due to Nichols' default on his Payment Obligation, and if the Class

and/or JDN thereby declare their release of Nichols void, Nichols'

full release of JDN and the Class in paragraph 5 below shall

nonetheless remain valid. In the event that the Plaintiffs

recommence the Federal Class Action or Superior Court Action

pursuant to this Paragraph, Mr. Nichols agrees not to assert any

statute of limitations defense to any claims the Plaintiffs have

raised in such actions other than those that existed at the time those

cases were filed. Mr. Nichols also agrees not to object to such

8

recommencement. If either JDN or the Class recommences its litigation against Nichols due to his default in his Payment Obligation, the case(s) shall be effectively reinstated and shall proceed as if never dismissed.

(c)    The Class and JDN may choose to exercise any or all of the options under this paragraph 3 independent of one another, except that the Class and JDN may not exercise both their options under Paragraph 3(b)(i) and 3(b)(iii).

(d)    In the event that the Class and/or JDN choose to exercise their rights under this paragraph 3 due to Nichols' default on his Payment Obligations, Nichols agrees to reimburse the Class and/or JDN for their costs incurred enforcing their rights under this paragraph 3, including but not limited to any and all costs of foreclosing on the Collateral, attorneys' fees, and/or the costs of any litigation brought to enforce Nichols' compliance with the terms of this Agreement, but not including any costs, attorneys' fees and expenses associated with litigating any claims asserted against Mr. Nichols pursuant to Paragraph 3(b)(iii).

(e)    Nothing in this paragraph Agreement shall limit or impair rights and remedies at law or equity of any other party hereto for any breach of this Agreement.

**4.**

## Cooperation with JDN and Class Plaintiffs

Nichols agrees to cooperate fully with and consult with the JDN Entities and Class Action Plaintiffs to provide truthful and material assistance in connection with their claims against Bradley J. Taylor, William Brunstad, James King, and/or McCullough Sherrill, LLP and its predecessors (the "Non-Settling Defendants") in the Remaining Litigation. Nichols' cooperation and assistance shall consist of the following:

9

(a)     Making himself (and his own counsel, to the extent he determines necessary, at his own cost and expense) reasonably available for meetings in Atlanta and/or interviews as reasonably requested by counsel for JDN and the Class in Atlanta, at which he will fully and truthfully provide any and all requested information and will voluntarily and freely share any and all details within his knowledge that are or could be of assistance in, or detrimental to, the Plaintiffs' case against the Non-Settling Defendants;

(b)     Sharing information that Nichols may hereafter learn relating or relevant to the facts underlying the Remaining Litigation, and that might in any way be of use to any of the Plaintiffs in pursuing their claims against the Non-Settling Defendants, and informing Plaintiffs' counsel of the sources of such information and the location and/or identity of any documents relating to such information;

(c)     Making himself available for depositions in the Remaining Litigation at mutually agreeable times and locations at any time after the execution of this Agreement;

(d)     Making himself available to testify in Atlanta for any and all depositions, hearings and trials as may be required and/or reasonably requested by counsel for JDN or the Class and to testify truthfully;

(e)     Giving of one or more Affidavits, if truthful and accurate, if requested by the Class and/or JDN;

(f)     Identifying any and all documents known to Nichols related to, supporting, or that could in any way be of assistance in, or detrimental to, the Plaintiffs' claims against the Non-Settling Defendants, and copying and providing copies of any such documents that are in his possession, custody or control;

(g)     Identifying and helping locate, if necessary, any and all individuals Nichols believes in good faith have or may have information relevant to the Plaintiffs' claims against the Non-Settling Defendants without obligation to incur expenses;

(h)     Upon request, exercising his best efforts to assist the Plaintiffs in securing copies of documents not within Nichols' custody, possession or control, and securing interviews with or obtaining information from third parties who may have information relevant to the Plaintiffs' claims against the Non-Settling Defendants;

(i)     Except to the extent such disclosure would result in the breach of any applicable joint defense agreement, promptly disclosing to the Plaintiffs' counsel any and all discussions with or information learned from or with regard to the Non-Settling Defendants that is in any way related or relevant to the Remaining Litigation, and/or the Plaintiffs' claims against the Non-Settling Defendants;

(j)     Refraining from engaging, directly or indirectly, in any separate meetings or substantive discussions with the Non-Settling Defendants or their counsel in connection with the Remaining Litigation or the Plaintiffs' claims or potential claims against the Non-Settling Defendants, absent a subpoena or court order compelling them to do so, or unless consented to by the Plaintiffs;

(k)     Agreeing to waive any and all attorney-client privileges that may exist between Nichols on the one hand, and the law firm of McCullough Sherrill, LLP, its predecessors and successors, and any of its individual attorneys on the other hand with respect to any matter at issue in the Remaining Litigation;

(l)    If requested, providing a written chronology or assisting counsel to prepare a written chronology of events or facts discussed or to be discussed with counsel pursuant to this cooperation clause;

(m)    If requested, providing a list or assisting counsel to generate a list of questions to ask witnesses at depositions; and,

(n)    Making himself available, upon reasonable request, between the date this Agreement is executed and the trial of any of the cases set forth above, to assist with document review and deposition or trial preparation, as needed.

## 5.

### Nichols Release

(a)    Subject only to the conditions of paragraphs 8 and 10 below, Nichols hereby releases, acquits, and forever discharges each of the Plaintiffs, together with their affiliates, agents, representatives, officers, directors, accountants, auditors, attorneys (including, but not limited to, Alston & Bird, LLP, Waller Lansden Dortch & Davis, and Chitwood & Harley) and any current or former partners and employees, whether in their individual or representative capacities, and their predecessors, successors, and assigns from, and acknowledge the full accord and satisfaction of, any and all claims, accounts, debts, obligations, demands, damages, actions, or suits of whatever nature, whether in contract, tort, or otherwise, now accrued or hereafter accruing, known or unknown, based upon the laws of any state, the laws of the United States, the common law, or otherwise, based on any transaction or occurrence through the date of this Agreement, including, without limitation, any claim, counterclaim, or cross-claim that was or could have been asserted in the Superior Court Action, the Federal Class Action, the Nichols Action and/or the Hughes Action as well as all claims arising out of the conduct of the foregoing

12

Litigation. Nichols further releases the individuals and entities identified in this paragraph, including such individuals and entities' insurers, from any claims he may have, including but not limited to, any claim for advancement or indemnification. Nothing in this release shall affect the right of Nichols to enforce the terms and conditions of this Agreement; and Nichols does not release or discharge any claim or right of action against the Non-Settling Defendants except that, in connection with the final approval of this settlement by the Federal Court, Nichols agrees that he shall be barred from asserting claims for contribution and indemnity against Non-Settling Defendants to the same extent that the Non-Settling Defendants are barred from asserting such claims against Nichols.

(b)    Nichols shall also agree to release Jeb Hughes and Sheldon Whittelsey, as well as any other party in the Remaining Litigation in return for a release from that individual or entity.

## 6.

### Plaintiffs' Release

(a)    Subject only to the conditions of paragraphs 8 and 9 below, each of the Plaintiffs hereby releases, acquits, and forever discharges Nichols, together with his affiliates, agents, representatives, officers, directors, accountants, attorneys (excluding the Non-Settling Defendants), and employees, whether in their individual or representative capacities, and their predecessors, successors, and assigns from, and acknowledges the full accord and satisfaction of, any and all claims, accounts, debts, obligations, demands, damages, actions, or suits of whatever nature, whether in contract, tort, or otherwise, now accrued or hereafter accruing, known or unknown, based upon the laws of any state, the

13

laws of the United States, the common law, or otherwise, based on any transaction or occurrence through the date of this Agreement ("Released Matters"), including without limitation any claim, counterclaim, or cross-claim that was or could have been asserted in the Superior Court Action, the Federal Class Action, the Nichols Action, and/or the Hughes Action as well as all claims arising out of the conduct of the foregoing litigation; provided, however, that, in the case of the Federal Class Action only, the Released Matters are limited to those matters that relate to or arise out of the events that form the basis of the Federal Class Action; provided further that this release shall not affect the right of the Plaintiffs to enforce the terms and conditions of this Agreement; provided further that the Plaintiffs do not release or discharge any claim or right of action against the Non-Settling Defendants defined above. The Plaintiffs also do not release any claim or right of action against Reliance Insurance Company, it successors or assigns.

(b)    The Plaintiffs also agree to obtain for Mr. Nichols a release from any party with whom they settle and as to whom he gives a release, specifically including Messrs. Hughes and Whittelsey.

7.

## Dismissal of Claims Between Nichols and the JDN Entities

Within five days of the execution of this Agreement, the JDN Entities and Nichols shall promptly cause the dismissal, without prejudice, of all claims and counterclaims asserted against each other in the Superior Court Action and the Nichols Action. Nichols will also formally withdraw any pending motions or requests to intervene in the Hughes Action, the Federal Class Action, or otherwise, and will file any necessary pleadings to effectuate such withdrawal.

14

**8.**

**Notice/Court Approval in Securities Action**

The parties recognize that the settlement between the Class Action Plaintiffs and Nichols is subject to notice to the Class and approval by the Federal Court. The Class Action Plaintiffs and Nichols agree to execute and submit to the Federal Court any and all documents, including a Stipulation and Settlement Agreement, that are necessary to comply with applicable federal law, effectuate notice to the Class and obtain the Federal Court's approval of the settlement. The parties further agree to use their best efforts to complete the necessary documentation and to schedule a preliminary hearing on the Class Settlement on or before November 15, 2002 and to have a Final Hearing on or before February 15, 2002. The Parties agree that these dates may be changed as reasonably necessary, but that they will exercise their best efforts to keep this schedule. The Lead Plaintiff shall use its best efforts, in good faith, to seek the approval of this settlement by the Class and the Federal Court, and the Lead Plaintiff shall not opt out of the Class in connection with the final consideration and approval of this settlement.

**9.**

**Conditions with Regard to Plaintiffs' Release**

The Release given by Plaintiff in paragraph 7 above, shall be conditioned on the Federal Court's grant of a Final Approval to this settlement and upon Nichols performing his obligations under paragraph 1 regarding his Payment Obligation, paragraph 4 regarding his obligation to cooperate with the Class and JDN (the "Cooperation Clause"), and his obligations in paragraph 7. In the event that the Federal Court does not grant Final Approval to the settlement, the aforesaid Release shall be deemed null and void in

its entirety. Should one or more of the Plaintiffs dispute whether Nichols has performed his obligations under the Cooperation Clause, such Plaintiff(s) shall provide written notice to the other parties and John J. Dalton, as a third-party evaluator (the "Third-Party Evaluator") who within two weeks of the notice (unless otherwise agreed by the parties) shall hold a one day arbitration at a mutually convenient time and place and shall decide within one week of the arbitration whether Nichols has performed such obligations. The Third-Party Evaluator's decision shall be binding. Should the Third-Party Evaluator find that Nichols has not substantially performed his obligations under the Cooperation Clause, Nichols shall be deemed to be in material breach of this agreement, as a result of which breach, the aforesaid Release shall be deemed null and void as to him, and each of the Plaintiffs shall be entitled to exercise any and all remedies available to them at law or equity against Nichols.

## 10.

### Conditions Regarding Nichols' Release

The Release given by Nichols in paragraph 5 above, and the payment of the consideration described in paragraph 1(c), shall be conditioned on the Federal Court's grant of a Final Approval to this settlement after notice to the Class, and the dismissal with prejudice of Nichols from the Federal Class Action. In the event that the Federal Court does not grant Final Approval to the settlement, the aforesaid Release shall be deemed null and void in its entirety and the consideration paid pursuant to paragraph 1(b) and 1(c) shall be returned promptly to Nichols, together with any and all interest earned on such payments while such funds were in escrow, except that Plaintiffs shall retain

16

from the payment made pursuant to paragraph 1(b) any amount necessary to cover expenses incurred for class notice and administration.

## 11.

### Agreement Between JDN and the Class

JDN agrees to guarantee the Payment Obligations from Nichols to the Class under this Agreement. In the event the Class does not receive timely payment (including the application of any cure period) of the Installments, JDN shall pay to the Class the amount of the Installment then due by Nichols to the Class. The Class shall execute such documents as JDN may determine to be necessary to allow JDN to acquire the benefits of the Note and Collateral, including a Power of Attorney, which would allow JDN to enforce the Class Judgment and Note against Nichols. JDN shall execute any documents the Class reasonably deems necessary to effectuate this guarantee.

## 12.

### No Prior Assignment/Authorizations

Each of the undersigned parties warrants that there has been no assignment, in whole or in part, of any claim that he or it may have against any other party hereto based on any transactions or occurrences related to the lawsuits being settled pursuant to this Agreement (as reflected in the captions contained on page one of the Agreement), except to the extent that the Class Action Plaintiffs and the JDN Entities have agreed to share in the proceeds of certain recoveries and to cooperate in the prosecution of certain cases as set forth in the Stipulation and Agreement of Settlement filed with the Federal Court in the Securities Action on August 14, 2001. Each of the signatories to this Agreement individually warrants, represents, and affirms, as applicable, that he or she is a duly

17

authorized agent of the organization for which he or she is signing and that the
organization has duly authorized the execution and acceptance of this Agreement. The
Parties hereto acknowledge and agree that JDN and the Class may assign their rights
under this Agreement to each other or to any of their successor(s) in interest.

### 13.

### Miscellaneous

Each undersigned party hereby acknowledges that this Agreement has been
completely read, fully understood, and voluntarily accepted, and that this document sets
forth the entire agreement of the parties with respect to the matters referred to herein.
The undersigned parties agree that there are no other agreements, promises,
representations, or warranties that have been made to induce any party to execute this
Agreement, except as expressly set forth herein. The undersigned acknowledge that this
Agreement was drafted and negotiated by all of the undersigned parties, and for purposes
of construction, no party will be deemed the drafter.

### 14.

### Governing Law/Enforcement of Agreement

This Agreement shall be governed by and construed in accordance with the laws
of the State of Georgia. The prevailing party in any action to enforce this Agreement
shall be entitled to recover its costs of litigation, including reasonable attorneys' fees
from the other party.

## 15.

### Execution in Counterparts

This Agreement may be executed in multiple counterparts, all of which together shall constitute an original.

## 16.

### Severability

A finding by any court or administrative body that any part of this Agreement is invalid or unlawful shall not affect any other portion of this Agreement, and all provisions not found to be invalid or unlawful shall remain in full force and effect.

## 17.

### Contribution Bar in Federal Class Action

At the time the parties seek final approval of this settlement, the parties agree to present to the Federal Court a proposed judgment that provides for a contribution bar and judgment reduction provisions for the protection of Mr. Nichols and the Non-Settling Defendants, in accordance with Section 21D(f)(7)(A) and (B) of the Exchange Act and otherwise applicable federal and state law.

## 18.

### Judgment Reduction in Superior Court Action

If, following a trial, one or both of the JDN Parties obtain a judgment, award or recovery against any of the Non-Settling Defendants in the Superior Court Action that subjects Nichols to liability on a claim for contribution or indemnity brought by one or more of the Non-Settling Defendants, the recovering JDN Entity or Entities shall reduce their total judgment, award or recovery against such Non-Settling Defendant or

Defendants by the aggregate amount, percentage or share of such judgment, award or recovery (if any) lawfully attributable by the Fulton County Superior Court or the jury to Nichols or the amount that Nichols paid in settlement of the claims against him pursuant to this Agreement, whichever is greater. If any such judgment or award against one or more Non-Settling Defendants is not reduced in accordance with the foregoing, and after satisfying all or part of the JDN Parties' judgment or award any Non-Settling Defendant successfully asserts a claim for contribution or indemnity in a separate action against Nichols in connection with or arising from the claims asserted in the Superior Court Action, and Nichols is adjudged to be liable on and are required to pay such claim for contribution or indemnity, the JDN Entities shall reimburse Nichols the amount of any such payment. Class Action Plaintiffs agree that the amount of any recovery from the Non-Settling Defendants that will go to the Class pursuant to paragraph 2.19 of the Stipulation and Agreement of Settlement filed with the Federal Court in the Securities Action on August 14, 2001, shall be the amount recovered by the JDN Entities net of any amounts the JDN Entities are required to pay to Nichols pursuant to this paragraph 17.

## 19.

### No Agency

Nothing in this Agreement does, or is intended to, create an agency relationship among any of the parties to the settlement.

IN WITNESS WHEREOF, the undersigned have affixed their signatures hereon, as of this 23rd day of October, 2002.

J. Donald Nichols

JDN REALTY CORPORATION

Title: CEO

JDN DEVELOPMENT COMPANY, INC.

Title: CEO

CHITWOOD and HARLEY, as Counsel to Class Action Plaintiff Clarion-CRA Securities, L.P.

Title: Partner, Lead Counsel

On Behalf of the Class Action Plaintiff

21

## PROPERTY
## SECURING THE
## NICHOLS' PAYMENT OBLIGATION

All terms with initial capital letters used in this Appendix A shall have the meaning ascribed to them in that Certain Release and Settlement Agreement, entered into on October 23, 2002, by and among J. Donald Nichols, JDN Realty Corporation, JDN Development Company, Inc., and Chitwood and Harley, as Counsel to Class Action Plaintiff Clarion-CRA Securities, L.P., on behalf of the Class Action Plaintiff, to which this Appendix A is affixed.

**SECTION 1.**    The Real Estate includes the following property located in Coweta County, Georgia, as described below:

### Tract One

All that tract or parcel of land containing 22.2209 acres lying and being in Land Lot 55, Land District 5 of Coweta County, Georgia and being shown as **TRACT ONE** on a plat of survey by J.M. Smallwood, Jr., Georgia Registered Land Surveyor No. 2045, dated August 15, 1986, revised December 1, 1986 and being more particularly described as follows:

**TO FIND THE TRUE POINT OF BEGINNING,** commence at the intersection of the extended centerline of Anthony Road and the southerly right-of-way line of Old State Route 34 (being a 60 foot right-of-way); thence running in a northeasterly direction along said right-of-way line of Old State Route 34 a distance of 314.88 feet to an iron pin set and the **TRUE POINT OF BEGINNING;** from said **TRUE POINT OF BEGINNING** thence running North 79 degrees 04 minutes 16 seconds East along said right-of-way line of Old State Route 34 a distance of 732.28 feet to an iron pin set; thence leaving said right-of-way line of Old State Route 34 and running South 00 degrees 09 minutes 20 seconds East a distance of 1227.26 feet to an iron pin found on the northerly right-of-way line of Bullsboro Drive (also known as New State Highway 34 and having a variable right-of-way); thence running South 59 degrees 56 minutes 00 seconds West along said right-of-way line of Bullsboro Drive a distance of 445.64 feet to a right-of-way marker; thence running North 29 degrees 44 minutes 15 seconds West along said right-of-way line of Bullsboro Drive a distance of 24.92 feet to a right-of-way marker; thence running South 59 degrees 57 minutes 59 seconds West along said right-of-way line of Bullsboro Drive a distance of 361.99 feet to an iron pin found; thence leaving said right-of-way line of Bullsboro Drive and running North 00 degrees 25 minutes 29 seconds West a distance of 1471.27 feet to a iron pin set and the **TRUE POINT OF BEGINNING.**

## Tract Two

All that tract or parcel of land containing 20.2397 acres lying and being in Land Lots 54 and 55, Land District 5 of Coweta County, Georgia and being shown and delineated as **TRACT TWO** on a plat of survey by J.M. Smallwood, Jr., Georgia Registered Land Surveyor No. 2045, dated August 15, 1986, revised December 1, 1986, and being more particularly described as follows:

**TO FIND THE TRUE POINT OF BEGINNING**, commence at the intersection of the extended centerline of Anthony Road and the southerly right-of-way line of Old State Route 34 (a 60 foot right-of-way); thence running in a northeasterly direction along said right-of-way line of Old State Route 34 a distance of 1047.16 feet to an iron pin set and the **TRUE POINT OF BEGINNING**; from said **TRUE POINT OF BEGINNING** thence running North 79 degrees 16 minutes 26 seconds East along said right-of-way line of Old State Route 34 a distance of 347.48 feet to an iron pin set; thence running North 79 degrees 46 minutes 30 seconds East along said right-of-way line of Old State Route 34 a distance of 283.34 feet to an iron pin found; thence leaving said right-of-way line of Old State Route 34 and running South 30 degrees 05 minutes 56 seconds East a distance of 851.61 feet to an aluminum pin found on the northerly right of way line of Bullsboro Drive (also known as State Highway 34 and having a variable right-of-way); thence running South 59 degrees 48 minutes 34 seconds West along said right-of-way line of Bullsboro Drive a distance of 153.65 feet to a right-of-way marker; thence running North 30 degrees 07 minutes 44 seconds West along said right-of-way line of Bullsboro Drive a distance of 25.00 feet to a right-of-way marker; thence running South 59 degrees 52 minutes 16 seconds West along said right-of-way line of Bullsboro Drive a distance of 549.79 feet to a right-of-way marker; thence running South 30 degrees 07 minutes 44 seconds East along said right-of-way line of Bullsboro Drive a distance of 25.00 feet to a right-of-way marker; thence running South 59 degrees 56 minutes 00 seconds West along said right-of-way line of Bullsboro Drive a distance of 503.47 feet to an iron pin found; thence leaving said right-of-way line of Bullsboro Drive and running along the easternmost boundary line of that tract of land now or formerly owned by JDN Enterprises, Inc. and described in that certain Warranty Deed from Hermon E. Warren to JDN Enterprises, Inc., dated January 25, 1983 and recorded in Deed Book 346, Page 170, Coweta County, Georgia, North 00 degrees 09 minutes 20 seconds West a distance of 1227.26 feet to an iron pin set and the **TRUE POINT OF BEGINNING**.

LESS AND EXCEPT:

All that tract or parcel of land lying and being in Land Lots 54 and 55 of the 5th District of Coweta County, Georgia and being more particularly described as follows:

> To find the true **POINT OF BEGINNING**, commence at the intersection of the extended centerline of Anthony Road and the southerly right-of-way of Old State Route 34 (being a 60 foot right-of-way); thence running in a northeasterly direction along said right-of-way a distance of 1677.98 feet to a point; thence running South 30 degrees 05 minutes 56 seconds East, a distance of 34.00 feet to a point and the **POINT OF BEGINNING**; thence running South 30 degrees 05 minutes 56 seconds East, a distance of 594.14 feet to a point; thence running South 59 degrees 52 minutes 16 seconds West, a distance of 166.06 feet to a point; thence running South 30 degrees 07 minutes 44 seconds East, a distance of 198.64 feet to a point; thence running South 59 degrees 52 minutes 16 seconds West, a distance of 219.00 feet to a point; thence running North 30 degrees 07 minutes 44 seconds West, a distance of 171.67 feet to a point; thence running South 59 degrees 52 minutes 16 seconds West a distance of 145.00 feet to a point; thence running South 14 degrees 52 minutes 16 seconds West, a distance of 7.07 feet to a point; thence running South 30 degrees 07 minutes 44 seconds East, a distance of 166.67 feet to a point; thence running South 59 degrees 52 minutes 16 seconds West, a distance of 31.00 feet to a point; thence running North 30 degrees 07 minutes 44 seconds West, a distance of 166.67 feet to a point; thence running North 75 degrees 07 minutes 44 seconds West, a distance of 7.07 feet to a point; thence running South 59 degrees 52 minutes 16 seconds West, a distance of 132.50 feet to a point; thence running South 30 degrees 07 minutes 44 seconds East, a distance of 196.67 feet to a point; thence running South 59 degrees 56 minutes 00 seconds West, a distance of 342.62 feet to a point; thence running North 52 degrees 33 minutes 42 seconds West, a distance of 258.18 feet to a point; thence running South 59 degrees 52 minutes 16 seconds West, a distance of 19.35 feet to a point; thence running North 30 degrees 07 minutes 44 seconds West, a distance of 527.53 feet to a point; thence running North 15 degrees 26 minutes 15 seconds West, a distance of 78.73 feet to a point; thence running North 56 degrees 33 minutes 36 seconds East, a distance of 475.27 feet to a point; thence running North 79 degrees 24 minutes 29 seconds East, a distance of 112.54 feet to a point; thence running North 61 degrees 22 minutes 08 seconds East, a distance of 564.06 feet to a point and the **POINT OF BEGINNING**; said tract containing 19.776 acres.

LESS AND EXCEPT:

All that tract or parcel of land lying and being in Land Lot 55 of the 5th District of Coweta County, Georgia and being more particularly described as follows:

To find the true point of beginning, commence at the intersection of the extended centerline of Anthony Road and the southerly right-of-way of Old State Route 34 (being a 60 foot right-of-way); thence running in a northeasterly direction along said right-of-way a distance of 1,677.98 feet to a point; thence running South 30 degrees 05 minutes 56 seconds East, a distance of 851.61 feet to a point on the North right-of-way of Bullsboro Drive; thence running South 59 degrees 48 minutes 34 seconds West along said right-of-way a distance of 153.65 feet to a point; thence North 30 degrees 07 minutes 44 seconds West along said right-of-way a distance of 25.00 feet to a point; thence South 59 degrees 52 minutes 16 seconds West along said right-of-way a distance of 412.29 feet to a cross cut in concrete curb and gutter and the **POINT OF BEGINNING**; thence South 59 degrees 52 minutes 16 seconds West 137.50 feet along said Northeasterly right-of-way line to an iron pin; thence North 30 degrees 07 minutes 44 seconds West 171.67 feet to an iron pin; thence North 59 degrees 52 minutes 16 seconds East 132.50 feet to a cross cut in concrete curb and gutter; thence South 75 degrees 07 minutes 44 seconds East 7.07 feet to a cross cut in concrete curb and gutter; thence South 30 degrees 07 minutes 44 seconds East 166.67 feet to a cross cut in concrete curb and gutter on the Northeasterly right-of-way line of Georgia Highway No. 34 and the **POINT OF BEGINNING**; said tract containing 0.5416 acres, and being more particularly shown on a plat of survey prepared for The Krystal Company and Lawyers Title Insurance Corporation by Hensley-Schmidt, Inc., Engineers and Surveyors, D. Ken Brown, RLS No. 2377, dated August 24, 1989, last revised September 12, 1989.

LESS AND EXCEPT:

All that tract or parcel of land lying and being in Land Lot 54 of the 5th District of Coweta County, Georgia; and being more particularly described as follows:

To find the true point of beginning, commence at the intersection of the extended centerline of Anthony Road and the southerly right-of-way of Old State Route 34 (being a 60 foot right-of-way); thence running in a northeasterly direction along said right-of-way a distance of 1677.98 ft. to a point; thence running South 30 deg. 05 min. 56 sec. East, a distance of 628.14 ft. to a point and the **TRUE POINT OF BEGINNING**; thence running South 30 deg. 05 min. 56 sec. East, a distance of 223.47 ft. to a point on the North right-of-way of Bullsboro Drive; thence running South 59 deg., 48 min. 34 sec. West along said right-of-way a distance of 153.65 ft. to a point; thence running North 30 deg. 07 min. 44 sec. West along said right-of-way, a distance of 25.00 ft. to a point; thence running South 59 deg. 52 min. 16 sec. West, a distance of 12.29 ft. to a point; thence running North 30 deg. 07 min. 44 sec. West, a distance of 198.64 ft. to a point; thence running North 59 deg. 52 min 16 sec. East, a distance of 166.06 ft. to a point and the **TRUE POINT OF BEGINNING**; said tract containing 0.845 acres; all as shown on that certain As Built Survey of SHENANDOAH PLAZA for JDN Enterprises, Inc. prepared by JMS Surveyors at Union City, Georgia (Georgia Registered Surveyor No. 2045) dated December 26, 1987, to which survey reference is made hereby for a more complete and particular description of the property herein conveyed.

LESS AND EXCEPT:

All that tract or parcel of land lying and being in Land Lots 54 and 55 of the 5th District of Coweta County, Georgia, and being more particularly described as follows:

To find the point of beginning, commence at the intersection of the extended centerline of Anthony Drive and the southerly right-of-way of Old State Route 34 (being a 60 foot right-of-way); thence running in a northeasterly direction along said southerly right-of-way of Old State Route 34 and following the curvature thereof a distance of 1,677.98 feet to a point; thence leave said right-of-way running South 30 degrees 05 minutes 56 seconds East a distance of 851.61 feet to a one-half inch aluminum pipe on the North right-of-way line of State Route 34, a.k.a. Bullsboro Drive (said point being 125 feet from the centerline of State Route 34); thence running South 59 degrees 48 minutes 34 seconds West along said right-of-way a distance of 153.65 feet to a broken concrete marker; thence North 30 degrees 07 minutes 44 seconds West along said right-of-way a distance of 25.00 feet to a concrete marker; thence South 59 degrees 52 minutes 16 seconds West along said right-of-way a distance of 231.29 feet to an iron pin and the **POINT OF BEGINNING**; thence running South 59 degrees 52 minutes 16 seconds West along the North right-of-way of State Route 34 a distance of 133.00 feet to a point; thence leaving said right-of-way line run North 30 degrees 07 minutes 44 seconds West a distance of 20.00 feet to a point; thence running South 59 degrees 52 minutes 16 seconds West a distance of 10.00 feet to a point; thence running North 30 degrees 07 minutes 44 seconds West a distance of 60.00 feet to a point; thence running South 59 degrees 52 minutes 16 seconds West a distance of 7.00 feet to a point; thence running North 30 degrees 07 minutes 44 seconds West, a distance of 86.67 feet to an iron pin; thence running North 14 degrees 52 minutes 16 seconds East a distance of 7.07 feet to an iron pin; thence running North 59 degrees 52 minutes 16 seconds East a distance of 145.00 feet to a point; thence running South 30 degrees 07 minutes 44 seconds East a distance of 171.67 feet to an iron pin and the **POINT OF BEGINNING**; said tract containing 0.573 acres as per Plat of Survey for Georgia-Texas Enterprises, Inc. prepared by W.W Flowers, Jr., Georgia Registered Land Surveyor No. 1975, dated August 16, 1988.

**TOGETHER WITH** all easement and curb cut rights benefiting the above-described property reserved in that certain Limited Warranty Deed from JDN Enterprises, Inc. to American Income Properties Operating, L.P. dated August 19, 1988 and recorded in the Coweta County, Georgia records.

**TOGETHER WITH** all easement rights benefiting the above-referenced property set forth in that certain Declaration of Easements and Restrictive Covenants, Newnan, Georgia, by JDN Enterprises, Inc., dated September 4, 1987, filed and recorded November 9, 1987, in Deed Book 450, Page 566, et. seq., Coweta County, Georgia Records, as amended by First Amendment to Declaration of Easements and Restrictive Covenants, Newnan, Georgia, by JDN Enterprises, Inc. dated April 13, 1988, filed and recorded in Deed Book 467, Page 235, et seq., Coweta County, Georgia Records on April 14, 1988.

**SECTION 2.**    The Real Estate includes the following property located in Douglas County, Georgia, as described below:

### Outlot No. 1

**ALL THAT TRACT OR PARCEL OF LAND** lying and being in Land Lot 130 of the 2nd District, 5th Section, City of Douglasville, Douglas County, Georgia, containing 0.865 acre, as shown on that certain Boundary Survey of Outlots 1, 3, 5 and 9 of Douglasville Crossing Shopping Center, prepared for J. Donald Nichols and Chicago Title Insurance Company, prepared by Trenton D. Turk, G.R.L.S. No. 2411 of GeoSurvey, Ltd., dated June 12, 1997 and being more particularly described as follows:

**TO FIND THE TRUE POINT OF BEGINNING,** commence at the intersection of Land Lots 130, 131, 158 and 159; thence run along the western land lot line of Land Lot 130 South 01° 32'50" East a distance of 970.84 feet to a point;

Thence run North 62° 42'23" East a distance of 83.13 feet to a 5/8"rebar set and the **TRUE POINT OF BEGINNING;**

Thence run North 62° 42'23" East a distance of 310.00 feet to a ½" rebar found on the northwestern right-of-way line of Stewart Parkway (90-foot right-of-way);

Thence run along said right-of-way line southeasterly along the arc of a curve to the left, said arc having a radius of 545.00 feet and an arc length of 199.23 feet and being subtended by a chord bearing South 37° 45'56" East a chord distance of 198.12 feet to a ½" rebar found;

Thence leaving said right-of-way line run South 41° 45'36" West a distance of 18.25 feet to a ½" rebar found;

Thence run South 89° 25'52" West a distance of 368.31 feet to a 5/8" rebar set;

Thence run North 27° 17'31" West a distance of 35.71 feet to a 5/8" rebar set and the **TRUE POINT OF BEGINNING.**

**APPENDIX A**

### Outlot No. 3

**ALL THAT TRACT OR PARCEL OF LAND** lying and being in Land Lot 130 of the 2nd District, 5th Section, City of Douglasville, Douglas County, Georgia, containing 0.761 acre, as shown on that certain Boundary Survey of Outlots 1, 3, 5 and 9 of Douglasville Crossing Shopping Center, prepared for J. Donald Nichols and Chicago Title Insurance Company, prepared by Trenton D. Turk, G.R.L.S. No. 2411 of GeoSurvey, Ltd., dated June 12, 1997 and being more particularly described as follows:

**TO FIND THE TRUE POINT OF BEGINNING,** commence at the intersection of Land Lots 130, 131, 158 and 159; thence run along the western land lot line of Land Lot 130 South 01° 32'50" East a distance of 970.84 feet to a point;

Thence run North 62° 42'23" East a distance of 83.13 feet to a 5/8" rebar set;

Thence run North 62° 42'23" East a distance of 310.00 feet to a ½" rebar found on the northwestern right-of-way line of Stewart Parkway (90-foot right-of-way);

Thence run southeasterly along said right-of-way line the following courses and distances: along the arc of a curve to the left, said arc having a radius of 545.00 feet and an arc length of 199.23 feet and being subtended by a chord bearing South 37° 45'56" East a chord distance of 198.12 feet to a ½" rebar found;

Thence along the arc of a curve to the left, said arc having a radius of 545.00 feet and an arc length of 402.53 feet and being subtended by a chord bearing South 69° 23'48" East a chord distance of 393.44 feet to a point;

Thence North 89° 26'45" East a distance of 175.81 feet to a point;

Thence along the arc of a curve to the right, said arc having a radius of 457.38 feet and an arc length of 17.85 feet and being subtended by a chord bearing South 89° 26'10" East a chord distance of 17.85 feet to a point and the **TRUE POINT OF BEGINNING;**

Thence continue along said right-of-way line along the arc of a curve to the right, said arc having a radius of 457.38 feet and an arc length of 178.43 feet and being subtended by a chord bearing South 77° 08'30" East a distance of 177.30 feet to a ½" rebar found;

Thence leaving said right-of-way line run South 17° 27'01" West a distance of 191.47 feet to a ½" rebar found;

Thence run North 72° 32'58" West a distance of 146.74 feet to a 5/8" rebar set;

Thence run North 27° 32'54" West a distance of 42.42 feet to a 5/8" rebar set;

Thence run North 17° 27'02" East a distance of 147.28 feet to a point and the **TRUE POINT OF BEGINNING.**

APPENDIX A

## Outlot No. 5

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lot 130 of the 2nd District, 5th Section, City of Douglasville, Douglas County, Georgia, containing 1.492 acres, as shown on that certain Boundary Survey of Outlots 1, 3, 5 and 9 of Douglasville Crossing Shopping Center, prepared for J. Donald Nichols and Chicago Title Insurance Company, prepared by Trenton D. Turk, G.R.L.S. No. 2411 of GeoSurvey, Ltd., dated June 12, 1997 and being more particularly described as follows:

TO FIND THE TRUE POINT OF BEGINNING, commence at the intersection of Land Lots 130, 131, 158 and 159; thence run along the western land lot line of Land Lot 130 South 01° 32'50" East a distance of 970.84 feet to a point;

Thence run North 62° 42'23" East a distance of 83.13 feet to a 5/8" rebar set;

Thence run North 62° 42'23" East a distance of 310.00 feet to a ½" rebar found on the northwestern right-of-way line of Stewart Parkway (90-foot right-of-way);

Thence run southeasterly along said right-of-way line the following courses and distances: along the arc of a curve to the left, said arc having a radius of 545.00 feet and an arc length of 199.23 feet and being subtended by a chord bearing South 37° 45'56" East a chord distance of 198.12 feet to a ½" rebar found;

Thence along the arc of a curve to the left, said arc having a radius of 545.00 feet and an arc length of 402.53 feet and being subtended by a chord bearing South 69° 23'48" East a chord distance of 393.44 feet to a point;

Thence North 89° 26'45" East a distance of 175.81 feet to a point;

Thence along the arc of a curve to the right, said arc having a radius of 457.38 feet and an arc length of 17.85 feet and being subtended by a chord bearing South 89° 26'10" East a chord distance of 17.85 feet to a point;

Thence along the arc of a curve to the right, said arc having a radius of 457.38 feet and an arc length of 178.43 feet and being subtended by a chord bearing South 77° 08'30" East a distance of 177.30 feet to a ½" rebar found;

Thence along the arc of a curve to the right, said arc having a radius of 457.38 feet and an arc length of 14.33 feet and being subtended by a chord bearing South 65° 04'04" East a distance of 14.33 feet to a point;

Thence run South 64° 10'12" East a distance of 0.80 feet to a point;

Thence run South 64° 10'12" East a distance of 99.20 feet to a point;

Thence along the arc of a curve to the left, said arc having a radius of 545.00 feet and an arc length of 92.14 feet and being subtended by a chord bearing South 69° 06'13" East a chord distance of 92.03 feet to a point;

Thence along the arc of a curve to the left, said arc having a radius of 545.00 feet and an arc length of 65.55 feet and being subtended by a chord bearing South 77° 23'33" East a chord distance of 65.51 feet to a 5/8" reb
ar set and the **TRUE POINT OF BEGINNING**;

Thence continue along said right-of-way line along the arc of a curve to the left, said arc having a radius of 545.39 feet and an arc length of 100.57 feet and being subtended by a chord bearing South 85° 58'57" East a chord distance of 100.43 feet to a point;

Thence continue along said right-of-way line North 88° 44'05" East a distance of 115.65 feet to a 5/8" rebar set;

Thence leaving said right-of-way line run South 01° 14'22" East a distance of 300.00 feet to a 5/8" rebar set

Thence run South 88° 44'05" West a distance of 215.52 feet to a 5/8" rebar set;

Thence run North 01° 15'55" West a distance of 309.25 feet to a 5/8" rebar set and the **TRUE POINT OF BEGINNING**.

### Outlot No. 9

**ALL THAT TRACT OR PARCEL OF LAND** lying and being in Land Lot 130 of the 2nd District, 5th Section, City of Douglasville, Douglas County, Georgia, containing 1.320 acres, as shown on that certain Boundary Survey of Outlots 1, 3, 5 and 9 of Douglasville Crossing Shopping Center, prepared for J. Donald Nichols and Chicago Title Insurance Company, prepared by Trenton D. Turk, G.R.L.S. No. 2411 of GeoSurvey, Ltd., dated June 12, 1997 and being more particularly described as follows:

**TO FIND THE TRUE POINT OF BEGINNING**, commence at the intersection of Land Lots 130, 131, 158 and 159; thence run along the western land lot line of Land Lot 130 South 01° 32'50" East a distance of 970.84 feet to a point;

Thence run North 62° 42'23" East a distance of 83.13 feet to a 5/8" rebar set;

Thence run North 62° 42'23" East a distance of 310.00 feet to a ½" rebar found on the northwestern right-of-way line of Stewart Parkway (90-foot right-of-way);

Thence run southeasterly along said right-of-way line the following courses and distances: along the arc of a curve to the left, said arc having a radius of 545.00 feet and an arc length of 199.23 feet and being subtended by a chord bearing South 37° 45'56" East a chord distance of 198.12 feet to a ½" rebar found;

Thence along the arc of a curve to the left, said arc having a radius of 545.00 feet and an arc length of 402.53 feet and being subtended by a chord bearing South 69° 23'48" East a chord distance of 393.44 feet to a point;

Thence North 89° 26'45" East a distance of 175.81 feet to a point;

Thence along the arc of a curve to the right, said arc having a radius of 457.38 feet and an arc length of 17.85 feet and being subtended by a chord bearing South 89° 26'10" East a chord distance of 17.85 feet to a point;

Thence along the arc of a curve to the right, said arc having a radius of 457.38 feet and an arc length of 178.43 feet and being subtended by a chord bearing South 77° 08'30" East a distance of 177.30 feet to a ½" rebar found;

Thence along the arc of a curve to the right, said arc having a radius of 457.38 feet and an arc length of 14.33 feet and being subtended by a chord bearing South 65° 04'04" East a distance of 14.33 feet to a point;

Thence run South 64° 10'12" East a distance of 0.80 feet to a point;

Thence run South 64° 10'12" East a distance of 99.20 feet to a point;

Thence along the arc of a curve to the left, said arc having a radius of 545.00 feet and an arc length of 92.14 feet and being subtended by a chord bearing South 69° 06'13" East a chord distance of 92.03 feet to a point;

Thence along the arc of a curve to the left, said arc having a radius of 545.00 feet and an arc length of 65.55 feet and being subtended by a chord bearing South 77° 23'33" East a chord distance of 65.51 feet to a 5/8" rebar set;

Thence along the arc of a curve to the left, said arc having a radius of 545.39 feet and an arc length of 100.57 feet and being subtended by a chord bearing South 85° 58'57" East a chord distance of 100.43 feet to a point;

Thence North 88° 44'05" East a distance of 115.65 feet to a 5/8" rebar set;

Thence leaving said right-of-way line run South 01° 14'22" East a distance of 300.00 feet to a 5/8" rebar set

Thence run North 88° 44'02" East a distance of 147.64 feet to a point;

Thence run North 88° 47'32" East a distance of 94.82 feet to a ½" rebar found and the **TRUE POINT OF BEGINNING**;

Thence run North 88° 33'39" East a distance of 30.55 to a ½" rebar found;

Thence run North 88° 39'01" East a distance of 241.71 feet to a 5/8" rebar set;

Thence run South 25° 44'15" West a distance of 258.96 feet to a 5/8" rebar set on the northern right-of-way line of Plaza Parkway;

Thence run along said right-of-way line of Plaza Parkway along the arc of a curve to the left, said arc having a radius of 463.83 feet and an arc length of 126.84 feet and being subtended by a chord bearing North 83° 10'43" West a chord distance of 126.45 feet to a point;

Thence continue along said right-of-way line South 88° 59'13" West a distance of 85.71 feet to a 5/8" rebar set;

Thence leaving said right-of-way line run North 01° 04'22" West a distance of 156.51 feet to a ½" rebar found;

Thence run North 43° 46'49" East a distance of 78.70 feet to a ½" rebar found and the **TRUE POINT OF BEGINNING**.

**SECTION 3.**        The Real Estate includes the following property located in Williamson County, Tennessee, as described below:

PARCEL 80, Map 79, Land in the 9th Civil District of Williamson County, Tennessee, and described as follows:

Commencing at an iron post in the east margin of Carothers Road at Cannon's northwest corner, thence with said east margin North 2 degrees 00 minutes East 250 feet to an iron post, the point of beginning, thence continuing with said east margin North 2 degrees 00 minutes East 145.0 feet to an iron post, thence with the following five new staked lines: South 88 degrees 00 minutes 88 degrees 00 minutes North 400 feet to an iron post, North 2 degrees 00 minutes East 150 feet to an iron post, South 88 degrees 00 minutes East 342.9 feet to an iron post, South 2 degrees 25 minutes West 295 feet to an iron post, North 88 degrees 00 minutes West 741.3 feet to the point of beginning and containing 3.49 acres, more or less.

PARCEL 81, Map 79, Land in the 9th Civil District of Williamson County, Tennessee, and described as follows:

Commencing at an iron post in the east margin of Carothers Road at Cannon's northwest corner, thence with said East margin North 2 degrees 00 minutes East 125 feet to an iron post the point of beginning, thence continuing with said east margin North 2 degrees 00 minutes East 125 feet to an iron post, thence with the following two new staked lines, South 88 degrees 00 minutes East 741.3 feet to an iron post, South 2 degrees 25 minutes West 434.5 feet to an iron post in Cannon's north fence line, thence with his north fence line North 89 degrees 57 minutes West 286.4 feet to an iron post, thence leaving his north fence line and with the following two new staked lines North 2 degrees 00 minutes East 321 feet to an iron post and North 88 degrees 00 minutes West 445 feet to the point of beginning and containing 4.13 acres, more or less.

PARCEL 82, Map 79, Land in the 9th Civil District of Williamson County, Tennessee, and described as follows:

Beginning at an iron post in the east margin of Carothers Road at Cannon's northwest corner, thence with said east margin West 2 degrees 00 minutes East 125 feet to an iron post, thence the following two new staked lines, South 88 degrees 00 minutes east 445 feet to an iron post and South 2 degrees 00 minutes West 321 feet to an iron post in Cannon's north fence line, thence with his north fence line north 89 degrees 57 minutes West 230.6 feet to an interior corner of Cannon, thence with his east fence line North 11 degrees 30 minutes West 250 feet to an interior corner of Cannon, thence with his north fence line, South 83 degrees 58 minutes West 168.6 feet to the point of beginning and containing 2.43 acres, more or less.

A legal description of a 4.29 acre tract, located in the 9th Civil District of William son County (City of Franklin) Tenn.

More specifically begin in the West ROW of Royal Oaks Blvd. 1,025 ft. North of the North ROW of State Route 96, as it intersects with the West ROW of Royal Oaks Blvd. begin at a point; Being a common corner between JDN Enterprises and Royal Oaks Apts. (Adams and Downey property) thence with the West ROW of Royal Oaks Blvd. S 10° 33' 42" W 163.47 ft. to a point in the West ROW of Royal Oaks Blvd. being the North line of Phase II of Alexander Plaza; thence leaving said ROW with the following line common to said Phase II N 88° 51' 52" W 267.87 ft. to a point; thence N 1° 08'08" E 15 ft. to a point; thence N 88 51' 52" W 230.00 ft. to a point; thence S 1° 08' 08" W 15 ft. to a point thence N 88° 51' 52" W 230.00 ft. to a point; common to Phase I and Phase II Alexander Plaza; thence continuing with lines common to Phase I N 88° 51' 52" W 160.00 ft. to a pt. thence N 1°08'08" E 40.00 ft. to a point; thence N 88° 51' 52" W 248.50 ft. to a point; thence N 1° 08' 08" E 147.49 ft. to a point being the NE corner of Phase 1, also being the common line between JDN Enterprises property and Royal Oaks property (Adams and Downey property) thence with said common line leaving Phase I S 87° 34' 21" E 1,163.44 ft. to a point of beginning.

**SECTION 4.**        The Limited Partnership Interest consists of the sole limited partnership interest in Dillon Land Associates, L.P., a Georgia limited partnership ("Dillion Land"), pursuant to the Agreement of Limited Partnership of Dillon Land, entered into by its limited and general partners, dated as of December 18, 1996, and all amendments thereto. Dillon Land owns certain property in Dillon, South Carolina. Such property is approximately 216 acres, with approximately 141 of such acres located between Commerce Drive and Interstate I-95 in Dillon, South Carolina. The remaining 75 acres are located south of Commerce Drive.



# EXHIBIT / ATTACHMENT

D

(To be scanned in place of tab)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE JDN REALTY CORP. | ) | MASTER FILE NO. |
| SECURITIES LITIGATION | ) | 1:00-CV-0396-RWS |

---

SUPERIOR COURT OF THE STATE OF GEORGIA
COUNTY OF FULTON

| | | |
|---|---|---|
| JDN REALTY CORPORATION and | ) | |
| JDN DEVELOPMENT COMPANY, | ) | |
| INC. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | CIVIL ACTION NO. |
| vs. | ) | 2001CV39193 |
| | ) | |
| J. DONALD NICHOLS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

SUPERIOR COURT OF THE STATE OF GEORGIA
COUNTY OF FULTON

| | | |
|---|---|---|
| JEB L. HUGHES and C. | ) | |
| SHELDON WHITTELSEY, IV, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. |
| | ) | 2001CV38108 |
| RELIANCE INSURANCE COMPANY | ) | |
| and JDN REALTY CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**RELEASE AND SETTLEMENT AGREEMENT**

WHEREAS Jeb L. Hughes ("Hughes") and C. Sheldon Whittelsey, IV ("Whittelsey") were officers of one or both of the JDN Entities who resigned from their employment in February, 2000;

WHEREAS ALA Associates, Inc. ("ALA") was a corporation wholly owned by Hughes and Whittelsey and used in connection with the matters at issue in the litigation referenced below;

WHEREAS, in connection with their resignations from the JDN Entities (as defined below), Hughes and Whittelsey previously conveyed to the JDN Entities certain real property and gave up rights to stock and bonuses totaling over $1.5 million in value;

WHEREAS Hughes and Whittelsey are presently unemployed and have not been employed full time since their resignations from the JDN Entities in February 2000;

WHEREAS Hughes and Whittelsey have voluntarily cooperated with and provided material assistance to the JDN Entities in connection with other unrelated litigation; and

WHEREAS the parties to this agreement wish to settle and resolve the claims and/or counterclaims that they have asserted against each other;

NOW THEREFORE, in consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, JDN REALTY CORPORATION ("JDN") and JDN DEVELOPMENT COMPANY, INC. ("JDN Development") for themselves and on behalf of all of their subsidiaries, predecessors, and affiliates (collectively the "JDN Entities"), and Clarion-CRA Securities, L.P. ("Clarion"), as Lead Plaintiff, on behalf of the class bringing claims in the action styled *In re JDN Realty Corp. Securities Litigation*, Master File No. 1:00-CV-0396-RWS (the "Class" or

2

"Class Action Plaintiffs") (herein, together with the JDN Entities, the "Plaintiffs") as

parties of the first part; and ALA, HUGHES, and WHITTELSEY (collectively, the "ALA

Parties"), as parties of the second part, enter into this Release and Settlement Agreement

(this "Agreement") and agree as follows:

1.

## Conveyance of Outparcel and Payment of Proceeds

(a)    Within ten days of the date this Agreement is executed by all parties, JDN

and ALA shall jointly retain a mutually agreeable appraiser, at JDN's

expense, to appraise the fair market value of the outparcel described in

Exhibit "A" hereto. As part of this settlement, ALA shall convey to the

JDN Entities, or either of them at JDN's election, good and marketable

title to the outparcel within twenty days of the completion and delivery of

the appraisal to the JDN Entities and ALA, and JDN shall pay the

appraised value of the outparcel to ALA, in full, at the time of the

conveyance.

(b)    Within five business days after  the foregoing payment by JDN, Hughes

and Whittelsey shall cause ALA, on their behalf, to transfer to Martin D.

Chitwood, as Escrow Agent for the JDN Realty Securities Litigation

Settlement Fund (the "Settlement Fund"), the full amount of the

consideration received by ALA for the outparcel, less twenty-six percent

of the difference between the sales price and $166,150.00, which is ALA's

adjusted basis in the outparcel; provided, however, that in no event shall

the payment to the Class be less than $340,000.00.

3

**2.**

## Cooperation in JDN Realty Corporation v. Nichols, et al. and
## In Re JDN Realty Corp. Securities Litigation

Hughes and Whittelsey agree to cooperate fully with and serve as a consultant to the JDN Entities and Class Action Plaintiffs to provide truthful and material assistance in connection with their claims against J. Donald Nichols, Bradley J. Taylor, William Brunstad, James King, and/or McCullough Sherrill, LLP and its predecessors (the "Non-Settling Defendants") in the lawsuits styled *JDN Realty Corporation v. J. Donald Nichols, et al.*, Superior Court of Fulton County, No. 2001-CV 39193 (the "Nichols Lawsuit") and *In re JDN Realty Corp. Securities Litigation*, Master File No. 1:00-CV-0396-RWS (the "Securities Action"). Hughes and Whittelsey shall also provide truthful and material assistance to JDN in connection with any possible claims the JDN Entities may have against Elizabeth Nichols. Hughes' and Whittelsey's cooperation and assistance shall consist of the following:

(a)     Providing all information and assistance discussed with the Third-Party Evaluator/Mediator (hereafter, "Third Party Evaluator") hired by the parties to assess the value of Hughes' and Whittelsey's assistance (as described below in paragraph 9) to the Plaintiffs' claims against the Non-Settling Defendants;

(b)     making themselves (and their own counsel, to the extent necessary, at their own cost and expense) available for meetings and/or interviews as reasonably requested by the Plaintiffs' counsel, at which they will fully and truthfully provide any and all requested information and will

4

voluntarily and freely share any and all details within their knowledge that are or could be of assistance in, or detrimental to, JDN's case, including, but not limited to, the information discussed with the Third Party Evaluator;

(c)     in particular, and without limiting the full cooperation expected under any other subparagraph in this cooperation agreement, being available to counsel for the Plaintiffs, for up to three consecutive days (except Fridays, unless specifically requested) prior to each deposition scheduled in the case;

(d)     sharing information that Hughes and/or Whittelsey may hereafter learn relating or relevant to the facts underlying the litigation, and that might in any way be of use to any of the Plaintiffs in pursuing their claims against the Non-Settling Defendants, and informing Plaintiffs' counsel of the sources of such information and the location and/or identity of any documents relating to such information;

(e)     making themselves available for depositions in the Nichols Lawsuit and the Securities Action at mutually agreeable times and locations at any time after the execution of this Agreement;

(f)     testifying truthfully and fully in any and all depositions, hearings and trials;

(g)     identifying any and all documents related to, supporting, or that could in any way be of assistance in, or detrimental to, the Plaintiffs' claims against the Non-Settling Defendants, and copying and providing copies of any

5

such documents that are in their possession, custody or control;

(h)    identifying and helping locate, if necessary, any and all individuals Hughes and/or Whittelsey believe in good faith have or may have information relevant to the Plaintiffs' claims against the Non-Settling Defendants;

(i)    upon request, exercising their best efforts to assist the Plaintiffs in securing copies of documents not within Hughes', Whittelsey's or ALA's custody, possession or control, and securing interviews with or obtaining information from third parties who may have information relevant to the Plaintiffs' claims against the Non-Settling Defendants;

(j)    except to the extent such disclosure would result in the breach of any applicable joint defense agreement, promptly disclosing to the Plaintiffs' counsel any and all discussions with or information learned from or with regard to the Non-Settling Defendants that is in any way related or relevant to the Nichols Lawsuit or the Securities Action, and/or the Plaintiffs' claims against the Non-Settling Defendants;

(k)    refraining from engaging, directly or indirectly, in any separate meetings or substantive discussions with the Non-Settling Defendants or their counsel in connection with the Nichols Lawsuit or the Securities Action or the Plaintiffs' claims or potential claims against the Non-Settling Defendants, absent a subpoena or court order compelling them to do so, or unless consented to by the Plaintiffs;

(l)    agreeing to waive any and all attorney-client privileges that may exist

6

between ALA, Hughes and/or Whittelsey on the one hand, and the law firm of McCullough Sherrill, LLP, its predecessors and successors, and any of its individual attorneys on the other hand;

(m)    if requested, providing a written chronology or assisting counsel to prepare a written chronology of events or facts discussed or to be discussed with counsel pursuant to this cooperation clause;

(n)    if requested, providing a list or assisting counsel to generate a list of questions to ask witnesses at depositions;

(o)    making themselves available, upon reasonable request, between July 29, 2002 and the trial of any of the cases set forth above, to assist with document review and deposition or trial preparation, as needed;

(p)    authorizing their counsel of record, William G. Leonard, to cooperate fully with counsel for Plaintiffs in the prosecution of Plaintiffs' cases against the Non-settling Defendants in ways other than those listed in sub-paragraph (b) above at the request of the JDN Entities or their counsel; provided, however, that the JDN Entities shall promptly reimburse the ALA Parties for any legal fees and expenses they incur in connection with the ALA Parties' counsel providing such assistance and cooperation at the specific request of the JDN Entities or their counsel; and

(q)    Notwithstanding any of the above, Hughes and Whittelsey shall not be required to waive and this Agreement shall not affect any applicable testimonial privilege in connection with any of the foregoing interviews,

7

discussions, deposition testimony, trial testimony, or document

production, except that Hughes and Whittelsey shall not assert any

testimonial privilege with regard to any facts they disclosed to the Third-

Party Evaluator and except as provided in paragraph (l) above.

**3.**

**ALA Parties' Release**

Subject only to the conditions of paragraph 8 below, the ALA Parties hereby

release, acquit, and forever discharge each of the Plaintiffs, together with their affiliates,

agents, representatives, officers, directors, accountants, auditors, attorneys (including, but

not limited to, Alston & Bird, LLP, Waller Lansden Dortch & Davis, and Chitwood &

Harley) and employees, whether in their individual or representative capacities, and their

predecessors, successors, and assigns from, and acknowledge the full accord and

satisfaction of, any and all claims, accounts, debts, obligations, demands, damages,

actions, or suits of whatever nature, whether in contract, tort, or otherwise, now accrued

or hereafter accruing, known or unknown, based upon the laws of any state, the laws of

the United States, the common law, or otherwise, based on any transaction or occurrence

through the date of this Agreement, including, without limitation, any claim,

counterclaim, or cross-claim that was or could have been asserted in the Nichols lawsuit,

the Securities Action, and/or *Hughes v. Reliance Ins. Co.*, Civil Action No.

2001CV38108, pending in the Superior Court of Fulton County, as well as all claims

arising out of the conduct of the foregoing litigation; provided, however, that this release

shall not affect the right of the ALA Parties to enforce the terms and conditions of this

Agreement; and provided further that Hughes and Whittelsey do not release any

8

contractual, corporate, or statutory right of indemnification that may exist with regard to claims unrelated to the subject matter of the Securities Action and Nichols Lawsuit; and provided further, that the ALA Parties do not release or discharge any claim or right of action against the Non-Settling Defendants except that, in connection with the final approval of this settlement by the Federal Court, Hughes and Whittelsey agree that they are barred from asserting claims for contribution and indemnity against Non-Settling Defendants to the same extent that the Non-Settling Defendants are barred from asserting such claims against Hughes and Whittelsey.

<div align="center">

**4.**

**Plaintiffs' Release**

</div>

Subject only to the conditions of paragraph 7 below, each of the Plaintiffs hereby releases, acquits, and forever discharges the ALA Parties, together with their affiliates, agents, representatives, officers, directors, accountants, attorneys and employees, whether in their individual or representative capacities, and their predecessors, successors, and assigns from, and acknowledges the full accord and satisfaction of, any and all claims, accounts, debts, obligations, demands, damages, actions, or suits of whatever nature, whether in contract, tort, or otherwise, now accrued or hereafter accruing, known or unknown, based upon the laws of any state, the laws of the United States, the common law, or otherwise, based on any transaction or occurrence through the date of this Agreement, including without limitation any claim, counterclaim, or cross-claim that was or could have been asserted in the Nichols Lawsuit, the Securities Action, and/or *Hughes v. Reliance Ins. Co.*, Civil Action No. 2001CV38108, pending in the Superior Court of Fulton County, Georgia, as well as all claims arising out of the conduct of the foregoing

<div align="center">

9

</div>

litigation; provided, however, that this release shall not affect the right of the JDN Entities to enforce the terms and conditions of this Agreement; provided further that the Plaintiffs do not release or discharge any claim or right of action against the Non-Settling Defendants.

<div align="center">5.</div>

### Dismissal of Claims Between the ALA Parties and the JDN Entities

Within five days of the execution of this Agreement, the JDN Entities and ALA Parties shall promptly cause the dismissal, without prejudice, of all claims and counterclaims asserted against each other in the Nichols Lawsuit, and in Hughes v. Reliance Ins. Co., Civil Action No. 2001CV38108, pending in the Superior Court of Fulton County, Georgia.

<div align="center">6.</div>

### Notice/Court Approval in Securities Action

The parties recognize that the settlement between the Class Action Plaintiffs and Hughes and Whittelsey is subject to notice to the Class and approval by the Federal Court. The Class Action Plaintiffs and Hughes and Whittelsey agree to execute and submit to the Federal Court any and all documents necessary to comply with applicable federal law, effectuate notice to the Class and obtain the Federal Court's approval of the settlement. The Class Action Plaintiffs and Hughes and Whittelsey further agree, unless subsequently agreed otherwise by all of the parties hereto, that they shall not submit a motion for approval to send notice of this proposed settlement to the Class until such time as a settlement with some or all of the Non-Settling Defendants in the Securities Action is reached. However, if no such settlement is reached by the time the Court rules on any

<div align="center">10</div>

motions for summary judgment that are filed, the Class Action Plaintiffs shall file a motion to notice the Class of the settlement with defendants Hughes and Whittelsey as soon thereafter as is practicable, and in no event later than the date that the pretrial order is due. The Lead Plaintiff shall use its best efforts, in good faith, to seek the approval of this settlement by the Class and the Federal Court, and the Lead Plaintiff shall not opt out of the Class in connection with the final consideration and approval of this settlement.

7.

## Conditions with Regard to Plaintiffs' Release

The Release given by the Plaintiffs in ¶ 4 above shall be conditioned upon Hughes and Whittelsey performing their obligations under ¶ 2 above (the "Cooperation Clause"). Should one or more of the Plaintiffs dispute whether Hughes and Whittelsey have performed their obligations under the Cooperation Clause, such Plaintiff(s) shall provide written notice to the other parties and the Third-Party Evaluator identified in ¶ 9 below, who within two weeks of the notice (unless otherwise agreed by the parties) shall hold a one day arbitration at a mutually convenient time and place and shall decide within one week of the arbitration whether Hughes and Whittelsey have performed such obligations. The Third-Party Evaluator's decision shall be binding. Should the Third-Party Evaluator find that Hughes or Whittelsey has not substantially performed his obligations under the Cooperation Clause, Hughes and/or Whittelsey, as applicable, shall be deemed to be in material breach of this agreement, as a result of which breach, the aforesaid Releases shall be deemed null and void as to him, and each of the Plaintiffs shall be entitled to exercise any and all remedies available to them at law or equity against such breaching party.

11

**8.**

## Conditions Regarding ALA Parties' Release

The Release given by the ALA Parties in paragraph 3 above, and the payment of

the consideration described in paragraph 1(b), shall be conditioned on the Federal Court's

grant of a final approval to this settlement after notice to the Class, and the dismissal with

prejudice of Hughes and Whittelsey from the Securities Action.  In the event that the

Federal Court does not grant final approval to the settlement, the aforesaid Release shall

be deemed null and void in its entirety, the consideration paid pursuant to paragraph 1(b)

shall be returned promptly to the ALA Parties, together with any and all interest earned

on the money while in the possession of counsel for the Class Action Plaintiffs, and the

ALA Parties shall be entitled to exercise any and all rights and remedies available to

them at law or equity.  Moreover, in the event that the Federal Court grants final approval

to this settlement but one or more Class members opt out of the Class and assert claims

against any of the ALA Parties arising out of any of the same transactions or occurrences

at issue in the Securities Action, the ALA Parties shall be free to pursue any claims or

rights of action against any party in connection with the assertion or defense of such

claims, notwithstanding the above Release, if not inconsistent with any contribution bar

order entered by the Federal Court.

**9.**

## Role of Third-Party Evaluator

Michael Bowers of Meadows, Ichter & Bowers, P.C has been designated by the

parties to serve as the Third-Party Evaluator in connection with this Agreement.  During

the third party evaluation/mediation, Hughes and Whittelsey disclosed to the Third-Party

12

Evaluator certain information in their possession relevant to the claims raised by the Plaintiffs against the Non-Settling Defendants in the Nichols Lawsuit and the Securities Action, and what some of their deposition and trial testimony will be in the case. Plaintiffs have entered into this Agreement in reliance upon the Third-Party Evaluator's opinion, based on the above disclosures made by Hughes and Whittelsey, that the information Hughes and Whittelsey have and are willing to provide will be of material assistance to the Plaintiffs in connection with their claims against the Non-Settling Defendants, and that the testimony Hughes and Whittelsey will offer will be consistent with representations made to the Plaintiffs during their special investigation into the issues involved in this lawsuit. Should a dispute arise as to whether Hughes and/or Whittelsey have performed their obligations under the Cooperation Clauses of this Agreement, the Third-Party Evaluator shall resolve that dispute in the manner set forth in ¶ 7 above.

**10.**

**No Assignment/Authorizations**

Each of the undersigned parties warrants that there has been no assignment, in whole or in part, of any claim that he or it may have against any other party based on any transactions or occurrences related to the three lawsuits being settled pursuant to this Agreement (as reflected in the captions contained on page one of the Agreement), except to the extent that the Class Action Plaintiffs and the JDN Entities have agreed to share in the proceeds of certain recoveries and to cooperate in the prosecution of certain cases as set forth in the Stipulation and Agreement of Settlement filed with the Federal Court in the Securities Action on August 14, 2001.. Each of the signatories to this Agreement

13

individually warrants, represents, and affirms, as applicable, that he or she is a duly

authorized agent of the organization for which he or she is signing and that the

organization has duly authorized the execution and acceptance of this Agreement.

## 11.

### Miscellaneous

Each undersigned party hereby acknowledges that this Agreement has been

completely read, fully understood, and voluntarily accepted, and that this document sets

forth the entire agreement of the parties with respect to the matters referred to herein.

The undersigned parties agree that there are no other agreements, promises,

representations, or warranties that have been made to induce any party to execute this

Agreement, except as expressly set forth herein.

## 12.

### Governing Law

This Agreement shall be governed by and construed in accordance with the laws

of the State of Georgia.

## 13.

### Execution in Counterparts

This Agreement may be executed in multiple counterparts, all of which together

shall constitute an original.

## 14.

### Severability

A finding by any court or administrative body that any part of this Agreement is

invalid or unlawful shall not affect any other portion of this Agreement, and all

14

provisions not found to be invalid or unlawful shall remain in full force and effect.

**15.**

## Contribution Bar in Securities Action

At the time the parties seek final approval of this settlement, the parties agree to present to the Federal Court a proposed judgment that provides, in accordance with Section 21D(f)(7)(B) of the Exchange Act and otherwise applicable federal and state law, that the total amount of damages awarded in any final verdict or judgment that may be obtained by or on behalf of the Plaintiffs or the Settlement Class against the remaining Non-Settling Defendants (who shall constitute any defendants remaining in the case at the time of final approval) shall be reduced by the value of the consideration paid by or through ALA on behalf of Hughes and Whittelsey to the Class in connection with the settlement.

**16.**

## Judgment Reduction in Nichols Lawsuit

If, following a trial, one or both of the JDN Parties obtain a judgment, award or recovery against any of the Non-Settling Defendants in the Nichols Lawsuit that subjects Hughes, Whittelsey and/or ALA to liability on a claim for contribution or indemnity brought by one or more of the Non-Settling Defendants, the recovering JDN Entity or Entities shall reduce their total judgment, award or recovery against such Non-Settling Defendant or Defendants by the aggregate amount, percentage or share of such judgment, award or recovery (if any) lawfully attributable by the Fulton County Superior Court or the jury to Hughes, Whittelsey and/or ALA, or the amount the ALA Parties paid in settlement of the claims against them pursuant to this Agreement, whichever is greater. If any such

15

judgment or award against one or more Non-Settling Defendants is not reduced in

accordance with the foregoing, and after satisfying all or part of the JDN Parties'

judgment or award any Non-Settling Defendant successfully asserts a claim for

contribution or indemnity in a separate action against any of the ALA Parties in

connection with or arising from the claims asserted in the Nichols Lawsuit, and the ALA

Parties are adjudged to be liable on and are required to pay such claim for contribution or

indemnity, the JDN Entities shall reimburse the ALA Parties the amount of any such

payment. Class Action Plaintiffs agree that the amount of any recovery from the Non-

Settling Defendants that will go to the Class pursuant to paragraph 2.19 of the Stipulation

and Agreement of Settlement filed with the Federal Court in the Securities Action on

August 14, 2001, shall be the amount recovered by the JDN Entities net of any amounts

the JDN Entities are required to pay to the ALA Parties pursuant to this paragraph 16.

## 17.

### Releases in Future Settlements

In any future settlements that the JDN Entities may enter into with any of the

other defendants in the Nichols Lawsuit or any other lawsuits concerning any of the

transactions and occurrences at issue in the Nichols Lawsuit or the Securities Action, the

JDN Entities shall require, as a term and condition of such settlement, that each such

defendant release and forever discharge the ALA Parties from all claims that relate in any

fashion to the transactions and occurrences at issue in the Nichols Lawsuit and the

Securities Action.  The ALA Parties shall also, at that time, execute a reciprocal and

coextensive release of any such settling defendant upon request.

16

**18.**

## Reasonable Cooperation Regarding Easements

The ALA Parties and the JDN Entities acknowledge that they will continue to own contiguous and/or otherwise commercially related parcels of land subsequent to the execution of this Agreement and mutually agree to cooperate reasonably with one another (such cooperation includes, but is not limited to, reasonable good faith efforts with tenants, other landowners and third parties) in granting customary easements across their respective properties for uses, including but not limited to utilities and access, and as otherwise may be reasonably necessary to develop the contiguous or commercially related parcels of land owned by the other party or parties. The above Releases shall not discharge or affect the obligations of the ALA Parties and the JDN Entities to each other with regard to previously recorded easements or the duties described in this paragraph.

**19.**

## Legal Fees and Expenses

The parties acknowledge that, because the application for final approval of the Securities Action settlement will be postponed, the ALA Parties will be required to participate in the Securities Action and the Nichols Lawsuit for an additional period of time, notwithstanding the settlement of the claims against them. The JDN Entities shall therefore promptly reimburse the ALA Parties for all reasonable legal fees and expenses incurred in connection with the ALA Parties' defense of such continuing litigation after the date of the execution of this Agreement by all parties hereto. The reimbursement obligation will not, however, include fees and/or expenses incurred in connection with the completion and finalization of this Agreement, or any work necessary to obtain final

17

approval of the portion of this Agreement pertaining to the ALA Parties' settlement with the Class Action Plaintiffs. As to the Securities Action, this reimbursement obligation shall continue until such time as final approval is obtained from the Federal Court and Hughes and Whittelsey are dismissed with prejudice from the Securities Action. As to the Nichols Lawsuit and any related litigation, this reimbursement obligation shall continue until the final conclusion of the case against all parties and the final conclusion of any claims for contribution or indemnity asserted against any of the ALA Parties in the Nichols Lawsuit or in separate litigation. Hughes and Whittelsey agree, however, to instruct their counsel to participate in the above-referenced litigation to the least extent possible, consistent with such counsel's professional duty to provide adequate representation, and the JDN Entities' obligation to reimburse Hughes and Whittelsey pursuant to this Agreement shall not require aggregate reimbursements in excess of $50,000.

## 21.

## No Agency

Nothing in this Agreement does, or is intended to, create an agency relationship among any of the parties to the settlement.

18

IN WITNESS WHEREOF, the undersigned have affixed their signatures hereon,

as of this ____ day of _____, 2002.


_____
JEB L. HUGHES


_____
C. SHELDON WHITTELSEY IV


ALA ASSOCIATES, INC.

_____
Title: *President*


19

JDN REALTY CORPORATION

_____

Title: _____

JDN DEVELOPMENT COMPANY, INC.

_____

Title: _____

CLARION-CRA SECURITIES, L.P.

_____

Title: _____

On Behalf of the Class Action Plaintiffs

20

JDN REALTY CORPORATION

_____

Title: _____


JDN DEVELOPMENT COMPANY, INC.

_____

Title: _____


CLARION-CRA SECURITIES, L.P.

Title: Managing Director

On Behalf of the Class Action Plaintiffs

20



# EXHIBIT / ATTACHMENT

E
_____

(To be scanned in place of tab)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE JDN REALTY CORP. | )   **MASTER FILE NO.** |
| SECURITIES LITIGATION | )   **1:00-CV-0396-RWS** |

SUPERIOR COURT OF THE STATE OF GEORGIA
COUNTY OF FULTON

| | |
|---|---|
| **JDN REALTY CORPORATION and** | ) |
| **JDN DEVELOPMENT COMPANY,** | ) |
| **INC.** | ) |
| | ) |
| **Plaintiffs** | ) |
| | )   **CIVIL ACTION NO.** |
| **vs.** | )   **2001CV39193** |
| | ) |
| **J. DONALD NICHOLS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## RELEASE AND SETTLEMENT AGREEMENT

WHEREAS, McCullough Sherrill, LLP, Glass McCullough Sherrill & Harrold, Glass McCullough Sherrill & Harrold, LLP, William D. Brunstad, Bradley J. Taylor and James W. King (collectively, the "McCullough Sherrill Defendants") were named as Defendants in the case styled *In re JDN Realty Corp. Securities Litigation,* Master File No. 1:00-CV-0396-RWS, which is pending in the Northern District of Georgia ("the Federal Class Action"), and in the case styled *JDN Realty Corp., et. al. v. J. Donald Nichols, et. al.,* Civil Action No 2001CV39193, which is pending in Fulton County Superior Court ("the Superior Court Action") (collectively, "the Litigation");

WHEREAS the claims in the Federal Class Action were brought by Clarion-CRA Securities, L.P. ("Clarion") as Lead Plaintiff on behalf of a class (the "Class" or "Class Action Plaintiffs") of shareholders of JDN Realty Corporation ("JDN Realty"), and the claims in the Superior Court Action were brought by JDN Realty and JDN Development Company, Inc. ("JDN Development");

WHEREAS the parties to this Release and Settlement Agreement wish to settle and resolve all remaining claims and counterclaims asserted in the pleadings filed in the Litigation in their entirety;

WHEREAS, the McCullough Sherrill Defendants are insured (subject to certain possible coverage disputes) by a professional liability insurance policy issued by Chicago Insurance Company ("Chicago"), a subsidiary of Interstate Insurance Group ("Interstate");

NOW THEREFORE, in consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, JDN Development, and JDN Realty for themselves and on behalf of all of their subsidiaries and predecessors (collectively the "JDN Parties"), and Clarion, as Lead Plaintiff for the Class Action Plaintiffs (herein, together with the JDN Parties, the "Plaintiffs") as parties of the first part; and the McCullough Sherrill Defendants and Interstate, as parties of the second part, enter into this Agreement and agree as follows:

## 1.

## **Payment of Proceeds**

(a)     Interstate shall pay on behalf of the McCullough Sherrill Defendants, their partners and employees, the sum of five million dollars ($5,000,000) (the "Settlement

2

Payment") to an escrow agent designated by Lead Counsel for the Class Action Plaintiffs in the manner set forth below.

(b)    Interstate shall deliver the Settlement Payment to the escrow agent designated by Lead Counsel for the Class Action Plaintiffs no later than the close of business within two business days after signing this Agreement by wire transfer. Interstate understands that the settlement of the remaining claims in the Federal Class Action Litigation must be approved by the Federal Court, and agrees to provide reasonable assistance in completing the documentation of the settlement as is required under applicable law, as more fully described in paragraph 4 below. Interstate also agrees that Lead Counsel for the Class immediately upon receipt of the Settlement Payment may use up to $60,000.00 of the Settlement Payment for the cost of class notices and administration. In the event that this settlement is not finally approved, any amount that is spent or incurred on class notices and administration (up to $60,000.00) shall not be refunded to Interstate.

(c)    In the event the settlement of the remaining claims in the Federal Class Action is not approved by the Federal Court, the Settlement Payment shall be promptly returned to Interstate, less any amount spent or incurred on class notice and administration up to $60,000, and this Agreement and the Releases contained herein shall be null and void.

## 2.

## McCullough Sherrill Defendants' Release

(a) Subject only to the conditions stated in paragraphs 2(b) and 7 below, Interstate, Chicago and each and all of the McCullough Sherrill Defendants hereby

3

release, acquit, and forever discharge each of the Plaintiffs, together with their subsidiaries, officers, directors, and current and former employees (excluding William J. Kerley ("Kerley") and J. Donald Nichols ("Nichols")), whether in their individual or representative capacities, and their predecessors, successors, and assigns from, and acknowledge the full accord and satisfaction of, any and all claims, accounts, debts, obligations, demands, damages, actions, or suits of whatever nature, whether in contract, tort, or otherwise, now accrued or hereafter accruing, known or unknown, based upon the laws of any state, the laws of the United States, the common law, or otherwise, based on any transaction or occurrence through the date of this Agreement, including, without limitation, any claim, counterclaim, or cross-claim that was or could have been asserted in the Superior Court Action and/or the Federal Class Action, as well as all claims arising out of the conduct of the foregoing Litigation (the "Released Matters"); provided, however, that, in the case of the Federal Class Action only, the Released Matters are limited to those matters that relate to or arise out of the events that form the basis of the Federal Class Action; provided further that nothing in this release shall affect the right of the McCullough Sherrill Defendants to enforce the terms and conditions of this Agreement.

(b)      This release is not intended to bind any natural persons named in the style of the case pending in the Superior Court of Fulton County bearing Civil Action File No. 2003CV72378 (the "Kerley Litigation") as partners of Glass, McCullough Sherrill and Harrold who are not signatories to this agreement (the "Non-Signatory Partners") from asserting any claims or causes of action they may have in their individual capacities.

4

**3.**

## Plaintiffs' Release

(a)     Subject only to the conditions stated in paragraphs 3(b) and 6 below, each

of the Plaintiffs hereby releases, acquits, and forever discharges each and all of the

McCullough Sherrill Defendants, insurers, officers, directors, current and former

employees and partners, whether in their individual or representative capacities, and their

predecessors, successors, and assigns from, and acknowledges the full accord and

satisfaction of the Released Matters; provided, however, that, in the case of the Federal

Class Action only, the Released Matters are limited to those matters that relate to or arise

out of the events that form the basis of the Federal Class Action; provided further that this

release shall not affect the right of the Plaintiffs to enforce the terms and conditions of

this Agreement. The Plaintiffs also do not release any claim or right of action against

Reliance Insurance Company, its successors or assigns.

(b)     The Plaintiffs' release of the Non-Signatory Partners (as defined in

paragraph 2(b) above) is subject to and contingent upon the Non-Signatory Partners not

asserting or filing any claim whatsoever against any of the Plaintiffs, unless and except

such claim is brought or asserted in the form of a claim for contribution or indemnity

resulting from the Kerley Litigation (as defined in paragraph 2(b) above), and provided

such claim is brought only after Kerley obtains a judgment on the merits at trial against

the party or parties asserting the claim which exposes such party or parties to personal

liability that will not be covered by any applicable insurance policies. In the event any of

the Non-Signatory Partners asserts or files a claim against any of the Plaintiffs other than

as described in the preceding sentence, such Plaintiff or Plaintiffs' release(s) of the party

5

or parties asserting such claim or claims shall be null and void in their entirety, and such Plaintiff or Plaintiffs may assert whatever claims they each may have against the Non-Signatory Partner or Partners asserting or filing the claim or claims as if no release were ever given.

<div align="center">4.</div>

<div align="center">**Notice/Court Approval in Securities Action**</div>

The parties recognize that the settlement between the Class Action Plaintiffs and the McCullough Sherrill Defendants is subject to notice to and approval by the Class and approval by the Federal Court. The Class Action Plaintiffs and the McCullough Sherrill Defendants agree to execute and submit to the Federal Court any and all documents, including a Stipulation and Settlement Agreement, that are necessary to comply with applicable federal law, effectuate notice to the Class and obtain the Federal Court's approval of the settlement. The definition of released claims provided for in the Stipulation and Settlement Agreement shall be similar to the definition provided for in the Class's settlement with the JDN Parties, which the court in the Federal Securities Action previously approved. The JDN Parties shall have the opportunity to review and comment on the settlement documents in advance of their filing. The parties agree to use their best efforts to complete the necessary documentation and to schedule a preliminary hearing on the Class Settlement on or before October 15, 2003, and to have a Final Hearing on or before January 15, 2004. The parties agree that these dates may be changed as reasonably necessary, but that they will exercise their best efforts to keep this schedule. The Lead Plaintiff shall use its best efforts, in good faith, to seek the approval

<div align="center">6</div>

of this settlement by the Class and the Federal Court, and the Lead Plaintiff shall not opt out of the Class in connection with the final consideration and approval of this settlement.

**5.**

### Dismissal of Claims Between McCullough Sherrill Defendants and the JDN Parties

Promptly after the Federal Court has granted final approval of this settlement, the JDN Parties and the McCullough Sherrill Defendants shall cause the dismissal, with prejudice, of all claims and counterclaims asserted against each other in the Superior Court Action. Dismissal of the Superior Court Action is conditioned on final approval of this settlement by the Federal Court and payment by Interstate of the Settlement Payment pursuant to paragraph 1 herein.

**6.**

### Conditions with Regard to Plaintiffs' Release

The Release given by the Plaintiffs in paragraph 3 shall be subject to the Federal Court's grant of Final Approval of this settlement and upon Interstate performing its obligations under paragraph 1. In the event that the Federal Court does not grant Final Approval of the settlement, or Interstate does not perform its obligations under paragraph 1 in a timely manner, the aforesaid Release shall be null and void in its entirety.

**7.**

### Conditions Regarding McCullough Sherrill Defendants' Release

The Release given by the McCullough Sherrill Defendants in paragraph 2 above, and the payment of the consideration described in paragraph 1, shall be subject to the Federal Court's grant of Final Approval of this settlement after notice to the Class, and the dismissal of the McCullough Sherrill Defendants, to the extent applicable, from the

7

Federal Class Action and Superior Court Action. In the event that the Federal Court does not grant Final Approval to the settlement, or the McCullough Sherrill Defendants, to the extent applicable, are not each dismissed from the Federal Class Action and the Superior Court Action, the aforesaid Release shall be null and void in its entirety and the consideration paid pursuant to paragraph 1 shall be returned promptly to Interstate together with any and all interest earned on such payments and while such funds were in escrow; and less any amount spent or incurred on class notice and administration up to $60,000.

## 8.

### Agreement Between the JDN Parties and the Class

Pursuant to Paragraph 2.20 of a Stipulation and Agreement of Settlement (the "Settlement Stip.") filed in the Federal Class Action on August 14, 2001, and subsequently approved by the Federal Court, the JDN Parties agreed to pay (and subsequently did pay) into a settlement fund for the benefit of the Class Action Plaintiffs $4,000,000 as "assurance" to the Class that the Class would receive at least a collective $7,500,000 in settlement from the McCullough Sherrill Defendants and Defendants J. Donald Nichols, Jeb L. Hughes and C. Sheldon Whittelsey (the "Settling Defendants"). For every dollar received from those parties in excess of $3,500,000, JDN is to receive a dollar return of the $4,000,000 "assurance" payment it paid to the Class Action Plaintiffs. The Class is also obligated to pay the JDN Parties all accrued interest earned on monies received from Settling Defendants that are required to be returned to the JDN Parties as repayment of the "assurance" payment, or any portion of it, from the date such monies are paid into escrow.

8

Prior to the settlement described herein, the Class Action Plaintiffs had secured agreements by Hughes, Nichols and Whittelsey to pay a collective $2,340,000, $60,000 of which has already been paid by Nichols and $340,000 of which has been paid by Hughes and Whittelsey. Pursuant to a settlement previously reached by the Class with Nichols (which settlement is subject to the Federal Court's approval) (the "Nichols Settlement"), Nichols is scheduled to pay the Class an additional $440,000 on the morning of final approval by the Federal Court of the Nichols Settlement ("Nichols' Second Installment"), $500,000 within 90 days following final approval of the Nichols Settlement ("Nichols's Third Installment"), and $1,000,000 within 180 days following final approval of the Nichols Settlement ("Nichols's Final Installment"). Counsel for Lead Plaintiff shall instruct the escrow agent to repay the assurance payment to the JDN Parties at such place as directed by the JDN Parties as follows:

| | |
|---|---|
| $1,900,000 plus interest accrued on such amounts | 30 days following the Federal Court's approval of the Class's settlement with the McCullough Sherrill Defendants, as applicable ("Final Approval"), assuming no appeal. |
| $440,000, with any interest earned on such money from the date Nichols pays his Second Installment to the Class. | 30 days following Final Approval, assuming no appeal, or immediately upon receipt by the Class of Nichols's Second Installment, whichever is later. |
| $500,000 | Directly upon receipt of Nichols' Third Installment by the Class, which is scheduled to occur within 90 days from the date of Final Approval of the Nichols |

9

Settlement.

$1,000,000         Directly upon receipt of
Nichols' payment of such
funds to the Class, which is
scheduled to occur within
180 days from the date of
Final Approval.

**9.**

## No Prior Assignment/Authorizations

Each of the undersigned parties warrants that there has been no assignment, in whole or in part, of any claim that he or it may have against any other party hereto based on any transactions or occurrences related to the two lawsuits being settled pursuant to this Agreement (as reflected in the captions contained on page one of the Agreement), except to the extent that the Class Action Plaintiffs and the JDN Parties have agreed to cooperate in the prosecution of certain cases as set forth in the Settlement Stip. Each of the signatories to this Agreement individually warrants, represents, and affirms, as applicable, that he or she is a duly authorized agent of the organization for which he or she is signing and that the organization has duly authorized the execution and acceptance of this Agreement.

**10.**

## Miscellaneous

Each undersigned party hereby acknowledges that this Agreement has been completely read, fully understood, and voluntarily accepted, and that this document sets forth the entire agreement of the parties with respect to the matters referred to herein, subject to further documentation of the details of the settlement required by federal law applicable to the Federal Class Action. The undersigned acknowledge that this

10

Agreement was drafted and negotiated by all of the undersigned parties, and for purposes of construction, no party will be deemed the drafter.

## 11.

### Governing Law/Enforcement of Agreement

This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. The prevailing party in any action to enforce this Agreement shall be entitled to recover its costs of litigation, including reasonable attorneys' fees from the other party.

## 12.

### Execution in Counterparts

This Agreement may be executed in multiple counterparts, all of which together shall constitute an original.

## 13.

### Severability

A finding by any court or administrative body that any part of this Agreement is invalid or unlawful shall not affect any other portion of this Agreement, and all provisions not found to be invalid or unlawful shall remain in full force and effect.

## 14.

### Contribution Bar in Federal Class Action

At the time the parties seek final approval of this settlement by the Federal Court, the parties agree to present to the Federal Court a proposed judgment that provides for a contribution bar for the protection of the McCullough Sherrill Defendants, in accordance

with Section 21D(f)(7)(B) of the Securities Exchange Act of 1934 and any other applicable federal and state law.

## 15.

### No Agency

Nothing in this Agreement does, or is intended to, create an agency relationship among any of the parties to the settlement.

## 16.

### No Admission

The McCullough Sherrill Defendants deny any and all allegations of wrongdoing or liability pleaded against them in the Litigation. The McCullough Sherrill Defendants believe they have meritorious defenses to the claims presented against them in the Litigation, as well as substantial defenses to the alleged damages relating to such claims. Nonetheless, the McCullough Sherrill Defendants conclude that further litigation could be protracted and expensive and want the Litigation fully and finally settled in the manner and upon the terms set forth herein in order to limit further expense, inconvenience, and distraction and to permit the conduct of their practices and affairs without further diversion relating to the Litigation. The McCullough Sherrill Defendants take into account the uncertainty and risks of litigation, as well as the difficulties and delays inherent in such litigation. Thus, the McCullough Sherrill Defendants conclude that it is desirable and beneficial to them that the Litigation be compromised. This conclusion and the Agreement memorializing it shall not be construed or deemed to be evidence of an admission or concession by any of the McCullough Sherrill Defendants with respect to any claim of any fault, liability, wrongdoing, or damage whatsoever, or of

12

any infirmity in the defenses the McCullough Sherrill Defendants have or may have asserted. Nor shall this Agreement be admissible in evidence in any action, other than to enforce the terms hereof.

## 17.

### Confidentiality

Neither the JDN Parties nor their counsel will disclose the existence, terms, conditions and amount of this Agreement or provide copies of it to any party or their counsel who they know to be in active litigation with any McCullough Sherrill Defendant or any individual sued on account of having been alleged to have been a partner of any McCullough Sherrill Defendant, except in response to a lawfully issued and served subpoena or an Order of a court of competent jurisdiction, or as otherwise required by law, and then only after written notice delivered to counsel for the McCullough Sherrill Defendants not less than five (5) business days prior to any such response. Nothing in this paragraph 17, however, will prevent the JDN Parties or their successors, assigns, affiliates, parents, or agents, from disclosing the existence, terms, conditions or amount of this Agreement to their shareholders, accountants, auditors, attorneys or the public markets as may be appropriate or required by law or regulation.

IN WITNESS WHEREOF, the undersigned have affixed their signatures hereon, as of this ___ day of _____, 2003.

_____
Jerry Shaifer, on behalf of McCULLOUGH
SHERRILL, LLP, formerly known as GLASS,
McCULLOUGH SHERRILL & HARROLD

_____
WILLIAM D. BRUNSTAD

13

_____

BRADLEY J. TAYLOR


_____

JAMES W. KING


INTERSTATE INSURANCE GROUP


_____

Title: _____


JDN REALTY CORPORATION


_____

Title: _____


JDN DEVELOPMENT COMPANY, INC.


_____

Title: _____


CHITWOOD & HARLEY, LLP, as Lead
Counsel to Class and Counsel to Lead Plaintiff
Clarion-CRA Securities, L.P.

_____

Title: _____

On Behalf of the Class Action Plaintiffs

14

any infirmity in the defenses the McCullough Sherrill Defendants have or may have

asserted. Nor shall this Agreement be admissible in evidence in any action, other than to

enforce the terms hereof.

## 17.

### Confidentiality

Neither the JDN Parties nor their counsel will disclose the existence, terms,

conditions and amount of this Agreement or provide copies of it to any party or their

counsel who they know to be in active litigation with any McCullough Sherrill Defendant

or any individual sued on account of having been alleged to have been a partner of any

McCullough Sherrill Defendant, except in response to a lawfully issued and served

subpoena or an Order of a court of competent jurisdiction, or as otherwise required by

law, and then only after written notice delivered to counsel for the McCullough Sherrill

Defendants not less than five (5) business days prior to any such response. Nothing in

this paragraph 17, however, will prevent the JDN Parties or their successors, assigns,

affiliates, parents, or agents, from disclosing the existence, terms, conditions or amount

of this Agreement to their shareholders, accountants, auditors, attorneys or the public

markets as may be appropriate or required by law or regulation.

IN WITNESS WHEREOF, the undersigned have affixed their signatures hereon,

as of this _____ day of _____, 2003.

Jerry Shaifer, on behalf of McCULLOUGH
SHERRILL, LLP, formerly known as GLASS,
McCULLOUGH SHERRILL & HARROLD


WILLIAM D. BRUNSTAD

13

any infirmity in the defenses the McCullough Sherrill Defendants have or may have asserted. Nor shall this Agreement be admissible in evidence in any action, other than to enforce the terms hereof.

<div align="center">

**17.**

**Confidentiality**

</div>

Neither the JDN Parties nor their counsel will disclose the existence, terms, conditions and amount of this Agreement or provide copies of it to any party or their counsel who they know to be in active litigation with any McCullough Sherrill Defendant or any individual sued on account of having been alleged to have been a partner of any McCullough Sherrill Defendant, except in response to a lawfully issued and served subpoena or an Order of a court of competent jurisdiction, or as otherwise required by law, and then only after written notice delivered to counsel for the McCullough Sherrill Defendants not less than five (5) business days prior to any such response. Nothing in this paragraph 17, however, will prevent the JDN Parties or their successors, assigns, affiliates, parents, or agents, from disclosing the existence, terms, conditions or amount of this Agreement to their shareholders, accountants, auditors, attorneys or the public markets as may be appropriate or required by law or regulation.

IN WITNESS WHEREOF, the undersigned have affixed their signatures hereon, as of this _____ day of _____, 2003.

<div style="margin-left: 40%;">

_____
Jerry Shaifer, on behalf of McCULLOUGH
SHERRILL, LLP, formerly known as GLASS,
McCULLOUGH SHERRILL & HARROLD


_____
WILLIAM D. BRUNSTAD

</div>

<div align="center">13</div>

BRADLEY J. TAYLOR

JAMES W. KING

INTERSTATE INSURANCE GROUP

Title: _____

JDN REALTY CORPORATION

Title: _____

JDN DEVELOPMENT COMPANY, INC.

Title: _____

CHITWOOD & HARLEY, LLP, as Lead
Counsel to Class and Counsel to Lead Plaintiff
Clarion-CRA Securities, L.P.

Title: _____

On Behalf of the Class Action Plaintiffs

14

Each party hereby warrants and represents that he or it has the power and is duly authorized to enter into this Agreement with regard to all matters described herein upon the terms herein set forth; the execution of this Agreement does not put him or it in violation of any agreement to which he or it is a party; and this Agreement was duly executed and delivered and constitutes a legal, valid and binding obligation enforceable in accordance with the terms thereof. The parties further agree that should any of the representations not be true or should these warranties be breached, the breaching party will save and hold harmless the other parties from any and all claims, costs and expenses, including but not limited to reasonable attorney's fees, incurred by them as a result thereof.

This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their heirs, successors and assigns.

This Agreement contains the entire agreement between Nichols and the MS Parties, and the terms of this Agreement are contractual and not a mere recital. The parties further state that the foregoing Agreement has been carefully read and the contents thereof are known, and the same is signed freely and voluntarily.

IN WITNESS WHEREOF, the undersigned has affixed his, her or its hand and seal, as of the date and year first above written.

_____

J. Donald Nichols

_____

William D. Brunstad

_____

James King

_____

Bradley J. Taylor

McCullough Sherrill LLP

By: _____ Jerry H. Shaifer

Its: _____ Managing Partner

Each party hereby warrants and represents that he or it has the power and is duly authorized to enter into this Agreement with regard to all matters described herein upon the terms herein set forth; the execution of this Agreement does not put him or it in violation of any agreement to which he or it is a party; and this Agreement was duly executed and delivered and constitutes a legal, valid and binding obligation enforceable in accordance with the terms thereof. The parties further agree that should any of the representations not be true or should these warranties be breached, the breaching party will save and hold harmless the other parties from any and all claims, costs and expenses, including but not limited to reasonable attorney's fees, incurred by them as a result thereof.

This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their heirs, successors and assigns.

This Agreement contains the entire agreement between Nichols and the MS Parties, and the terms of this Agreement are contractual and not a mere recital. The parties further state that the foregoing Agreement has been carefully read and the contents thereof are known, and the same is signed freely and voluntarily.

IN WITNESS WHEREOF, the undersigned has affixed his, her or its hand and seal, as of the date and year first above written.

---

J. Donald Nichols

---

William D. Brunstad

---

James King

---

Bradley J. Taylor

McCullough Sherrill LLP

---

By: _____
Its: _____

Interstate Insurance Group

---

By: _____
Its: _____

_____

Jeb L. Hughes

Sworn to and subscribed before me
this _____ day of _____, 2003.

_____
Notary Public

My commission expires:

_____

ALA Associates, Inc.

_____

By: _____
Its: _____

Sworn to and subscribed before me
this _____ day of _____, 2003.

_____
Notary Public

My commission expires:

_____

_____
William D. Brunstad

Sworn to and subscribed before me
this _29th_ day of _September_, 2003.

_Joanne A. Puckett_
Notary Public

My commission expires:

Notary Public, Cobb County, Georgia
My Commission Expires November 2, 2004

4

9912704 v1

James King

Sworn to and subscribed before me
this 22nd day of September, 2003.

_Vickie L. Tweddle_
Notary Public

My commission expires:

_____
Bradley J. Taylor

Sworn to and subscribed before me
this ____ day of _____, 2003.

_____
Notary Public

My commission expires:

McCullough Sherrill LLP

By: Jerry A. Stoker
Its: Managing Partner

Sworn to and subscribed before me
this 22nd day of September, 2003.

_Vickie L. Tweddle_
Notary Public

My commission expires: